UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, JEANINE CARAMORE, in her capacity as a Board of Education Member and a Resident/Parent of the School Community.<br><br><br>                    Plaintiffs,<br>      -against-<br><br>NEW YORK STATE BOARD OF REGENTS, et al.,<br><br>                    Defendants. | Docket No. 23-cv-07052 (SJB)(LGD) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

SOKOLOFF STERN LLP
*Attorneys for Plaintiffs*
179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500
File No. 230195

*Of Counsel:*
    Chelsea Weisbord
    Steven C. Stern
    Oliver Roberts

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
*Attorneys for Plaintiffs*
2300 N Street, NW, Suite 643
Washington, DC 20037

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS RELEVANT TO MOTION ............................................................. 1

    A.  Part 123 of the Regulations of the Commissioner of Education .................... 2

    B.  The District's May 15, 2025 Agreement with the Native American Guardian's Association ........................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

    I.  The Court Should Grant Plaintiffs' Motion to Amend Because Defendants Cannot Show Any Prejudice ........................................................................... 7

    II  Plaintiffs Satisfy Rule 16(b)(4)'s Good Cause Standard ................................. 10

    III.  Plaintiffs Satisfy Rule 15(a)'s Liberal Standard for Amendments ................. 14

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*,
 2013 WL 4526246 (S.D.N.Y. Aug. 27, 2013)..........................................................................5

*Agerbrink v. Model Serv. LLC*,
 155 F. Supp. 3d 448 (S.D.N.Y. Jan. 7, 2016) ........................................................................9

*Assam v. Deer Park Spring Water, Inc.*,
 163 F.R.D. 400 (E.D.N.Y. 1995)............................................................................................5

*Bhatt v. Lalit Patel Phys. P.C.*,
 2019 WL 13144575 (E.D.N.Y. May 30, 2019) ......................................................................7

*Biwen Liang v. Home Reno Concepts LLC*,
 2018 WL 1401801 (E.D.N.Y. Mar. 19, 2018).......................................................................15

*Block v. First Blood Assocs.*,
 988 F.2d 344 (2d Cir. 1993) ............................................................................................6, 7

*Cortec Indus., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991) ...................................................................................................8

*Covet & Mane, LLC v. Invisible Bead Extensions, LLC*,
 2023 WL 6066168 (S.D.N.Y. Sept. 18, 2023) .......................................................................9

*Cruz v. Loc. 32BJ*,
 2025 WL 47936 (S.D.N.Y. Jan. 8, 2025) ..............................................................................8

*Dalewitz v. Procter & Gamble Co.*,
 2025 WL 764023 (S.D.N.Y. Mar. 11, 2025)........................................................................14

*Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*,
 2021 WL 2075586 (S.D.N.Y. May 24, 2021) ..................................................................6, 14

*Enzymotec Ltd. v. NBTY, Inc.*,
 754 F. Supp. 2d 527 (E.D.N.Y. 2010) ..................................................................................13

*Foman v. Davis*,
 371 U.S. 178, 83 S. Ct. 227 (1962) .......................................................................................6

*GGC Int'l Ltd. v. Ver*,
 2025 WL 81319 (S.D.N.Y. Jan. 13, 2025) ...........................................................................15

*Hegazy v. Halal Guys, Inc.*,
  2024 WL 3988141 (S.D.N.Y. Aug. 28, 2024)...............................................................9

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) ......................................................................................4

*Hosking v. New World Mortg., Inc.*,
  602 F. Supp. 2d 441 (E.D.N.Y. 2009) ........................................................................6

*Huber v. Nat'l R.R. Passenger Corp.*,
  2012 WL 6082385 (S.D.N.Y. Dec. 4, 2012) ...............................................................5

*Hussain v. Burton & Doyle of Great Neck LLC*,
  2015 WL 13227997 (E.D.N.Y. Sept. 29, 2015) .......................................................5, 6

*Iglesias v. HRA Pharma Am., Inc.*,
  2023 WL 5277424 (S.D.N.Y. Aug. 16, 2023) .............................................................8

*Ispat Inland, Inc. v. Kemper Env't, Ltd.*,
  2007 WL 2197837 (S.D.N.Y. July 31, 2007) ..............................................................7

*Jin v. Metro. Life Ins. Co.*,
  310 F.3d 84 (2d Cir. 2002) .........................................................................................6

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
  2009 WL 1357946 (S.D.N.Y. May 12, 2009) ..............................................................8

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir.2007) ........................................................................................5

*Kate Spade LLC v. Vinci Brands LLC*,
  2024 WL 4449666 (S.D.N.Y. Oct. 9, 2024)................................................................7

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015) .......................................................................................8

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*,
  318 F.R.D. 28 (S.D.N.Y. 2016) ..................................................................................5

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) .......................................................................................6

*Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*,
  392 F.2d 380 (2d Cir. 1968) .......................................................................................8

*Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*,
   2013 WL 1830416 (S.D.N.Y. May 1, 2013) ......................................................... 13

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ............................................................................. 8

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017) .......................................................................... 6, 7

*Patterson v. Morgan Stanley*,
   2017 WL 11569235 (S.D.N.Y. Sept. 27, 2017) .................................................... 8

*Perechu v. Flaum Appetizing Corp*,
   2018 WL 11453940 ...................................................................................... 5, 6

*Permatex, Inc. v. Loctite Corp.*,
   2004 WL 1354253 (S.D.N.Y. June 17, 2004) ..................................................... 13

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
   46 F.3d 230 (2d Cir. 1995) ........................................................................... 7, 8

*Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*,
   2001 WL 1286989 (S.D.N.Y. Oct. 24, 2001) ....................................................... 9

*Scalia v. Sarene Servs., Inc.*,
   740 F. Supp. 3d 251 (E.D.N.Y. 2024) ........................................................ Passim

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
   283 F.R.D. 142 (S.D.N.Y. May 11, 2012) ........................................................... 7

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ............................................................................. 8

*United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*,
   889 F.2d 1248 (2d Cir.1989) ......................................................................... 8, 9

**Statutes**

26 U.S.C. § 501 ............................................................................................... 3

42 U.S.C. § 1981 ..................................................................................... 1, 4, 11

42 U.S.C. § 2000d ............................................................................................ 1

42 U.S.C. § 2000e ............................................................................................ 1

iv

**Rules**

Fed. R. Civ. P. Rule 15 .......................................................................................... 4, 5, 6, 7

Fed. R. Civ. P. Rule 16 ............................................................................................. 4, 5, 7

**Regulations**

8 NYCRR 123.............................................................................................................. 1, 2

## PRELIMINARY STATEMENT

Plaintiffs Massapequa Union Free School District (the "District"), Massapequa Union Free School District Board of Education (the "Board of Education"), and Jeanine Caramore request leave to file a Second Amended Complaint to assert claims for violations of the Commerce Clause under Article I, Section 8 of the United States Constitution (both Dormant and Indian Commerce Clauses); the State-Bill-of-Attainder Clause under Article I, Section 10 of the United States Constitution; 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1954, 42 U.S.C. § 2000d, *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[1] The District, Board of Education, and Jeanine Caramore (in her official capacity) also seek leave to amend the First Amendment Overbreadth claim that this Court previously dismissed in its March 27, 2025 Memorandum and Order (hereinafter "the March 27 Decision").

Since Defendants will not be prejudiced by the amendments and Plaintiffs have good cause to assert these claims, the Court should grant this motion for leave to file a Second Amended Complaint.

## STATEMENT OF FACTS RELEVANT TO MOTION

This declaratory judgment action seeks to annul *Part 123 of the Regulations of the Commissioner of Education Relating to Prohibiting the Use of Indigenous Names, Mascots, and Logos by Public Schools* ("Part 123"), 8 NYCRR 123.1 *et seq.* and enjoin its enforcement. (Ex. A, ¶¶ 1, 65.)

---

[1] This motion does not seek leave to amend the First Cause of Action (First Amendment Overbreadth claim) and Second Cause of Action (First Amendment Free Speech claim) on behalf of Plaintiff Caramore in her individual capacity because the Court already granted her leave to do so in its March 27, 2025 Memorandum and Order. (ECF Doc. No. 60.) To avoid duplicative filings, Plaintiffs include these amendments in the proposed second amended complaint attached to this motion.

## A. Part 123 of the Regulations of the Commissioner of Education

Part 123 prohibits public schools in the State of New York from utilizing or displaying any Indigenous name, logo, or mascot other than for classroom instruction. (Ex. A, ¶ 66 [8 NYCRR 123.2].) Part 123 defines "Indigenous name, logo, or mascot" as "a name, symbol, or image that depicts or refers to Indigenous persons, tribes, nations, individuals, customs, symbols, or traditions, including actual or stereotypical aspects of Indigenous cultures, used to represent a public school, including but not limited to such school sports teams." (Ex. A, ¶ 66 [8 NYCRR 123.1].) This definition excludes a public school, school building, or school district named after an Indigenous tribe. (*Id.*)

Part 123 provides for certain exceptions to this rule. First, a federally recognized tribal nation within the State of New York or a New York State recognized tribal nation is not prohibited from using an Indigenous name, logo, or mascot for a sports team comprised of its tribal members, including a tribal school or intramural league. (Ex. A, ¶ 68 [8 NYCRR 123.4(a)].) Second, Part 123 does not apply where a written agreement exists between a federally recognized tribal nation within the State of New York or a New York State recognized tribal nation and a public school permitting the use of an Indigenous name, mascot, or logo that is culturally affiliated with such tribe. (Ex. A, ¶ 69 [8 NYCRR 123.4(b)].) Under this provision of Part 123, the New York State Education Department ("NYSED") only acknowledged written agreements submitted before May 3, 2023, and therefore rejected any written agreements submitted after that date. (*Id.*)

Part 123 also requires public schools to prohibit school officers and employees from utilizing or promoting any Indigenous name, logo, or mascot while on school property or at a school function, except for school officers or employees who are members of a tribal nation and utilizing or promoting that tribal nation's Indigenous name, logo, or mascot. (Ex. A, ¶ 71 [8 NYCRR 123.5].)

2

Because NYSED will provide no funding to support its cause, school districts are also forced to redistribute their educational funds to finance this unfunded mandate on their own. (Ex. A, ¶ 73.)

**B. The District's May 15, 2025 Agreement with the Native American Guardian's Association**

On May 15, 2025, Plaintiffs entered into a legally binding, written agreement (the "MSD-NAGA Agreement") with the Native American Guardian's Association and the Board of Directors of the Native American Guardian's Association (collectively, "NAGA"). (Ex. A, ¶ 100.) As stated in the MSD-NAGA Agreement, the "NAGA is a tax-exempt, non-profit organization pursuant to 26 U.S.C. § 501(c)(3), and a Native advocacy group recognized by the Bureau of Indian Affairs, United States Department of the Interior, advocating for increased education about Native Americans and Indigenous peoples, especially in public educational institutions, and greater recognition of Native American and Indigenous Heritage through high profile venues of sports and other public platforms, pursuant to which NAGA supports the respectful use of Native American and Indigenous names and imagery in sports, education, and public life[.]" (*Id.*, ¶ 101.) The Board of Directors of NAGA "is comprised of, and represents, members of federally recognized tribal nations and Indigenous groups[.]" (*Id.*, ¶ 103.)

Through this agreement, the "NAGA and the Board of Directors of NAGA permit, consent to, support, and authorize the District's continued use of the Indigenous names, imagery, and logos, as such symbols are culturally affiliated with NAGA, the Board of Directors of NAGA, and NAGA's component American Indian enrolled members and tribal descendants[.]" (*Id.*, ¶ 104.) The MSD-NAGA Agreement defines NIL as "name, image, and likeness" (hereinafter "NIL").

The goal of the MSD-NAGA Agreement is "to memorialize these terms and conditions pursuant to which NAGA and the Board of Directors of NAGA permit, consent to, support, and

authorize the District's continued use of the Indigenous NIL representations[.]" (*Id.*, ¶ 106.) To satisfy their contractual obligations under the MSD-NAGA Agreement, the Plaintiffs ***must continue*** to use the Chiefs name and logo. (*Id.*, ¶ 111.)

Meanwhile, Part 123 forces the Plaintiffs to terminate the use of the Chiefs name and logo, solely on the basis that the NAGA's name, image, and likeness are affiliated with Indigenous names, logos, and imagery. (*Id.*) Part 123 also forces the Plaintiffs to terminate and violate its contractual obligations to the NAGA solely based on the fact that the NAGA is comprised of Indigenous and tribal persons and groups. (*Id.*, ¶ 112.) Indeed, Plaintiffs are free to contract with any other individual or group of any race, national origin, color, or ethnic background on the same subject matter. (*Id.*, ¶ 113.) Part 123 solely targets and excludes Indigenous and tribal members from entering into agreements with Plaintiffs and other school districts. (*Id.*)

The MSD-NAGA Agreement presents new facts that give rise to new claims, including claims under Title VI (Fourth Cause of Action), 42 U.S.C. § 1981 (Sixth Cause of Action), the Dormant Commerce Clause of the United States Constitution (Seventh Cause of Action), and the Indian Commerce Clause of the United States Constitution (Eighth Cause of Action).

## STANDARD OF REVIEW

Rules 15 and 16 of the Federal Rules of Civil Procedure govern amendments of pleadings, depending on when leave to amend is sought. *See Scalia v. Sarene Servs., Inc.*, 740 F. Supp. 3d 251, 275 (E.D.N.Y. 2024) (citing Fed. R. Civ. P. 15, 16).

Where a scheduling order provides a deadline for amendments of pleadings, courts balance the "'liberal' amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that plaintiff show 'good cause' for an extension of the deadline to amend." *Scalia*, 740 F. Supp. 3d at 275 (citing Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)).

Although Rule 16(b)(4)'s "good cause" requirement turns on the diligence of the moving party, diligence is not the only consideration; district courts, in the exercise of their discretion "may also consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, No. 12 CIV. 5160 KPF, 2013 WL 4526246, at *3 (S.D.N.Y. Aug. 27, 2013) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244–45 (2d Cir.2007)); *Perechu v. Flaum Appetizing Corp*, No. 18-CV-1085-PKC-SJB, 2018 WL 11453940, at *2 (quoting *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016)).

"Once a court has determined that the party seeking leave to amend the complaint after the deadline has passed has shown good cause, it must then ensure that the party has also met the requirements of Rule 15(a)(2) and show that there is no bad faith, undue delay, futility, or undue prejudice to the non-moving parties." *Scalia*, 740 F. Supp. 3d at 276 (citing *Huber v. Nat'l R.R. Passenger Corp.*, No. 10 Civ. 09348(ALC)(DF), 2012 WL 6082385, at *3–8 (S.D.N.Y. Dec. 4, 2012)).

Pursuant to Rule 15(a), courts "should freely give leave" to parties to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Hussain v. Burton & Doyle of Great Neck LLC*, No. 14-CV-5924(LDW)(SIL), 2015 WL 13227997, at *2 (E.D.N.Y. Sept. 29, 2015), *report and recommendation adopted*, No. CV 14-5924, 2016 WL 8711393 (E.D.N.Y. Feb. 26, 2016) ("Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary.") (quoting *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995)).

Under Rule 15(a)'s liberal standard, a motion to amend should be denied *only if* "there is delay, bad faith, futility, or prejudice to the non-moving party." *Hussain*, 2015 WL 13227997, at *2 (quoting *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation omitted); *Perechu*, 2018 WL 11453940, at *1 (same) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

This Court in its *Individual Practices for Civil and Criminal Cases* also strongly advises nonmovants to avoid opposing a motion to amend on futility grounds and instead to strongly consider consenting to the amended complaint and raise any futility arguments in the context of a Rule 12 motion. *See* Individual Practices VI(I)(2) (citing *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699, 2021 WL 2075586, at *2 (S.D.N.Y. May 24, 2021) ("In the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss.").)

The party opposing a motion to amend bears the burden of establishing that the amendment should be denied. *See Hussain*, 2015 WL 13227997, at *2 (collecting cases).

While it is within the sound discretion of a district court to grant or deny leave to amend, "outright refusal to grant the leave without any justifying reason for its denial is an abuse of discretion." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201 (2d Cir. 2007) (quoting *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002)).

## ARGUMENT

### I.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO AMEND BECAUSE DEFENDANTS CANNOT SHOW ANY PREJUDICE

Whether analyzing Plaintiffs' motion under Rule 16(b)(4)'s good cause standard or Rule 15(a)'s liberal standard, Defendants will not be prejudiced by Plaintiffs' proposed amendments. Accordingly, the Court should grant Plaintiffs' motion in its entirety.

An assessment of prejudice includes consideration of "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Scalia*, 740 F. Supp. 3d at 275 (analyzing prejudice in context of Rule 16(b)(4)) (quoting *Block*, 988 F.2d at 350); *Bhatt v. Lalit Patel Phys. P.C.*, No. 18-CV-2063 (ILG) (SJB), 2019 WL 13144575, at *2 (E.D.N.Y. May 30, 2019) (analyzing prejudice in context of Rule 15(a)) (citing *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. May 11, 2012)).

When considering whether prejudice exists in the context of Rule 16(b)(4), "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Scalia*, 740 F. Supp. 3d at 275 (quoting *Pasternack*, 863 F.3d at 174). The same is true when evaluating prejudice under Rule 15(a). *See Kate Spade LLC v. Vinci Brands LLC*, No. 23-CV-5409 (LGS) (VF), 2024 WL 4449666, at *2 (S.D.N.Y. Oct. 9, 2024) ("Mere delay, without a showing of bad faith or prejudice, is not itself sufficient to justify denial of a motion under Rule 15(a).") (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000)); *Ispat Inland, Inc. v. Kemper Env't, Ltd.*, No. 05 CIV 5401 BSJ HBP, 2007 WL 2197837, at *1 (S.D.N.Y. July 31, 2007) ("Delay alone, in the absence of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend.") (citing *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-

35 (2d Cir. 1995); *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981); *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.,* 392 F.2d 380, 384 (2d Cir. 1968))).

The fact that the Court has already issued a non-final determination in response to Defendants' Rule 12 motion to dismiss does not provide a basis to deny Plaintiffs motion for leave to amend. In fact, case law holds the opposite. *See e.g., Cruz v. Loc. 32BJ*, No. 22-CV-03068 (JAV) (SDA), 2025 WL 47936, at *2 (S.D.N.Y. Jan. 8, 2025) ("For the sake of judicial efficiency, and consistent with the Second Circuit precedent .... it is the 'usual practice' in this Circuit to grant leave to amend after granting a motion to dismiss.") (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2017 WL 11569235, at *2 (S.D.N.Y. Sept. 27, 2017) (granting request for leave to amend made after full briefing of motion to dismiss); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *Iglesias v. HRA Pharma Am., Inc.*, No. 22-CV-8398 (JHR), 2023 WL 5277424, at *1 (S.D.N.Y. Aug. 16, 2023) ("Although Defendant's motion to dismiss is fully briefed, Plaintiff's request is 'unlikely to cause undue delay' since (1) this action was filed less than a year ago and (2) 'Plaintiff[] seek[s] leave to amend prior to the filing of [an] answer.'").

Further, "[i]t is well established ... that '[t]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Hegazy v. Halal Guys, Inc.*, No. 22 CIV. 1880 (JHR), 2024 WL 3988141, at *4 (S.D.N.Y. Aug. 28, 2024) (citing *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1357946, at *4 (S.D.N.Y. May 12, 2009) (quoting *United States v. Continental Illinois Nat'l*

*Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir.1989) (cleaned up)); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. Jan. 7, 2016) (rejecting the argument that additional discovery justified denying leave to amend, and explaining that although further discovery would be necessary, "the possibility that an amendment will require the expenditure of additional time, effort, or money [does] not constitute undue prejudice.") (alteration in original) (internal quotation marks omitted)).

Courts have also recognized that denying leave to amend and "forcing [Plaintiffs] to seek relief [for their additional claims] in [a] separate action[] would be illogical and unnecessarily duplicative." *Hegazy*, 2024 WL 3988141, at *4 (citing *Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21 Civ. 7740 (JPC) (RWL), 2023 WL 6066168, at *4 (S.D.N.Y. Sept. 18, 2023) (internal quotation marks omitted) (cleaned up) (granting leave to amend)). In such cases, courts have acknowledged that denying leave to amend is a waste of judicial resources. *See Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96 Civ. 1829 (DCF), 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) ("[F]orcing [Plaintiff] to institute a new action against the [] defendants would run counter to the interests of judicial economy. If that separate lawsuit were not eventually consolidated with this one, it might well require the repetition of many of the same efforts expended in this case."); *Hegazy*, 2024 WL 3988141, at *4 ("Finally, the Court agrees with Plaintiffs that, '[e]ven if Defendants . . . have to expend some amount of additional resources[] to litigate the additional FWWL claim, those resources are unlikely to be as great as the parties would have to expend if Plaintiffs are forced to bring a second action to vindicate their claims.'"); *Scalia,* 740 F. Supp. 3d at 278 ("Moreover, judicial economy is served by granting the Motion to Amend in full, permitting the [plaintiff] to file an Amended Complaint that pleads an FLSA retaliation claim based on all three theories.... Defendants have had notice of all three FLSA

9

retaliation theories since the Motion to Amend was filed in December 2023, even before the parties stipulated to the scope of the retaliation discovery.") (emphasis added).

Here, Defendants will not be required to expend additional resources, much less "significant" resources, if the amendments are permitted. To date, Defendants have conducted no discovery, served no written discovery requests, taken no depositions, and have not even filed an answer. All formal discovery has been undertaken exclusively by Plaintiffs. Accordingly, permitting the amendments will not oblige Defendants to redo any discovery or trial preparation.

Nor will the amendments meaningfully delay the case. The Court has already granted Plaintiff Caramore leave to pursue her First Amendment claims, and those claims will move forward regardless of whether the Plaintiffs are permitted to add new claims. Defendants will already brief a Rule 12 motion (or file an answer) addressing Plaintiff Caramore's allegations; responding to the District's and Board's aligned claims imposes, at most, a negligible incremental burden. Any additional briefing time is therefore de minimis and falls well short of the "significant delay" that could amount to prejudice.

Allowing the District and Board to amend their First Amendment overbreadth claim likewise causes no prejudice. The Court's March 27 Decision dismissed that claim only because the earlier pleadings did not allege facts triggering the "constitutional proscription" exception to New York's capacity-to-sue rule. (ECF No. 60, at 28 n.16.) The proposed Second Amended Complaint remedies that deficiency: Plaintiff Caramore now pleads detailed facts showing that enforcement of Part 123 would compel the District and Board to violate their employees' First Amendment rights. (Ex. A ¶¶ 116–167.) Those allegations squarely invoke the constitutional proscription exception and restore the District's and Board's capacity to sue alongside Plaintiff Caramore in her official capacity.

Granting leave to add that overbreadth claim will not expand discovery or prolong the schedule. Discovery on First Amendment issues is complete, and any residual discovery would overlap entirely with the claims Plaintiff Caramore is already pursuing with the Court's express approval. In short, permitting the amended pleading promotes judicial economy, avoids duplicative litigation, and leaves Defendants no plausible claim of prejudice.

Permitting the amendments promotes judicial economy and avoids duplicative litigation. If the additional District and Board claims were forced into a separate action, the parties—and this Court—would face a second round of pleadings, discovery, and motion practice covering the same factual ground already at issue here. Courts routinely recognize that denying leave under such circumstances is "illogical and unnecessarily duplicative" and wastes judicial resources. Granting leave here will consolidate all related claims in a single proceeding, conserve party and judicial resources, and advance the efficient resolution of the dispute.

## II.    PLAINTIFFS SATISFY RULE 16(B)(4)'S GOOD CAUSE STANDARD

Plaintiffs the District and Board of Education have good cause to assert their proposed claims under Title VI (Fourth Cause of Action), Title VII (Fifth Cause of Action), 42 U.S.C. § 1981 (Sixth Cause of Action), the Dormant Commerce Clause of the United States Constitution (Seventh Cause of Action), and the Indian Commerce Clause of the United States Constitution (Eighth Cause of Action) because these claims are based on the existence of a legally binding, written agreement between the District and the Native American Guardian's Association and the Board of Directors of the Native American Guardian's Association (collectively "NAGA") that was fully executed on May 15, 2025 (hereinafter the "MSD-NAGA Agreement"), as well as a recently announced federal investigation into civil rights violations.

On April 25, 2025, the U.S. Department of Education ("DOE") launched a Title VI

11

investigation into the New York Department of Education, Board of Regents for an alleged violation of federal civil rights law. In its public statement, the DOE indicated that "OCR will assess whether New York's threat to withhold funding if the Massapequa School District does not eliminate its Native American mascot constitutes discrimination on the basis of race and national origin."[2] This investigation was initiated following two formal Title VI complaints filed against the New York Department of Education Board of Regents for civil rights violations.

These developments materially altered the legal and factual landscape. The pendency of a federal civil rights investigation—triggered by complaints alleging racial and national origin discrimination—raised new and significant questions about whether compliance with Part 123 could itself expose Plaintiffs to legal liability. In particular, Plaintiffs were compelled to re-evaluate the legal implications of being pressured by a state agency to take action that, according to OCR's inquiry, may constitute federally prohibited discrimination.

The emergence of this new fact pattern—active Title VI complaints, an ongoing OCR investigation, and the resulting risk of federal civil rights liability—provided an independent and compelling basis for Plaintiffs to pursue additional claims under Title VI and Title VII. Upon identifying the potential for civil rights violations arising from compelled compliance with Part 123, Plaintiffs have acted promptly to seek leave to amend.

Plaintiffs were diligent in seeking leave to assert their new contract-based and civil rights claims given that the underlying contract went into effect just last week on May 15, 2025 and the federal investigation was launched on April 25, 2025. Good cause exists to assert these claims under such circumstances. *See e.g.*, *Scalia*, 740 F. Supp.3d at 277 (granting leave to amend where

---

[2] U.S. Dep't of Educ., Press Release, U.S. Dep't of Educ. Launches Title VI Probe into N.Y. School Mascot Controversy (Apr. 25, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-launches-title-vi-probe-new-york-school-mascot-controversy.

motion was brought "less than two months of learning about conduct that formed the crux of the proposed [new] claim"); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) ("[Plaintiff's] argument that it discovered the facts underlying its new cause of action for breach of the supply agreement followed by filing a motion to amend within two months of acquiring the information is sufficient to show diligence."); *see Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 WL 1830416, at *4 (S.D.N.Y. May 1, 2013) (granting leave to amend under the Rule 16 standard when the movant sought to add claims "one month after the final deposition upon which its [new] allegations rely"); *Permatex, Inc. v. Loctite Corp.*, No. 3 Civ. 943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (granting movant's motion for leave to amend when the motion was filed "less than two months" after learning new facts).

Good cause also exists for Plaintiff Jeanine Caramore to assert a new First Amendment claim based on the violation of her First Amendment rights as an incumbent school board member who is not a member of a tribal nation and who plans to run for re-election (Third Cause of Action). Plaintiff Caramore is one year into her three-year term as a Board Member. Last month, she decided to run again when her term is up in 2027, while her son is in 11th grade, so she can remain on the Board through his high school graduation. This new factual development—Ms. Caramore's decision to seek re-election in 2027 so she may serve through her son's graduation—combined with the Court's earlier grant of leave to amend, supplies good cause for adding this discrete First Amendment claim.

Good cause also exists under Rule 16(b)(4) for Plaintiffs to assert a State-Bill-of-Attainder claim because the amendment introduces few new facts, imposes no additional discovery burden on Defendants, and advances judicial economy by consolidating all viable constitutional theories

13

in a single action. The claim arises from the very same operative conduct already pleaded—Part 123's categorical sanctions of school districts that use Indigenous names or imagery. Defendants have not propounded any discovery, taken depositions, or even filed an answer; they cannot credibly argue prejudice or surprise, and any incremental briefing is negligible relative to the cost of duplicative litigation.

## III.    PLAINTIFFS SATISFY RULE 15(A)'S LIBERAL STANDARD FOR AMENDMENTS

Plaintiffs are also entitled to amend under Rule 15(a)'s liberal standard because Defendants cannot show undue delay, prejudice, bad faith, or futility.

At the outset, the Court should grant Plaintiffs' motion to amend because there is no undue delay or prejudice, as discussed above. (*See supra* Point I.) Nor can Defendants demonstrate bad faith. Conclusory allegations of bad faith are insufficient to warrant denial of a motion to amend. *See Dalewitz v. Procter & Gamble Co.*, No. 22-CV-07323 (NSR), 2025 WL 764023, at *3 (S.D.N.Y. Mar. 11, 2025) (a defendants' conclusory allegations of bad faith are insufficient to denying a plaintiff's amendment). As discussed above, Plaintiffs seek leave to assert contractual claims based on a legally binding, written agreement between the District and NAGA, and claims under Title VI and Title VII based on a significant change to the legal and factual landscape. (*See supra* Point II.)

Defendants cannot successfully oppose Plaintiffs' motion to amend on futility grounds either. This Court in its *Individual Practices for Civil and Criminal Cases* strongly urges defendants to preserve futility-based arguments for a Rule 12 motion, rather than in opposition to a motion to amend. (*See* Individual Practices VI(I)(2) (citing *Env't Sols. Assocs. Grp., LLC*, 2021 WL 2075586, at *2) ("In the interests of judicial economy and in the absence of undue prejudice,

14

the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss.").)

Other courts have taken the same approach to futility-based arguments. *See e.g.*, *Biwen Liang v. Home Reno Concepts LLC*, No. 17-CV-3503-SJB, 2018 WL 1401801, at *3 (E.D.N.Y. Mar. 19, 2018) ("It is a far better conservation of judicial and party resources to permit the amendment, declare the third amended complaint as the operative complaint, and let any order on a motion to dismiss determine the facial validity of the RICO claim."); *GGC Int'l Ltd. v. Ver*, No. 24 CIV. 1533 (JPC), 2025 WL 81319, at *2 (S.D.N.Y. Jan. 13, 2025) ("In the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that [such] arguments are better suited for consideration in the context of a motion to dismiss.") (collecting cases).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to file a proposed Second Amended Complaint in the form attached to the accompanying Declaration of Chelsea Weisbord, together with such other and further relief as the Court may deem just and proper.

Dated: Carle Place, New York
      May 19, 2025

                                           SOKOLOFF STERN LLP
                                           *Attorneys for Plaintiffs*

By: _____
                                           Steven C. Stern
                                           Chelsea Weisbord
                                           179 Westbury Avenue
                                           Carle Place, New York 11514
                                           (516) 334-4500
                                           File No. 230195

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
*Attorneys for Plaintiffs*

By: _____
    Oliver Roberts
    2300 N Street, NW, Suite 643
    Washington, DC 20037

16