UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, JEANINE CARAMORE, in her capacity as a Board of Education Member and a Resident/Parent of the School Community, | 2:23-cv-07052 (SJB/LGD) |

<i>Plaintiffs</i>,

-against-

NEW YORK STATE BOARD OF REGENTS, LESTER W. YOUNG, JR, in his official capacity as Chancellor of the New York State Board of Regents, JUDITH CHIN, in her official capacity as Vice Chancellor of the New York State Board of Regents, ROGER TILLES, in his official capacity as a member of the New York State Board of Regents, CHRISTINE D. CEA, in her official capacity as a member of the New York State Board of Regents, WADE S. NORWOOD, in his official capacity as a member of the New York State Board of Regents, SUSAN W. MITTLER, in her official capacity as a member of the New York State Board of Regents, FRANCES G. WILLS, in her official capacity as a member of the New York State Board of Regents, ARAMINA VEGA FERRER, in her official capacity as a member of the New York State Board of Regents, SHINO TANIKAWA, in her official capacity as a member of the New York State Board of Regents, ROGER P. CATANIA, in his official capacity as a member of the New York State Board of Regents, ADRIAN I. HALE, in his official capacity as a member of the New York State Board of Regents, HASONI L. PRATTS, in her official capacity as a member of the New York State Board of Regents, PATRICK A. MANNION, in his official capacity as a member of the New York State Board of Regents, SEEMA RIVERA, in her official capacity as a member of the New York State Board of Regents, BRIAN KRIST, in his official capacity as a member of the New York State Board of Regents, KEITH B. WILEY, in his official capacity as a member of the New York State Board of Regents, and FELICIA THOMAS-WILLIAMS, in her official capacity as a member of the New York State Board of Regents,[1]

<i>Defendants</i>.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the names of the Regents, all sued in their official capacity only, who are no longer serving have been removed and replaced with the current Regents. *See* https://www.regents.nysed.gov/members.

**MEMORANDUM OF LAW IN OPPOSTION TO**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

Helena Lynch
Assistant Attorney General

Rakim Johnson
Assistant Attorney General

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

CHALLENGED REGULATION: TEXT AND NOTICE OF ADOPTION..................................3

ARGUMENT.................................................................................................4

POINT I
THE COURT LACKS JURISDICTION OVER THIS MOTION DUE TO PLAINTIFFS'
NOTICE OF APPEAL.......................................................................................4

POINT II
PLAINTIFFS' MOTION TO ADD PROPOSED CAUSES OF ACTION FOUR THROUGH
NINE SHOULD BE DENIED AS PREJUDICIAL AND MADE IN BAD FAITH ......................5

POINT III
PLAINTIFFS' MOTION SHOULD BE DENIED AS FUTILE BECAUSE THE NEWLY
PROPOSED CAUSES OF ACTION WOULD NOT SURVIVE A MOTION TO DISMISS .......8

    A. Plaintiffs' proposed First Amendment overbreadth and free speech claims (first and third
       causes of action) would not survive a motion to dismiss insofar as they are asserted by the
       District or the Board Plaintiffs............................................................................8

        1. The District and Board Plaintiffs lack capacity to assert an overbreadth challenge
           to Part 123 ........................................................................................8

        2. The District and Board Plaintiffs lack standing to assert an overbreadth or free
           speech challenge to Part 123................................................................12

    B. Plaintiffs' proposed Title VI claim would not survive a motion to dismiss .....................14

    C. Plaintiffs' proposed Title VII claim would not survive a motion to dismiss....................18

    D. Plaintiffs' proposed 42 U.S.C. § 1981 claim would not survive a motion to dismiss .......20

    E. Plaintiffs' dormant Commerce Clause claim would not survive a motion to dismiss.......23

    F. Plaintiffs' Indian Commerce Clause claim would not survive a motion to dismiss..........25

    G. Plaintiffs' Bill of Attainder Clause claim would not survive a motion to dismiss ............28

        1. Part 123 is not retrospective................................................................28

        2. Part 123 does not specify persons.........................................................29

        3. Part 123 does not impose punishment, and the lack of a judicial trial is therefore
           irrelevant ........................................................................................29

CONCLUSION............................................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*ACORN v. United States*,
    618 F.3d 125 (2d Cir. 2010)..................................................................................28, 29, 30

*Aparicio v. Christian Union, Inc*.,
    No. 18-cv-0592, 2019 WL 1437618 (S.D.N.Y. Mar. 29, 2019)...............................19

*Alvarado v. United Hospice, Inc*.,
    631 F. Supp. 3d 89 (S.D.N.Y. 2022)......................................................................20

*Application of Whitehaven S.F., LLC v. Spangler*,
    45 F. Supp. 3d 333 (S.D.N.Y. 2014)......................................................................17

*Barton v. Warren Cty.; Nathan York*,
    No. 119-cv-1061, 2020 WL 4569465 (N.D.N.Y. Aug. 7, 2020)...........................18

*Blakeman v. James*,
    2:24-cv-1655, 2024 WL 3201671 (E.D.N.Y. Apr. 4, 2024)..................................13

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)...............................................................................................10

*Buon v. Spindler*,
    65 F.4th 64 (2d Cir. 2023) .....................................................................................19

*Burch v. Pioneer Credit Recovery, Inc*.,
    551 F.3d 122 (2d Cir. 2008).....................................................................................5

*California Fed. Sav. & Loan Ass'n v. Guerra*,
    479 U.S. 272 (1987)..........................................................................................15, 19

*Cambridge Central School District v. N.Y. State Education Dep't*,
    Index No. 902161-22 (Sup. Ct. Albany County) ............................................ *passim*

*Charles v. City of New York*,
    No. 21 Civ. 5567, 2023 WL 2752123 (S.D.N.Y. Mar. 31, 2023) ..........................21

*Consol. Edison Co. of New York v. Pataki*,
    292 F.3d 338 (2d Cir. 2002)...................................................................................28

*D.C. by Conley v. Copiague Union Free Sch. Dist*.
    No. 16-cv-4546, 2017 WL 3017189 (E.D.N.Y. July 11, 2017)..............................14

*DeCastro v. City of New York,*
No. 16-Cv-3850, 2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020)................................5

*Denny v. Barber,*
576 F.2d 465 (2d Cir. 1978)................................................................................4, 5

*Droppleman v. Horsely,*
372 F.2d 249 (10th Cir. 1967) ................................................................................5

*Farrell v. Burke,*
449 F.3d 470 (2d Cir. 2006)....................................................................10, 11, 13

*General Bldg. Contractors Ass'n v. Pennsylvania,*
458 U.S. 375 (1982)...............................................................................................22

*Gen. Motors Corp. v. Tracy,*
519 U.S. 278 (1997).........................................................................................23, 24

*Grace v. Rosenstock,*
228 F.3d 40 (2d Cir. 2000)......................................................................................5

*Grand Opera Co. v. Twentieth Century-Fox Film Corp.,*
235 F.2d 303 (7th Cir. 1956) ..................................................................................5

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
425 F.3d 158 (2d Cir. 2005)..................................................................................25

*Grochowski v. Phoenix Const.,*
318 F.3d 80 (2d Cir. 2003)......................................................................................7

*Hernandez v. Coughlin,*
18 F.3d 133 (2d Cir. 1994)......................................................................................4

*Hill v. City of New York,*
136 F. Supp. 3d 304 (E.D.N.Y. 2015) ..................................................................21

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*
846 F.3d 58 (2d Cir. 2017)......................................................................................9

*Kearns v. Cuomo,*
415 F. Supp. 3d 319 (W.D.N.Y. 2019) .....................................................14, 15, 19

*Kramer v. Time Warner Inc.,*
937 F. 2d 767 (2d Cir. 1991)................................................................................18

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*,
 969 F.2d 1384 (2d Cir. 1992) ................................................................4

*Matter of Extradition of McMullen*,
 989 F.2d 603 (2d Cir. 1993) ...............................................................28

*McCarthy v. Dun & Bradstreet Corp.*,
 482 F.3d 184 (2d Cir. 2007) .................................................................6

*Merola v. Cuomo*,
 427 F. Supp. 3d 286 (2019) ................................................................10

*Mescalero Apache Tribe v. Jones*,
 411 U.S. 145 (1973) ......................................................................25, 26

*Moviecolor Ltd. v. Eastman Kodak Co.*,
 288 F.2d 80 (2d Cir. 1961) ...................................................................5

*New York Pet Welfare Ass'n, Inc. v. City of New York*,
 850 F.3d 79 (2d Cir. 2017) ............................................................23, 24

*Nixon v. Administrator of General Services*,
 422 U.S. 425 (1977) ...........................................................................29

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
 769 F.3d 105 (2d Cir. 2014) ..........................................................26, 27

*Patterson v. Cnty. of Oneida, N.Y.*,
 375 F.3d 206 (2d Cir. 2004) ...............................................................21

*Perard v. Jamaica Hosp. Med. Ctr.*,
 No. 18-cv-6661, 2020 WL 5633153 (E.D.N.Y. Sept. 20, 2020) ...........20

*Pistolesi v. Calabrese*,
 No. 11 Civ. 5598, 2015 WL 1573364 (S.D.N.Y. Apr. 9, 2015) .......15, 19

*Presbyterian Church Of Sudan v. Talisman Energy, Inc.*,
 582 F.3d 244 (2d Cir. 2009) .................................................................6

*Rodriguez v. Boursiquot*,
 No. 09 Civ. 0802, 2010 WL 985187 (S.D.N.Y. Mar. 17, 2010) ...........14

*Rothman v. Gregor*,
 220 F.3d 81 (2d Cir. 2000) ...................................................................4

*Schlessinger v. Valspar Corp.*,
  686 F.3d 81 (2d Cir. 2013)..................................................................................17

*Schuler v. Bd. of Educ. of Cent. Islip Union Free School Dist.*,
  No. 96-cv-4702, 2000 WL 134346 (E.D.N.Y. Feb.1, 2000) ...............................15

*Segal v. Gordon*,
  467 F.2d 602 (2d Cir. 1972).................................................................................4

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*,
  468 U.S. 841 (1984)...........................................................................................28

*Selevan v. New York Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009)...........................................................................23, 24

*Soule v. Connecticut Ass'n of Sch., Inc.*,
  90 F.4th 34 (2d Cir. 2023) .................................................................................12

*Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v.
  Nat'l Collegiate Athletic Ass'n*,
  715 F.3d 1089 (8th Cir. 2013) ...........................................................................22

*Thompson v. Elev8 Ctr. New York, LLC*,
  No. 20 Civ 9581, 2023 WL 6311591 (S.D.N.Y. Sept. 28, 2023) ...........................5

*Thompson v. Harry C. Erb, Inc.*,
  240 F.2d 452 (3d Cir. 1957).................................................................................5

*Tolbert v. Queens College*,
  242 F.3d 58 (2d Cir. 2001).................................................................................15

*Town of Babylon, NY v. James*,
  707 F. Supp. 3d 213 (E.D.N.Y. 2023) ................................................................12

*United States v. Stevens*,
  559 U.S. 460 (2010)...........................................................................................10

*United States v. Thompson*,
  896 F.3d 155 (2d Cir. 2018)...............................................................................10

*Vidal v. Advanced Care Staffing, LLC*,
  No. 122-cv-05535, 2023 WL 2783251 (E.D.N.Y. Apr. 4, 2023) .........................16

*Warner Cable Commc'ns, Inc. v. City of Niceville*,
  911 F.2d 634 (11th Cir. 1990) ...........................................................................13

*Yzaguirre v. KIPP NYC Pub. Charter Sch.*,
No. 24 Civ. 1500, 2025 WL 795732 (S.D.N.Y. Feb. 7, 2025) ..............................................16

**United States Constitution**                                                    **Page**

art. I, § 8, cl. 3 ....................................................................................................2, 25
art. I, § 9 ......................................................................................................................28
art. I, § 10 ...............................................................................................................2, 28

First Amendment ....................................................................................................*passim*

**Federal Statutes**                                                               **Page**

42 U.S.C. § 1981 ..................................................................................................*passim*
42 U.S.C. § 1983 ...............................................................................................20, 21
42 U.S.C. § 2000d ...............................................................................................2, 15
42 U.S.C. § 2000e-2(a) ..............................................................................................2
42 U.S.C. § 2000e-5 ...............................................................................................19

**Federal Rules of Evidence**                                                      **Page**

201(b)(2), (c)(1) .........................................................................................................4

**Federal Rules of Civil Procedure**                                               **Page**

15(a) ...............................................................................................................................5

**New York State Statutes**                                                        **Page**

Education Law
§ 306(2) .....................................................................................................................29

**New York State Regulations**                                                     **Page**

N.Y. Comp. Codes R. & Regs. tit. 8
§ 123.1.................................................................................................................1, 7, 16
§ 123.2.......................................................................................................3, 7, 25, 29
§ 123.3.........................................................................................................3, 6, 7, 29
§ 123.4.............................................................................................................*passim*
§ 123.5.............................................................................................................*passim*

**Other Authorities**                                                              **Page**

*Appeal of McMillan*, Decision No. 18,058 (Nov. 29, 2021)...........................................4

2023 NY REG TEXT 631927 (May 3, 3023)................................................................1

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs' motion for leave to file their Second Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs, Massapequa Union Free School District (the "District"), the Massapequa Union Free School District Board of Education (the "Board"), and school board member Jeanine Caramore, seek to revive their unsuccessful challenge to Part 123 of the Regulations of the Commissioner of Education, N.Y. Comp. Codes R. & Regs. tit. 8 ("8 NYCRR") §§ 123.1-123.5 ("Part 123"). Part 123 prohibits New York State public school districts from using Indigenous names, logos, or mascots to represent their respective schools, primarily in the context of interscholastic sports, while allowing their use for classroom instruction. Plaintiffs seek leave to amend their most recently operative pleading, the "Amended and Verified Complaint and Petition," Docket Entry ("DE") 24 ("Amended Complaint" or "Am. Compl."), to add several new causes of action.

Defendants adopted Part 123 to further the "state interest in providing a safe and supportive learning environment for every child." 2023 NY REG TEXT 631927 ("Notice of Adoption," annexed as Exhibit 1 to Declaration of Helena Lynch ("Lynch Decl.") at 2. In adopting Part 123, SED cited an overview of academic studies that addressed the use of Native American mascots. *Every* study reviewed concluded either that the use of Native American mascots had negative effects on Native Americans or that such mascots activated, reflected, or reinforced stereotyping and prejudice among non-Native persons. *Id*. at 2-3.

In a Memorandum and Order dated March 27, 2025 ("Dismissal Order," DE 60), the Court granted Defendants' motion to dismiss all then-remaining claims in the Amended Complaint. *See, e.g.*, Dismissal Order at 88-89. The Court allowed Plaintiff Caramore, in her personal capacity

only, leave to amend her First Amendment and overbreadth claims. *Id.* at 52, 70. Plaintiffs, however, by their motion and Proposed Second Amended Complaint ("PAC"), now seek leave to reinvent the litigation by adding causes of action asserting that Part 123: (1) is overbroad in violation of the First Amendment (first cause of action, PAC ¶¶ 117-126) and violates the First Amendment rights of incumbent and non-tribal member candidates for the Board (third cause of action, PAC ¶¶ 169-182), asserted by the District, the Board, and Caramore in her official capacity[2] (the Board and Caramore in her official capacity, collectively, the "Board Plaintiffs"); (2) is preempted by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (fourth cause of action, PAC ¶¶ 184-213); (3) is preempted by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (fifth cause of action, PAC ¶¶ 215-231); (4) is preempted by 42 U.S.C. § 1981 (sixth cause of action, PAC ¶¶ 233-246); (5) is preempted by the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (seventh cause of action, PAC ¶¶ 248-261); (6) is preempted by the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (eighth cause of action, PAC ¶¶ 263-276); and (7) violates the state Bill of Attainder Clause, U.S. Const. art. I, § 10, cl. 1 (ninth cause of action, PAC ¶¶ 278-291).

Plaintiffs' motion to amend should be denied. *First*, Plaintiffs have filed a notice of appeal in this matter, *see* DE 62, depriving this Court of jurisdiction. *Second*, Plaintiffs' motion is prejudicial and tainted with bad faith. Plaintiffs belatedly seek to reinvent their case and have even reversed their position on certain issues. In addition, Plaintiffs should not be permitted to amend based on newly manufactured facts, including their May 15, 2025 contract with the Native

---

[2] As explained below, *see infra*, Point III(A), Plaintiffs have provided conflicting information as to which parties are asserting the third cause of action.

American Guardians Association ("NAGA"). Finally, Plaintiffs' motion should be denied as futile because none of the proposed new claims would survive a motion to dismiss.

## CHALLENGED REGULATION: TEXT AND NOTICE OF ADOPTION

*Part 123*: Part 123 provides that, with one exception, "no public school in the State of New York may utilize or display an Indigenous name, logo, or mascot other than for purposes of classroom instruction." 8 NYCRR § 123.2. A single exception was created to account for certain already-existing agreements between a school district and a recognized nation: *Id*. § 123.4.

Boards of education are required to comply with Part 123 by the end of the 2024-2025 school year. *Id*. § 123.3(a). Public schools are also required to "prohibit school officers and employees when located on school property or at a school function from utilizing or promoting any Indigenous name, logo, or mascot." *Id*. § 123.5. This prohibition does not apply to school officers or employees who are members of a tribal nation. *Id*.

*Notice of Adoption*: The Notice of Adoption sets forth the anti-discriminatory State interest underlying Part 123, first set forth in a 2001 memo issued by then-Commissioner Mills, which concluded that "the use of Native American symbols or depictions as mascots can become a barrier to building a safe and nurturing school community and improving academic achievement for all students." Notice of Adoption at 2. Commissioner Mills recognized the "state interest in providing a safe and supportive learning environment for every child." *Id*.

The adoption of Part 123 effectively codifies a June 2022, Albany Supreme Court decision, *Cambridge Central School District v. N.Y. State Education Dep't*, Index No. 902161-22 (Sup. Ct. Albany Cnty.) (Decision/Order/Judgment, June 21, 2022) (the "*Cambridge* Decision," annexed as Exhibit 2 to Lynch Decl.),[3] that upheld a determination by the Commissioner of Education in

---

[3] The *Cambridge* Decision is a court document and may be considered in the context of

*Appeal of McMillan*, Decision No. 18,058 (annexed as Exhibit 3 to Lynch Decl.").[4] In *Appeal of McMillan*, the Commissioner determined that the decision by the Board of Education of the Cambridge Central School District to continue to use its "Indians" team name and logo was arbitrary and capricious and an abuse of discretion. *Appeal of McMillan* at 6.

The *Cambridge* Decision, as SED noted, "establishes that public schools are prohibited from utilizing Indigenous mascots." Notice of Adoption at 3. SED cited to the academic studies which unanimously demonstrate the harmful effects of the use of Indigenous mascots on school children. *Id.*

## ARGUMENT

**POINT I:     THE COURT LACKS JURISDICTION OVER THIS MOTION DUE TO PLAINTIFFS' NOTICE OF APPEAL**

The Second Circuit has repeatedly held that a district court lacks jurisdiction over an amended complaint where the plaintiff has already filed a notice of appeal with the circuit court. *See, e.g.*, *Hernandez v. Coughlin*, 18 F.3d 133, 138 (2d Cir. 1994); *Segal v. Gordon*, 467 F.2d 602, 608 n.12 (2d Cir. 1972); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978). To the extent Plaintiffs are taking steps to withdraw their appeal, the Court remains without jurisdiction while the appeal is pending.

---

examining the pleadings. *See* Fed. R. Evid. 201(b)(2), (c)(1); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000). The court can also consider the record in Cambridge, *see id.*, parts of which are submitted as Exhibits 4-10 to the Lynch Declaration.

[4] The Court may also take judicial notice of the content of the *Appeal of McMillan* decision, which is part of the record in the *Cambridge* matter. *Id.; see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.").

Other circuits have concurred in this assessment. *See, e.g.*, *Thompson v. Harry C. Erb, Inc.*, 240 F.2d 452, 454 (3d Cir. 1957); *Droppleman v. Horsely*, 372 F.2d 249, 250 (10th Cir. 1967); *Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303, 308 (7th Cir. 1956).

Only the Second Circuit could grant Plaintiffs permission to move to amend before this Court. *See Denny*, 576 F.2d at 471 ("[T]his court, if so advised, could itself now grant leave to amend or remand to the district court to allow amendment, . . . or affirm the dismissal without prejudice to the district court's entertaining an application to amend."); *see also Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir. 1961) (noting its power to affirm dismissal without prejudice to district court's entertaining a motion to amend).

Accordingly, the Court lacks jurisdiction over Plaintiffs' motion.

**POINT II:   PLAINTIFFS' MOTION TO ADD PROPOSED CAUSES OF ACTION FOUR THROUGH NINE SHOULD BE DENIED AS PREJUDICIAL AND MADE IN BAD FAITH**

"While Federal Rule of Civil Procedure 15(a) states that leave to amend should be granted when justice so requires, motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

"[A] court properly denies leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal quotation marks omitted); *DeCastro v. City of New York*, No. 16-Cv-3850, 2020 WL 4932778, at *10 (S.D.N.Y. Aug. 24, 2020); *see also Thompson v. Elev8 Ctr. New York, LLC*, No. 20 Civ. 9581, 2023 WL 6311591, at *12 (S.D.N.Y. Sept. 28, 2023) (a court "may deny a motion to amend when the movant

knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay" (internal quotation marks omitted)).

Several factors demonstrate that Defendants would experience undue prejudice if the Court were to allow Plaintiffs to add their proposed fourth through ninth causes of action. The first factor is the late stage of the litigation. Plaintiffs have already amended their complaint once, and discovery closed in September 2024. *See* DE 46. Defendants' motion to dismiss was fully briefed and decided in their favor, following oral argument. *See generally* Dismissal Order. The Court granted leave to replead only two specific claims: the First Amendment and overbreadth claims asserted solely by Plaintiff Caramore in her personal capacity.[5] Plaintiffs should not be permitted to remake this entire case more than a year and a half after its commencement and after all claims have been dismissed.

The second factor establishing prejudice is the fact that Part 123's effective date is the close of the 2024-2025 school year, *see* NYCRR §123.3(a), a fact Plaintiffs have known for more than two years, *see, e.g.*, Am. Compl. (DE 24) ¶¶ 66, 82, 87; *see also* original Complaint dated Sept. 22, 2023 (DE 2). Plaintiffs' attempt to reinvent their case at this late juncture should be rejected. *See Presbyterian Church Of Sudan v. Talisman Energy, Inc*., 582 F.3d 244, 267 (2d Cir. 2009) (affirming denial of motion to amend where proposed amended complaint would "dramatically alter the plaintiffs' theories of liability and the focus of the entire case" (internal quotation mark and alteration omitted)); *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of motion to amend where plaintiffs sought to amend "after an inordinate delay,"

---

[5] The deadline for Plaintiff Caramore to re-plead her personal capacity claims is stayed pending the resolution of this motion. *See* Docket Order dated May 8, 2025. Therefore, Defendants do not respond herein to any personal capacity claims that may be asserted by Plaintiff Caramore.

at which time "discovery had closed . . . and nearly two years had passed since the filing of the original complaint"); *Grochowski v. Phoenix Const*., 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of leave to amend where "plaintiffs delayed more than one year before seeking to amend their complaint" and discovery was complete). As the Court has already ruled, even if Plaintiff Caramore were to prevail on her First Amendment claims, only section 123.5 would be affected. *See* Dismissal Order at 70, n.26. The requirements of sections 123.1, 123.2, and 123.3 would not be in question, and Plaintiffs should not be permitted to use prejudicial tactics to disrupt the implementation of those regulations.

Plaintiffs' arguments that Defendants will not be prejudiced by the proposed new claims are conclusory and unpersuasive. Plaintiffs assert that any new discovery would be limited, Pl.'s Mem. at 11, but they omit any mention of potential discovery on their fourth through ninth causes of action, six entirely new claims that are unrelated to any First Amendment claims. Plaintiffs also argue that Defendants will not be prejudiced by the addition of the proposed new claims because Defendants did not take discovery earlier in this matter, *id*. at 10, but Plaintiffs fail to mention that Defendants expended resources responding to overly broad and burdensome discovery demands by Plaintiffs. *See* Letter dated July 2, 2024 (DE 36) (setting forth the unduly broad scope and burdensome nature of discovery sought).[6] Defendants will necessarily be required to expend additional resources if Plaintiffs seek further discovery.

Plaintiffs originally alleged that Native American Tribes or individuals should not be decision-makers as to whether a school district's use of Indigenous names or imagery is legal or not. *See* Compl. (DE 2) ¶ 100; Am. Compl. (DE 24) ¶ 97. Plaintiffs have reversed course, now

---

[6] Defendants' motion to stay discovery was denied without prejudice because it was not submitted as a joint motion. *See* text Order dated Jul 3, 2024.

asserting that, as of May 15, 2025, NAGA should be the sole decision-maker as to whether Plaintiffs may continue to use the "Chiefs" name and imagery. *See* PAC ¶¶ 100-115. Plaintiffs also originally objected that the tribal agreement exception (8 NYCRR § 124(b)) was "not appropriate" because the contracting tribe "may or may not represent the actual interests of the school's Native American constituents." Compl. ¶ 98; Am. Compl. ¶ 98. Plaintiffs again reverse course and now propose that NAGA be the sole and unilateral representative of the interests of the District's Native American constituents.

The new facts cited by Plaintiffs were manufactured by them only recently, which is not only prejudicial to Defendants but also evinces bad faith. Plaintiffs allege that the District entered into a contract with NAGA on May 15, 2025, *see* PAC ¶¶ 100-115, a week after Plaintiffs sought an extension of time to move to amend. *See* DE 65. This new fact is entirely manufactured by Plaintiffs and is a complete surprise to Defendants. Accordingly, insofar as the proposed new claims are based on the newly created contract between the District and NAGA, Plaintiffs' bad-faith tactics support denial of leave to add these claims.

**POINT III:     PLAINTIFFS' MOTION SHOULD BE DENIED AS FUTILE BECAUSE THE NEWLY PROPOSED CAUSES OF ACTION WOULD NOT SURVIVE A MOTION TO DISMISS**

Defendants are familiar with the Court's Individual Practice Rule VI(I)(2). Defendants respectfully submit that the circumstances presented here warrant a futility analysis.

**A. Plaintiffs' proposed First Amendment overbreadth and free speech claims (first and third causes of action) would not survive a motion to dismiss insofar as they are asserted by the District or the Board Plaintiffs**

**1.   The District and Board Plaintiffs lack capacity to assert an overbreadth challenge to Part 123.**

The District and Board Plaintiffs' proposed amended overbreadth claims suffer from the same infirmities that the Court identified in dismissing their initial overbreadth claims—that the

District and Board Plaintiffs lack capacity to assert such claims. In the Dismissal Order, the Court explained that "New York law provides that 'municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation.'" *See* Dismissal Order at 20 (quoting *City of New York v. State of New York*, 86 N.Y.2d 286, 289 (1995)). The Court then noted that the New York Court of Appeals has recognized only four "narrow" exceptions to this general rule, including "where the public corporation asserts that, if it is obliged to comply with the statute, that very compliance will force the corporation to violate a constitutional proscription." *See* Dismissal Order at 22 (quoting *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.* ("*In re World Trade Ctr. I*"), 846 F.3d 58, 60 (2d Cir. 2017)).

The Court found that the District and Board Plaintiffs failed to meet the constitutional proscription exception to New York's capacity rule because they did not allege that their compliance with Part 123 would violate the constitutional rights of school officials and employees. Specifically, the Court found that "[a]lthough the First Amendment contains a constitutional proscription, the only First Amendment-based claim of the School District Plaintiffs and School Board Plaintiffs challenges Part 123 for being impermissibly broad—not for requiring them to violate a constitutional proscription." *See* Dismissal Order at 26. Thus, the Court found that an overbreadth claim cannot satisfy the constitutional proscription exception to New York's capacity-to-sue rule. The Court's decision is, therefore, the law of the case.

The constitutional proscription exception requires a public corporation to allege that its very compliance with a statute or regulation "will force the corporation to violate a constitutional proscription." *See In re World Trade Ctr. I*, 846 F.3d at 60. New York courts have "interpreted constitutional . . . proscriptions to be something expressly forbidden" and have refused to find that

the constitutional proscription exception has been satisfied where the alleged constitutional violation is "steps removed and wholly speculative." *See Merola v. Cuomo*, 427 F. Supp. 3d 286, 292 (2019) (finding county clerk failed to allege challenged statute would force him to violate the constitutional proscription against disenfranchisement). As opposed to a violation of an "express" constitutional proscription, the overbreadth doctrine allows plaintiffs "to challenge a statute not because their own rights of free expression are violated, but because of a ***judicial prediction or assumption*** that the statute's very existence ***may*** cause others not before the court to refrain from constitutionally protected speech or expression." *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (emphasis added). Thus, any plaintiff asserting an overbreadth challenge necessarily "claims that[,] although a statute did ***not*** violate his or her [own] First Amendment rights, it would violate the First Amendment rights of ***hypothetical third parties*** if applied to them." *See Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (emphasis added). Plaintiffs' proposed overbreadth claims are by definition "[p]remised on a concern that 'enforcement of [Part 123] may deter or "chill" constitutionally protected [First Amendment activity].'" *See United States v. Thompson*, 896 F.3d 155, 162 (2d Cir. 2018). However, the potential deterrent effect of an otherwise constitutional regulation on hypothetical third parties is exactly the kind of "wholly speculative" constitutional violation that New York courts have found insufficient to satisfy the narrow constitutional proscription exception. *See Merola*, 427 F. Supp. 3d at 292.

Even assuming Part 123 were overbroad, it would not require the District to violate the constitutional proscription against curtailing free speech. To state an overbreadth claim, Plaintiffs must show that a substantial number of Part 123's ***potential*** applications are unconstitutional, "judged in relation to the [regulation's] plainly legitimate sweep." *See United States v. Stevens*, 559 U.S. 460, 473 (2010). Indeed, the Supreme Court has recognized that, rather than being

premised on a finding that the relevant statute or regulation violates the constitution, "an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court." *See Farrell*, 449 F.3d at 498. Thus, because the overbreadth doctrine by its terms presupposes that there are circumstances where Part 123 can be applied in accordance with the First Amendment, such a claim cannot support a finding that Part 123 expressly requires the District and Board Plaintiffs to violate the First Amendment.

Finally, the PAC does not remedy the deficiencies found in the Amended Complaint. First, Plaintiffs misstate the Court's order dismissing the District and Board Plaintiffs' overbreadth claims. The Court did not dismiss such claims "only because the earlier pleadings did not allege facts triggering the 'constitutional proscription' exception to New York's capacity-to-sue rule." *See* Pls.' Mem. at 10. Rather, the Court's dismissal was premised on the fact that "the only First Amendment-based claim of School District Plaintiffs and School Board Plaintiffs challenges Part 123 for being impermissibly broad—not for requiring them to violate a constitutional proscription." *See* Dismissal Order at 26. As in their First Amended Complaint, the only First Amendment-based claim asserted by the District and Board Plaintiffs in the PAC challenges Part 123 as impermissibly broad. As discussed above, the Court has already found that such a claim cannot satisfy the constitutional proscription exception to New York's capacity-to-sue rule.

Second, Plaintiffs' misread a footnote in the Dismissal Order. In this footnote, the Court rejected Plaintiffs' arguments that the District and Board Plaintiffs had capacity to sue based on the individual board members First Amendment claims. *See* Dismissal Order at 28 n.16. The Court clarified that no plaintiff stated a valid First Amendment challenge. *See* Dismissal Order at 28 n.16. The Court, however, did not state that the lack of capacity was due to those deficient pleadings. In fact, before considering the merits of the First Amendment claims of the individual

board members in their personal capacity, the Court had that the District and Board Plaintiffs lacked capacity to sue for the reasons stated above. Nothing in the PAC remedies this deficiency. As the Court recognized in its Dismissal Order, Plaintiffs fail to cite a single case holding that a public corporation may assert a First Amendment-based overbreadth challenge to a state statute. *See* Dismissal Order at 27-28. Accordingly, the District and Board Plaintiffs continue to "lack capacity to sue for First Amendment violations and therefore cannot bring a First Amendment-based overbreadth claim." *See* Dismissal Order at 28.

**2. The District and Board Plaintiffs lack standing to assert an overbreadth or free speech challenge to Part 123.[7]**

The District and Board Plaintiffs also lack standing to challenge Part 123 as impermissibly overbroad. Separate and apart from questions of capacity to sue, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists." *See Town of Babylon, NY v. James*, 707 F. Supp. 3d 213, 227-28 (E.D.N.Y. 2023) (referring to "[t]he irreducible constitutional minimum of standing"). A court lacks subject-matter jurisdiction if a plaintiff cannot show standing—*i.e.* that the plaintiff has a "personal stake in the outcome of the litigation." *See Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing U.S. Const. art. III § 2). "To establish Article III standing, a plaintiff must show '(i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Id*. (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). The "'plaintiff 'bears the burden of

---

[7] According to Plaintiffs' Memorandum of Law, the only proposed First Amendment claim by the District and Board Plaintiffs is their proposed overbreadth claim (the first cause of action). *See* Pls.' Mem. at 1. To the extent the proposed free speech claim in their proposed third cause of action is asserted by the District or the Board Plaintiffs, such a claim fails to satisfy the standing requirements of Article III for the same reasons articulated in Point III(A)(2).

alleging facts that affirmatively and plausibly suggest that he or she has standing to sue." *Id*. (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

Although the overbreadth doctrine is an exception to the general rule against third-party standing, in that it allows a party to argue that a statute would violate the First Amendment rights of hypothetical third parties not before the court, a party asserting such a claim must still "satisfy the Article III requirements of 'injury-in-fact[.]'" *Farrell*, 449 F.3d at 499. To demonstrate "injury in fact," the District and Board Plaintiffs must establish an invasion of a legally protected interest which is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *See Blakeman v. James*, No. 2:24-cv-1655, 2024 WL 3201671, at *15 (E.D.N.Y. Apr. 4, 2024). Here, the District and Board Plaintiffs cannot establish that they have suffered an injury in fact because the District and Board Plaintiffs do not have free speech rights protected by the First Amendment. *See* Dismissal Order at 27, n. 15. While some courts have recognized the existence of limited First Amendment rights of government entities, these rights are limited to those such as the right to lawfully petition the government; courts have uniformly held that, with respect to freedom of speech, the only First-Amendment-based right at issue here, a government "speaker is not itself protected by the [F]irst [A]mendment." *See Warner Cable Commc'ns, Inc. v. City of Niceville,* 911 F.2d 634, 638 (11th Cir. 1990). Given that the District and Board Plaintiffs lack any First Amendment free speech rights, they cannot assert they have suffered any constitutional injury due to Part 123. Thus, they lack standing to assert an overbreadth claim.

**B. Plaintiffs' proposed Title VI claim would not survive a motion to dismiss.**

The Court should deny leave to add a Title VI conflict preemption claim because such a claim would not survive a motion to dismiss and, therefore, amendment would be futile. Initially, any Title VI claim against the individual Defendants would have to be dismissed because "Title VI does not permit a claim against an individual in his official capacity." *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546, 2017 WL 3017189, at *10 (E.D.N.Y. July 11, 2017).

Plaintiffs' Title VI claim also would have to be dismissed for lack of standing. Plaintiffs lack Article III standing because they "failed to meet [their] burden to plausibly allege that [they have] suffered or will imminently suffer 'a concrete and particularized injury that is fairly traceable' to the implementation of" Part 123. *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 323 (W.D.N.Y. 2019), *aff'd,* 981 F.3d 200 (2d Cir. 2020). Plaintiffs do not allege, nor could they, that they have been excluded from any program, denied a benefit, or suffered discrimination based on their race, color, or national origin due to the adoption of Part 123.

"To have [statutory] standing to bring a Title VI claim, the plaintiff must 'allege that: (1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with the program or activity.'" *Rodriguez v. Boursiquot*, No. 09 Civ. 0802, 2010 WL 985187, at *4 (S.D.N.Y. Mar. 17, 2010) (quoting *Commodari v., Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)). Plaintiffs cannot show that they were intended beneficiaries of Title VI because the intended beneficiaries of Title VI are school children, not school districts, boards, or officials. *Id.; see also*

*Schuler v. Bd. of Educ. of Cent. Islip Union Free School Dist.*, No. 96-cv-4702, 2000 WL 134346, at *10 (E.D.N.Y. Feb.1, 2000).

Plaintiffs cannot circumvent the standing requirement by alleging that Part 123 is preempted by Title VI. *See Kearns*, 415 F. Supp. 3d at 323 (finding court lacks jurisdiction over preemption claim due to lack of plaintiff's standing); *Pistolesi v. Calabrese*, No. 11 Civ. 5598, 2015 WL 1573364, at *2 (S.D.N.Y. Apr. 9, 2015) (requiring plaintiff to show Article III standing as prerequisite to bringing its preemption claim). But even if Plaintiffs had standing, their preemption claim fails.

A state law may be preempted by a federal law "to the extent [the state law] actually conflicts with federal law." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987). Such a conflict occurs: (1) where "compliance with both federal and state regulations is a physical impossibility" or (2) where "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. (internal quotation marks and citation omitted). Neither of those circumstances can be found here.

Title VI states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must plausibly allege that (1) "the defendant discriminated against [it] on the basis of [national origin]," (2) the "discrimination was intentional," and (3) "the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations and quotation marks omitted).

A plaintiff must allege "the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yzaguirre v. KIPP NYC Pub. Charter Sch.*, No. 24 Civ. 1500, 2025 WL 795732, at *12 (S.D.N.Y. Feb. 7, 2025), *report and recommendation adopted sub nom. Yzaguirre v. Levin*, No. 24-cv-1500, 2025 WL 804771 (S.D.N.Y. Mar. 13, 2025) (internal quotation marks omitted). Plaintiffs allege neither intentional discrimination nor circumstances giving rise to a plausible inference of discriminatory intent.

As to the "events claimed to constitute intentional discrimination," Plaintiffs' allegations are refuted by the actual language of Part 123. Plaintiffs assert that the mandate to end the use of Indigenous names, logos, and mascots discriminates against Indigenous peoples. Am. Compl. ¶¶ 190-192. But Part 123 does not exclude any person or group from participation in a program, deny any person or group the benefits of that program, or discriminate against any person or group based on race, color, or national origin. Part 123 merely restricts the use of certain mascots to represent school sports teams. Plaintiffs' blunt assessment ignores Part 123's narrow focus. Part 123 has no effect whatsoever on the use of Indigenous names and imagery for classroom instruction. *Id*. § 123.1. Barring the appropriation of Indigenous names and imagery for use solely as mascots is not discrimination against Indigenous persons. Part 123 has no effect on the display and discussion of such important symbols in the appropriate academic context.

Plaintiffs also overstate Part 123's provision regarding agreements with tribes. Part 123 is intended to honor already existing agreements between districts and tribes. *Id*. § 123.4(b). Any contract designed to circumvent Part 123, however, would be unenforceable. "Under New York law, courts will not enforce contracts that are 'illegal, against public policy, or deficient in some other respect.'" *Vidal v. Advanced Care Staffing, LLC*, No. 122-cv-05535, 2023 WL 2783251, at

*12 (E.D.N.Y. Apr. 4, 2023) (quoting *64th Assocs., L.L.C. v. Manhattan Eye, Ear & Throat Hosp.*, 2 N.Y.3d 585, 589-90 (2004)); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 344 (S.D.N.Y. 2014), *aff'd* 633 F. App'x 544 (2d Cir. 2015) ("Because contracts against public policy are void, it is well-established that courts will not enforce such contracts or recognize rights arising from them." (internal quotation marks omitted)).

Courts will enforce an illegal contract only in limited circumstances not present here, where: "(1) the statutory violation is *malum prohibitum*; (2) the statute that renders the contract illegal does not specifically require that all contrary contracts be rendered null and void; and (3) the penalty imposed by voiding the contract is 'wholly out of proportion to the requirements of public policy.'" *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85 (2d Cir.), *certified question accepted*, 19 N.Y.3d 992 (2012), *certified question answered*, 21 N.Y.3d 166 (2013) (quoting *Benjamin v. Koeppel*, 85 N.Y.2d 549, 553 (1995)).

Here, the long public record of the harms caused by Indigenous mascots in ways prohibited by Part 123 establishes that the conduct prohibited by Part 123 is *malum in se*, *i.e*., inherently wrong. *See* Notice of Adoption; *Cambridge* Decision at 3-4, 7-18; Exs. 4-10. A contract designed to allow a school district to use Indigenous mascots in violation of Part 123 would also violate public policy. Accordingly, any agreement between a school district and any individual or entity, Indigenous or non-Indigenous, would, consistent with established law, be unenforceable insofar as it purports to violate Part 123, a valid regulation.

Plaintiffs also fail to plead "circumstances giving rise to a plausible inference of racially discriminatory intent." The intent behind Part 123 is to create a discrimination-free environment in public schools. As explained in the Notice of Adoption, the State has an interest in "providing a safe and supportive learning environment for every child." Notice of Adoption at 2. In adopting

Part 123, SED relied on studies that unanimously showed that the use of Native American mascots imposes either direct negative effects on Native Americans or the fostering of harmful stereotypes among non-Native persons. *Id*. at 3. SED also relied on the New York Association of School Psychologist's determination that the continued use of Indigenous mascots negatively affects all students. *Id*.

Plaintiffs assert that "Indigenous groups nationwide have opposed Part 123," but they cite the opinion of a single not-for-profit organization, NAGA. PAC ¶ 193. Defendants, by contrast, relied upon the overwhelming majority of Indigenous tribes, as well as educational professionals, who support ending the use of Indigenous names and imagery for sports teams. *See, e.g. Cambridge* Decision at 3-4, 7-8; Exs. 4-10.[8] And Part 123 is narrowly tailored to achieve the compelling government interest of protecting children from the proven harms of using Indigenous-themed mascots.

Plaintiffs' claim that the District will be harmed by Part 123 because of various risks and expenses, PAC ¶ 211, has nothing to do with a Title VI claim.

**C. Plaintiffs' proposed Title VII claim would not survive a motion to dismiss.**

Plaintiffs allege that 8 NYCRR § 123.5 violates Title VII by discriminating against unidentified Indigenous employees of the District. PAC ¶ 215. Plaintiffs' Title VII claim must also be dismissed as to all individual Defendants. *See, e.g.*, *Barton v. Warren Cty.; Nathan York*, No. 119-cv-1061, 2020 WL 4569465, at *11 (N.D.N.Y. Aug. 7, 2020).

---

[8] Other publicly available statements also supported Part 123. *See* Official Statement on NY Board of Regents Mascot Ban by Shinnecock Nation (Apr. 19, 2023), annexed as Ex. 13 to Lynch Decl. The Court may take judicial notice of this document. *Kramer v. Time Warner Inc*., 937 F. 2d 767, 774 (2d Cir. 1991).

Plaintiffs lack Article III standing to assert this claim because they do not allege any injury, much less a "concrete and particularized injury that is fairly traceable" to the implementation of Part 123. *Kearns*, 415 F. Supp. 3d at 323.

Plaintiffs also lack statutory standing. "Title VII's standing provision, codified at 42 U.S.C. § 2000e-5, authorizes civil suits by a 'person claiming to be aggrieved by an alleged unlawful employment practice.'" *Aparicio v. Christian Union, Inc*., No. 18-cv-0592, 2019 WL 1437618, at *10 (S.D.N.Y. Mar. 29, 2019). Plaintiffs do not claim to be aggrieved by an unlawful employment practice. Plaintiffs' Title VII claim seeks relief on behalf of unnamed Indigenous District employees. *See* PAC ¶ 225. Plaintiffs cannot circumvent the standing requirement by asserting their Title VI claim as a preemption claim. *See Kearns*, 415 F. Supp. 3d at 323; *Pistolesi*, 2015 WL 1573364, at *2. But even if Plaintiffs had standing to assert their Title VII claim, their claim still fails.

To state a conflict preemption claim, Plaintiffs must show either that compliance with both Title VII and Part 123 is a physical impossibility or that Part 123 stands as an obstacle to Congress' purpose in enacting Title VII. *California Fed. Sav. & Loan Ass'n*, 479 U.S. at 281. Plaintiffs can demonstrate neither.

To state a claim of a violation of Title VII, a plaintiff must plead that he or she "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (internal quotation marks and alterations omitted).

Plaintiffs fail to plead two of these essential elements. First, assuming that the District has any Indigenous employees, Plaintiffs fail to allege that any unidentified Indigenous District

employee would suffer an adverse employment action if the District complies with 8 NYCRR § 123.5. "An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 112 (S.D.N.Y. 2022) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). A change in working conditions is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Mathirampuzha*, 548 F.3d at 78).

Plaintiffs' alleged adverse action—a prohibition on wearing certain apparel at school events and on school grounds—does not meet any definition of an adverse employment action. *See Perard v. Jamaica Hosp. Med. Ctr.*, No. 18-cv-6661, 2020 WL 5633153, at *12 (E.D.N.Y. Sept. 20, 2020) ("Courts in the Second Circuit have found that being asked to comply with an employer's dress code is generally not considered an adverse employment action.").

Plaintiffs also fail to plausibly plead, as they must do, that Part 123 was motivated by discriminatory intent. As explained above, *see supra*, Point III(B), the public record, including court documents, demonstrates the *anti*-discriminatory intent of Part 123. *See* Notice of Adoption at 2-3; *Cambridge* Decision at 4, 7; Exs. 4-11.

And, as with their Title VI claim, speculative claims of liability and expenses have nothing to do with a Title VII violation, *see* PAC ¶ 228.

Because 8 NYCRR § 123.5 does not violate Title VII, school districts may lawfully comply with both Part 123 and Title VII, and Part 123 is therefore not preempted by Title VII.

**D. Plaintiffs' proposed 42 U.S.C. § 1981 claim would not survive a motion to dismiss.**

Plaintiffs' 42 U.S.C. § 1981 claim will not survive a motion to dismiss. First, Plaintiffs' § 1981 claim fails at the outset because Plaintiffs fail to satisfy the threshold requirement of pleading their claim under 42 U.S.C. § 1983. It is well established that "42 U.S.C. § 1983 provides

the sole cause of action available against state actors alleged to have violated § 1981." *Charles v. City of New York*, No. 21 Civ. 5567, 2023 WL 2752123, at *3 (S.D.N.Y. Mar. 31, 2023). Plaintiffs' § 1981 claim would, therefore, not survive a motion to dismiss.

Even if the Court were to construe Plaintiffs' § 1981 claim as asserted under 42 U.S.C. § 1983, amendment to add this claim would still be futile.

42 U.S.C. § 1981 prohibits discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004) (citing 42 U.S.C. § 1981(a) ("[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . .")). To establish a violation of § 1981, a plaintiff must show that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. *Hill v. City of New York*, 136 F. Supp. 3d 304, 329–30 (E.D.N.Y. 2015), *order amended and supplemented*, No. 13-cv-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019).

As explained above, *see supra* Point III(B), any agreement between a school district and any individual or entity, Indigenous or non-Indigenous, cannot be enforceable to the extent it violates Part 123, a valid regulation. As also set forth above, the known harms caused by the use of Indigenous mascots in ways prohibited by Part 123 establishes that a violation of Part 123 would be *malum in se*, *i.e.*, inherently wrong, not merely *malum prohibitum*. *See* Notice of Adoption; *Cambridge* Decision at 3-4, 7-18; Exs. 4-12.

And refusal to enforce an agreement purportedly allowing a school district to use Indigenous mascots in violation of Part 123 would be entirely consistent with public policy. *Id*.

In, addition, Plaintiffs fail to plead, as they must, purposeful discrimination. It is well established that 42 U.S.C. § 1981 "can be violated only by purposeful discrimination." *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *see also*; *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988).

Plaintiffs allege no facts that could support an inference that Part 123's purpose was to inflict harm on Indigenous persons or nations. And the public record of Part 123 shows just the opposite: the purpose of Part 123 is to *prevent* harms to both Indigenous and non-Indigenous school children.

In *Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. Nat'l Collegiate Athletic Ass'n*, 715 F.3d 1089 (8th Cir. 2013), the Eighth Circuit held that the plaintiffs failed to show discriminatory intent on the part of the National Collegiate Athletic Association ("NCAA") based on its prohibition on the display of Native American mascots, nicknames, and images at championship events, including the University of North Dakota's use of the "Fighting Sioux" nickname and imagery. *Id*. at 1092. The NCAA's stated motivation was to eliminate "hostile and abusive" mascots and imagery, but it agreed to allow continued use of the name if both the Spirit Lake and Standing Rock tribes approved. *Id*. The Standing Rock Tribe did not, which prevented certain mascots, nicknames, and imagery from being displayed at NCAA championships. *Id*. In response to a claim that this constituted discrimination, the Eight Circuit held that "[t]here is no evidence that the NCAA enacted the policy in order to eradicate Sioux culture," as alleged. *Id*. at 1093. The same reasoning applies here.[9]

---

[9] Although *Spirit Lake* involved a 42 U.S.C. § 1981 claim, the court ruled that there was no enforceable contract. 715 F.3d at 1093.

Because Plaintiffs fail to state a claim of a violation of 42 U.S.C. § 1981, they should not be granted leave to add a preemption claim based on § 1981.

**E. Plaintiffs' dormant Commerce Clause claim would not survive a motion to dismiss.**

Plaintiffs' claim that Part 123 violates the dormant Commerce Clause would not survive a motion to dismiss.

The dormant Commerce Clause prohibits state regulation "that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) (internal quotation marks and alteration omitted)).

To state a claim for "discrimination in violation of the Commerce Clause, a plaintiff must identify an in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009) (internal quotation marks and alteration omitted). "Both an in-state interest and an out-of-state competitor are necessary because laws that draw distinctions between entities that are not competitors do not discriminate for purposes of the dormant Commerce Clause." *Id.* (internal quotation marks omitted).

Courts examining dormant Commerce Clause claims first ask "whether the challenged law [1] discriminates against interstate commerce, or [2] regulates evenhandedly with only incidental effects on interstate commerce." *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 89 (2d Cir. 2017) (internal quotation marks omitted). Plaintiffs' proposed dormant Commerce Clause claim, which is premised solely on 8 NYCRR § 123.4(b), *see* PAC ¶¶ 251-256, fails to allege that section 123.4(b) either discriminates against or has an incidental effect on interstate commerce.

Plaintiffs' dormant Commerce Clause claim fails at the outset because they identify neither a competitive in-state market nor a competitive out-of-state market for Indigenous names and imagery. *See Selevan*, 584 F.3d at 95. A law that affects no competitive market does not "discriminate" for purposes of the dormant Commerce Clause, because "in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference." *Gen. Motors Corp*., 519 U.S. at 300.

Even if Plaintiffs could show that section 123.4(b) discriminates against out-of-state commerce, they still fail to allege a dormant Commerce Clause violation. A purportedly discriminatory law will not violate the dormant Commerce Clause "if the state shows [the law is] 'demonstrably justified by a valid factor unrelated to economic protectionism.'" *New York Pet Welfare Ass'n*, 850 F.3d at 89 (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992)). Part 123 is "demonstrably justified" by its anti-discriminatory purpose. *See* Notice of Adoption at 2-3; *Cambridge* Decision at 4, 7. This State interest has nothing to do with economic protectionism.

Nor do Plaintiffs plead a dormant Commerce Claim if they allege that Part 123 has an incidental effect on out-of-state Indigenous persons or nations. Courts "will uphold a nondiscriminatory law unless the challenger shows that 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *New York Pet Welfare*, 850 F.3d at 90 (quoting *Pike v. Brice Church*, 397 U.S. 137, 142 (1970)). Plaintiffs come nowhere near plausibly alleging that any burden imposed upon the non-existent competitive market is "clearly excessive" in relation to the proven benefits of Part 123.

Plaintiffs also allege that Part 123 could expose them to risks of legal liability and implementation costs, PAC ¶¶ 257, 258, but they fail to allege how these purported risks and costs relate in any way to interstate commerce.

Because Plaintiffs' dormant Commerce Clause claim would not survive a motion to dismiss, Plaintiffs should not be granted leave to add this claim.

**F. Plaintiffs' Indian Commerce Clause claim would not survive a motion to dismiss.**

Plaintiffs allege no facts that would establish their standing to assert a claim under the Indian Commerce Clause or that Part 123 in any way regulates commerce with tribes or otherwise relates to "Indian affairs."

The Indian Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . with the Indian Tribes." U.S. const. art. I, § 8, cl. 3. "'[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 173 (2d Cir. 2005) (quoting *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989)). "[T]he Indian Commerce Clause's grant of authority to the federal government, and preemption of state authority, extends only to activities occurring in 'Indian country,' *i.e.*, Indian lands within the territory of the United States." *Id*.

Part 123 regulates the conduct of public school districts within New York State. *See, e.g.*, 8 NYCRR § 123.2 (prohibiting use of Indigenous names and imagery by "public school[s] in the State of New York . . . other than for purposes of classroom instruction"). As with their other proposed causes of action, Plaintiffs misstate the scope of section 123.4(b), which permits a school district to use an Indigenous team name, logo, or mascot if it has a pre-existing contract with a recognized New York tribe. 8 NYCRR § 123.4(b).

To the extent § 123.4(b) affects any contract with Indigenous persons, it still does not violate the Indian Commerce Clause. Native Americans transacting business outside of reservations are subject to state regulation. *Grand River Enters.*, 425 F.3d at 174; *Mescalero*

*Apache Tribe v. Jones*, 411 U.S. 145, 148–49 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."); *id*. at 148 ("[E]ven on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law.").

In examining an Indian Commerce Clause challenge to a state regulation, courts in the Second Circuit consider two criteria: "the location of the targeted conduct and the citizenship of the participants in that activity." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs*., 769 F.3d 105 (2d Cir. 2014). Once a state law "reaches across a reservations borders," courts weigh the interests of the tribe, the federal government, and the State." *Id*. at 113. A State's interest becomes stronger "if 'the conduct of non-Indians' is in question." *Id*. (quoting *Mescalero Apache Tribe*, 411 U.S. at 144). In addition to the location and the citizenship of those affected by a state law, "a court must still understand 'what' a regulation targets to weigh interests appropriately." *Id*. A tribe's interest peaks when a regulation threatens a venture in which the tribe has invested significant resources." *Id*. "In contrast, a tribe has no legitimate interest in selling an opportunity to evade state law." *Id*. at 114.

In *Otoa-Missouria Tribe*, the Second Circuit affirmed the district court's conclusion that plaintiffs, tribes that operate payday lending sites, failed to show they were likely to succeed on their challenge to New York State's anti-usury laws. 769 F.3d at 112-118. The Second Circuit agreed that the plaintiffs failed to show that the payday loan agreements were on-reservation activity. *Id*. at 116-117.

Here, a contract between a public school district in New York State and an Indigenous nation or individual purportedly allowing the school district to use Indigenous names and imagery

would not involve conduct occurring on tribal lands. Part 123 applies solely to New York State public school districts. *See generally* Part 123. Thus, the location and citizenships inquiries show that any contract purportedly allowing use of Indigenous names and imagery by a New York State school district would be an off-reservation activity.

An examination of competing interests also eliminates any possibility that Part 123 violates the Indian Commerce Clause. Plaintiffs make only conclusory allegations that Part 123 interferes with tribal sovereignty. *See* PAC ¶¶ 271-272. But Plaintiffs do not identify any tribal interest at stake. Plaintiffs do not so much as suggest that any Indigenous nation has "invested significant resources" in developing agreements with school districts for use of Indigenous names and imagery. To the contrary, the majority of Tribes and others representing tribal interests have stated that the use of such names and imagery would be harmful to their interests. *See, e.g.*, Cambridge Decision at 3-4, 8; Exs. 4-9, 12.

Plaintiffs say nothing about the State interest in providing a safe and discrimination-free environment for all school children, or the interest in protecting both Indigenous and non-Indigenous students from the harms of Indigenous mascots. *See* Notice of Adoption at 2-3. These interests are no less strong than the State's interest in reducing exploitative payday loans at issue in *Otoe-Missouria Tribe*, which the court described as a "paradigmatic example of governmental action taken in the public interest." 769 F.3d at 110 (internal quotation marks omitted).

Plaintiffs fail to state a claim that Part 123, which involves conduct in New York State and furthers the public interest of protecting school children in New York State, and involves no competing interest of any Indigenous nation, is preempted by the Indian Commerce Clause.

**G. Plaintiffs' Bill of Attainder Clause claim would not survive a motion to dismiss.**

Plaintiffs' proposed new claim that Part 123 violates the state Bill of Attainder clause would not survive a motion to dismiss.

The Constitution prohibits the enactments of "bills of attainder." *See* U.S. Const. art. I, § 9 (prohibiting Congress); *id.* § 10 (prohibiting states). "[T]he Supreme Court has identified three elements of an unconstitutional bill of attainder: (1) 'specification of the affected persons,' (2) 'punishment,' and (3) 'lack of a judicial trial.'" *ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010) (quoting *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846–47 (1984)). In addition, a law can be a bill of attainder only if it focuses on past conduct. *See, e.g.*, *Selective Serv.*, 468 U.S. at 847.

**1. Part 123 is not retrospective.**

The Second Circuit has explained that "[a]nother indispensable element of a bill of attainder is its retrospective focus." *Consol. Edison Co. of New York v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2002). A bill of attainder "defines past conduct as wrongdoing and then imposes punishment on that past conduct." *Id.* The Bill of Attainder clauses "'intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment.'" *Matter of Extradition of McMullen*, 989 F.2d 603, 607 (2d Cir. 1993) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 18 L. Ed. 356, 366 (1867)); *see Selective Serv.*, 468 U.S. at 847 (making clear that bills of attainder only involve "past conduct" or "past activity").

Part 123 by its express terms imposes only prospective restrictions on certain future conduct, and Plaintiffs do not allege otherwise. Part 123, which was adopted on May 3, 2023, directs school districts to eliminate the use of Indigenous names, logos, and mascots for their

school teams by the close of the 2024-2025 school year. 8 NYCRR § 123.3(a). Part 123 also permits, for good cause shown, extensions of that deadline. *Id*. § 123.3(b).

## 2. Part 123 does not specify persons.

Part 123 is not a bill of attainder because it does not specify persons. Part 123 applies equally to all public school districts throughout New York, whether or not they currently use Indigenous names or imagery and whether or not they have done so in the past. 8 NYCRR § 123.2 ("Except as provided in section 123.4 of this Part, no public school in the State of New York may utilize or display an Indigenous name, logo, or mascot other than for purposes of classroom instruction.").

## 3. Part 123 does not impose punishment, and the lack of a judicial trial is therefore irrelevant.

Part 123 also does not impose punishment. Plaintiffs' conclusory allegations that Part 123 is punitive, *see* PAC ¶¶ 284, 289, do not withstand the most cursory examination. Three factors guide courts' consideration of whether a law inflicts a punishment: "(1) whether the challenged statute falls within the historical meaning of legislative punishment (historical test of punishment); (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes' (functional test of punishment); and (3) whether the legislative record 'evinces a [legislative] intent to punish' (motivational test of punishment)." *ACORN*, 618 F.3d at 136 (quoting *Selective Serv. Sys*., 468 U.S. at 852).

Any potential penalties for non-compliance with Part 123, which are removal of board members and withholding of funding, *see* N.Y. Educ. L. § 306(2), are not historical punishments because they do "not constitute a traditional form of punishment that is 'considered to be punitive per se," *ACORN*, 618 F.3d at 137; *see also Nixon v. Administrator of General Services*, 422 U.S. 425, 474 (1977) (identifying death, imprisonment, banishment, confiscation of property, and

exclusion of designated groups from employments or vocations). In *ACORN*, the Second Circuit held that congressional withholding of appropriations based on past conduct was not punitive under the historical test. Under *ACORN*'s reasoning, withholding of funding or removal of a board member for prospectively prohibited conduct—for which school districts had two years' notice to comply—could not be considered historically punitive.

Part 123 is not functionally punitive because it serves a non-punitive public purpose. The Notice of Adoption and the court's opinion in *Cambridge* set forth in detail the non-punitive purpose of Part 123. *See* Notice of Adoption at 2-3; Cambridge Decision at 4, 7.

As for the motivational test of punishment, Plaintiffs make no allegation that Part 123 was motivated by punitive intent. Nor could they plausibly make such an allegation. The public record is devoid of evidence that Part 123 was motivated by punitive intent and instead demonstrates the anti-discriminatory intent of Part 123. *See* Notice of Adoption at 2-3; Cambridge Decision at 4-7.

Because Plaintiffs' claim that Part 123 violates the State Bill of Attainder Clause could not survive a motion to dismiss, the Court should deny Plaintiffs motion for leave to add this groundless claim.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion, in its entirety and with prejudice, and grant such other and further relief that the Court deems just and equitable.

Dated: Mineola, New York
      June 27, 2025

**LETITIA JAMES**
Attorney General of the State of New York
*Attorney for Defendants*
By: /s/ *Helena Lynch*
Helena Lynch, Assistant Attorney General
200 Old Country Road, Ste. 240 Mineola, New York 11501
(516) 248-3312 | Helena.Lynch@ag.ny.gov
Rakim Johnson, Assistant Attorney General
200 Old Country Road, Ste. 240 Mineola, New York 11501
(516) 248-3253 | Rakim.Johnson@ag.ny.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

The undersigned, an attorney duly admitted to practice before this court, hereby certifies that the foregoing Memorandum of Law in Opposition to Motion for Leave to Amend ("Memorandum of Law") complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, which acknowledges that a court may grant leave for an enlargement of the 8,750 word-count limit set forth therein. By Docket Order dated June 26, 2025, the Court granted leave for an enlargement, of up to 10,000 words, of the word-count limit for the foregoing Memorandum of Law. The Memorandum of Law contains 9,812 words, as counted by the word processing system used to prepare it. This word count excludes the caption, tables, signature block, and this Certificate, but includes all headings and footnotes.

Dated:  Mineola, New York
        June 27, 2025

*Helena Lynch*
Helena Lynch
Tel.: (516) 248-3312
Helena.lynch@ag.ny.gov