UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MASSAPEQUA UNION FREE SCHOOL DISTRICT,
MASSAPEQUA UNION FREE SCHOOL DISTRICT
BOARD OF EDUCATION, JEANINE CARAMORE, in
her capacity as a Board of Education Member and a
Resident/Parent of the School Community.

                    Plaintiffs,

    -against-

NEW YORK STATE BOARD OF REGENTS, et al.,

                    Defendants.

 Docket No. 23-cv-07052
(SJB)(LGD)


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**


**RIGANO LLC**
538 Broad Hollow Rd., Suite 301
Melville, New York 11747
(631) 756-5900

*Of Counsel:*
    Nicholas C. Rigano
    Oliver Roberts

**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC**
*Admitted pro hac vice*
2300 N Street, NW, Suite 643
Washington, DC 20037

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

POINT I: The Court Retains Jurisdiction To Decide This Motion Because Plaintiffs Only Appealed The Denial Of Their Motion For Preliminary Injunction And Plaintiffs' Pending Withdrawal Moots Defendants' Argument .................................................................................. 1

POINT II: Defendants Fail To Demonstrate Any Basis For Denial Of Plaintiffs' Motion. .......... 2

POINT III: The Proposed Claims Survive A Motion To Dismiss ................................................. 4

   A.   Plaintiffs' Proposed First Amendment Overbreadth and Free Speech Claims (First and Third Causes of Action) Survive a Motion to Dismiss. ............................................................... 5

      1.   The Court's Prior Order Does Not Preclude the District's and Board's Proposed First Amendment Claims. ................................................................................................................. 5

      2.   The District and Board Have Capacity-To-Sue Under the Constitutional Proscription Exception. ................................................................................................................................. 6

      3.   The District and Board Have Standing For Their First Amendment Claims. ................. 7

   B.   Plaintiffs' Title VI Claim Survives Dismissal. .................................................................... 8

   C.   Plaintiffs' Title VII Claim Survives Dismissal. ................................................................. 11

   D.   Plaintiffs' § 1981 Claim Survives Dismissal. ................................................................... 12

   E.   Plaintiffs' Dormant Commerce Clause Claim Survives Dismissal. ................................. 14

   F.   Plaintiffs' Indian Commerce Clause Claim Survives Dismissal. ..................................... 15

   G.   Plaintiffs' State-Bill-of-Attainder Clause Claim Survives Dismissal. .............................. 18

   CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

*Acorn v. U.S.,*
618 F.3d 125 (2d Cir. 2010) ........................................................................................18, 19

*Ariz. v. Cal.,*
460 U.S. 605 (1983) ................................................................................................................5

*Broadrick v. Okla.,*
413 U.S. 601 (1973) ................................................................................................................8

*Cal. Fed. Sav. & Loan Assìn v. Guerra,*
479 U.S. 272 (1987) ................................................................................................................9

*Chamberlain ex rel. Aberdeen Glob. Income Fund, Inc. v. Aberdeen Asset Mgt. Ltd.,*
2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) .......................................................................2

*City of N.Y. v. State of N.Y.,*
86 N.Y.2d 286 (1995) ...........................................................................................................6

*Collymore v. City of N.Y.,*
767 F. Appix 42 (2d 2019) .................................................................................................13

*Consol. Edison Co. of N.Y., Inc. v. Pataki,*
292 F.3d 338 (2d Cir. 2002) ...........................................................................................18, 19

*Davis v. FEC,*
554 U.S. 724 (2008) ...............................................................................................................6

*Duplan v. City of New York,*
888 F.3d 612 (2d Cir. 2018) ................................................................................................13

*Forshey v. Miller,*
2018 WL 11574487 (N.D.N.Y. Feb 1, 2018) .........................................................................1

*Glidedowan, LLC v. N.Y. State Depìt of Health,*
768 F. Supp. 3d 503 (W.D.N.Y. 2025) ...............................................................................18

*HCI Distrib., Inc. v. Peterson,*
110 F.4th 1062 (8th Cir. 202) ..............................................................................................17

*Hegazy v. Halal Guys, Inc.,*
2024 WL 3988141 (S.D.N.Y. Aug. 28, 2024) ......................................................................3

*Hussain v. Burton & Doyle of Great Neck LLC,*
2015 WL 13227997 (E.D.N.Y. Sept. 29, 2015) ................................................................9, 12

*Huszar v. Zeleny,*
269 F. Supp. 2d 98 (E.D.N.Y. 2003) ...........................................................1

*In re World Trade Ctr. III,,*
30 N.Y.3d 377 (2017) .....................................................................................7

*Intìl Bus. Mach. Corp. v Johnson,*
355 Fed. Appx. 454 (2d Cir. 2009) ..............................................................1

*Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
457 U.S. 853 (1982) .......................................................................................8

*Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
638 F.2d 404 (2d Cir. 1980) ..........................................................................8

*James v. Bd. Of Ed. Of Cent. Dist. No. 1of Towns of Addison,*
461 F.2d 566 (2d Cir. 1972) ..........................................................................7

*Kearns v. Cuomo,*
415 F. Supp. 3d 319 (W.D.N.Y. 2019) ...........................................9, 10, 12

*Kearns v. Cuomo,*
981 F.3d 200 (2d Cir. 2020) ..........................................................................9

*McMorris v. Carlos Lopez & Associates, LLC,*
995 F.3d 295 (2d Cir. 2021) ..........................................................................7

*Mescalero Apache Tribe v. Jones,*
411 U.S. 145 (1973) ...............................................................................15, 16

*Moonsammy v. Banks,*
2024 WL 3738627 (S.D.N.Y. Aug. 9, 2024) ...............................................2

*N.Y.S. Natìl Org. for Women v. Terry,*
886 F.2d 1339 (2d Cir. 1989) ........................................................................1

*Oparaji v. Teachersì Ret. Sys. Of City of N.Y.,*
2025 WL 1413912 (S.D.N.Y. May 15, 2025) .............................................12

*Osuna v. Govìt Employees Ins. Co.,*
623 Fed. Appx. 3 (2d Cir. 2015) .................................................................18

*Otoe-Missouria Tribe of Indians v. N.Y. State Depìt of Fin. Servs,*
769 F.3d 113 (2d Cir. 2014) ..................................................................16, 17

*Pike v. Bruce Church,*
397 U.S. 137 (1970)..................................................................................15

*Pistolesi v. Calabrese,*
2015 WL 1573364 (S.D.N.Y. Apr. 9 2015).....................................12, 15

*Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.,*
2001 WL 1286989 (S.D.N.Y. Oct. 24, 2001) ....................................3

*Sec'y of State of Md. v. Joseph H. Munson Co.,*
467 U.S. 947 (1984)....................................................................................8

*Selective Serv. Sys. Minn. Pub. Interest Research Grp.*
468 U.S. 841 (1984)..................................................................................18

*Spirit Lake Tribe v. Nat'l Collegiate Athletic Ass'n,*
715 F.3d 1089 (8th Cir. 2013)........................................................13, 14

*Tinker v. Des Moines Ind. Cmty. Sch. Dist,*
393 U.S. 503 (1969)....................................................................................7

*U.S. v. Brown,*
381 U.S. 437 (1965)..................................................................................20

*U.S. v. Lovett,*
328 U.S. 303 (1946)..................................................................................20

*Webb v. GAF Corp.,*
78 F.3d 53 (2d Cir. 1996)............................................................................1

*White Mountain Apache Tribe v. Bracker,*
448 U.S. 136 (1980)..................................................................................17

**Constitution, Statutes and Rules**

42 U.S.C. § 1981.................................................................12, 13, 14, 17

42 U.S.C. § 1983.................................................................................12, 13

Federal Rule Civil Procedure 15(a) ....................................................2

N.Y. Educ. Law § 2103 ..........................................................................19

U.S. Const. art. I, § 10, cl. 1..................................................................18

**Supplemental Authorities**

Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure §
2962 (3d ed. 2005) ....................................................................................................................2

## PRELIMINARY STATEMENT

Defendants' Opposition to Plaintiffs' Motion seeking leave to file a Proposed Second Amended Complaint ("PAC") lacks any valid basis in law. Critically, it fails to adequately address the material factual developments since the Court's March 27 Memorandum and Order (DE 60) that serve as the basis for Plaintiffs' amended claims. For these reasons and those in Plaintiffs' Memorandum in Support of their Motion (DE 66), Plaintiffs' Motion should be granted.

**POINT I**:     **THE COURT RETAINS JURISDICTION TO DECIDE THIS MOTION BECAUSE PLAINTIFFS ONLY APPEALED DENIAL OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND PLAINTIFFS' PENDING WITHDRAWAL MOOTS DEFENDANTS' ARGUMENT.**

On April 28, 2025, Plaintiffs appealed only "the portion of the attached Memorandum and Order dated March 27, 2025, denying Plaintiffs-Petitioners' motion for a preliminary injunction." DE 62. This narrow interlocutory appeal does not divest this Court of jurisdiction to consider Plaintiffs' Motion.

It is well-settled in the Second Circuit that "[a]lthough the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction." *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996); *see also Int'l Bus. Mach. Corp. v. Johnson*, 355 Fed. Appx. 454, 455 (2d Cir. 2009); *N.Y.S. Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990) ("we have held that the filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal"); *Forshey v. Miller,* 2018 WL 11574487, *1 (N.D.N.Y. Feb. 1, 2018); *Huszar v. Zeleny*, 269 F. Supp. 2d 98, 101–02 (E.D.N.Y. 2003) ("An appeal from an interlocutory order divests jurisdiction only with respect to 'issues decided in the order being appealed . . . As such, an interlocutory decision involving a preliminary injunction does not divest

the district court of jurisdiction and the case may proceed on the merits"); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure§ 2962, at 438 (3d ed. 2005).

Defendants rely on inapposite, outdated Second Circuit cases involving appeals from final or dispositive orders—not preliminary injunctions. (Opp. at 4). The same is true of the out-of-circuit cases cited by Defendants, which predate modern interlocutory appeal doctrine. (*Id.* at 5). Binding precedent makes clear that an interlocutory appeal of a preliminary injunction does not divest the district court of jurisdiction to adjudicate collateral matters, including motions to amend. Defendants' argument should be rejected.

Moreover, Plaintiffs moved to withdraw their appeal on June 27, 2025, and the motion remains unopposed. Although the Second Circuit has not yet formally acted, that ministerial step is imminent. Defendants' argument is therefore both legally incorrect and moot. *See Moonsammy v Banks*, 2024 WL 3738627, *2 (S.D.N.Y. Aug. 9, 2024) ("Jurisdiction would be returned to the district court, however, if the appeal were withdrawn"); *Chamberlain ex rel. Aberdeen Glob. Income Fund, Inc. v Aberdeen Asset Mgt. Ltd.*, 2005 WL 1378757, *1 (E.D.N.Y. Apr. 12, 2005).

**POINT II**:     **DEFENDANTS FAIL TO DEMONSTRATE ANY BASIS FOR DENIAL OF PLAINTIFFS' MOTION.**

Under Rule 15(a)'s liberal standard, a motion to amend should be denied only if "there is delay, bad faith, futility, or prejudice to the non-moving party." *Hussain v. Burton & Doyle of Great Neck LLC*, 2015 WL 13227997, *2 (E.D.N.Y. Sept. 29, 2015), *report and recommendation adopted*, 2016 WL 8711393 (E.D.N.Y. Feb. 26, 2016). Defendants fail to demonstrate any basis for denial.

First, Plaintiffs' amended claims are based on new factual developments occuring *after* the Court's March 27, 2025, Memorandum and Order, and Plaintiffs moved to amend promptly within four days of the MSD-NAGA Agreement formation. These new facts are the basis for Plaintiffs'

amended claims. There was no delay, let alone an "inordinate" one. The new claims could not have been brought earlier, and Defendants suffer no prejudice.

Second, Defendants cite two supposed grounds for prejudice: the case's "late stage" and discovery. But this case remains at the early motion-to-dismiss stage, and Caramore was already granted leave to replead. This is not "late stage." Furthermore, additional discovery is not a valid objection where amendments stem from new facts. Plaintiffs anticipate limited discovery based on the amended claims and largely confined to the corners of the MSD-NAGA Agreement. Indeed, "[i]t is well established ... that '[t]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Hegazy v. Halal Guys, Inc.*, 2024 WL 3988141, *4 (S.D.N.Y. Aug. 28, 2024) (citations omitted). Denial of Plaintiffs' Motion would simply result in the filing of a new action, which wastes judicial resources. *Id.*; *Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.*, 2001 WL 1286989,*4 (S.D.N.Y. Oct. 24, 2001) ("[F]orcing [Plaintiff] to institute a new action against the [] defendants would run counter to the interests of judicial economy.").

Third, Defendants incorrectly assert that Plaintiffs have "reinvented" their case. (Opp. at 6-7). Plaintiffs' amended claims are grounded in new and independently occurring factual developments, including: (1) NAGA's filing of an OCR complaint; (2) the U.S. Department of Education's Title VI finding (*See* https://www.ed.gov/about/news/press-release/secretary-mcmahon-visits-massapequa-high-school-announces-finding-school-mascot-probe); (3) Caramore's decision to seek re-election; and (4) the MSD-NAGA Agreement. Defendants offer no factual or legal support for their baseless suggestion these events were "manufactured." The cases cited by Defendants are inapposite, as none involved amendments based on new facts or intervening government action—let alone justified denial of leave on that basis. (Opp. at 6-7).

Fourth, Defendants' suggestion that Plaintiffs have changed legal positions is unfounded. (Opp. at 6-8). Plaintiffs have consistently maintained that Native Americans "should not be decision-makers as to whether a school district's use of Indigenous names or imagery is ***legal or not***." (Opp. at 7 (emphasis added)). The MSD-NAGA Agreement reflects a decision made by the Board and District in collaboration with NAGA—not a unilateral decision by NAGA. The Agreement also does not vest NAGA with any authority to determine what is legal or not. A decision of legality rests with the courts. Likewise, Plaintiffs have consistently maintained that the tribal exception may be "not appropriate" where the contracting tribe does not reflect the actual interests of the school community. (*See* Compl. ¶98; Am. Compl. ¶98; Opp. at 8). Here, Plaintiffs allege that NAGA does reflect the District's interests—unlike potential scenarios in other districts where misalignment may occur. Plaintiffs' positions are wholly consistent.

Finally, Defendants' assertion that the MSD-NAGA Agreement is a manufactured "new fact" and a "complete surprise" is baseless. (Opp. at 8). Unable to mount a legitimate legal challenge to Plaintiffs' amended claims, Defendants shift focus to attacking the underlying facts themselves—complaining of "surprise" and "prejudice" not from the claims, but from the material developments giving rise to them. That is not a valid basis for denying amendment.

Defendants fail to demonstrate any basis for denial.

**POINT III**:    **THE PROPOSED CLAIMS SURVIVE A MOTION TO DISMISS**

All of Plaintiffs' claims survive a motion to dismiss. Yet Defendants have needlessly compelled Plaintiffs—and the Court—to engage in a futility analysis that the Court's rules strongly discourage. *See* Individual Practices, VI(I)(2).

**A. Plaintiffs' Proposed First Amendment Overbreadth and Free Speech Claims (First and Third Causes of Action) Survive a Motion to Dismiss.**

The Court already granted Caramore leave to amend her complaint to assert the First Cause of Action. Order at 52. Defendants do not contest this, nor do they raise any futility arguments against Caramore's Third Cause of Action. Accordingly, the PAC will be filed on her behalf regardless of this Motion's outcome. Defendants challenge only the District's and Board's standing to bring these claims. It makes little sense to entertain piecemeal futility arguments now. As the Court's *Individual Practices* "strongly advise[]," such arguments should be raised through a comprehensive motion to dismiss. *See* Individual Practices, VI(I)(2).

**1. The Court's Prior Order Does Not Preclude the District's and Board's Proposed First Amendment Claims.**

Defendants wrongly assert that the Court's prior Order forecloses all First Amendment claims by the District and Board. But the Court ruled only on the pleadings then before it. The PAC cures prior deficiencies by alleging that compliance would indeed compel Plaintiffs to violate the First Amendment. PAC ¶¶ 72, 73, 90, 117, 121-24, 138, 169-81. Moreover, the law-of-the-case doctrine does not bar these amended claims. Plaintiffs raise new legal arguments and facts, including a new Third Cause of Action. *See Ariz. v. Cal.*, 460 U.S. 605, 618 (1983) (law-of-the-case doctrine is discretionary and does not apply where new evidence or legal arguments are presented).

The new Third Cause of Action alleges that Part 123 imposes unconstitutional restrictions on the speech of incumbent board members and district employees who are not tribal members. PAC ¶¶168-82. While any non-employee, non-school-board-member, or tribal-member challenger may use Indigenous imagery in campaign materials on school property or at school functions, the incumbent Board members and District employees—barred by Part 123—cannot do so, if they

lack tribal membership. PAC ¶¶169-73. This results in a viewpoint, speaker, and content-based restriction that gives challengers and tribal members an unconstitutional advantage, violating the First Amendment. *See Davis v. FEC*, 554 U.S. 724 (2008).

Caramore's situation exemplifies this harm: as an incumbent, non-tribal board member now planning to seek re-election, she will use "Chiefs" apparel and slogans on school property and at school functions—now prohibited under Part 123. PAC ¶¶178-80. This puts her at a distinct disadvantage and selectively chills protected speech, and the District and Board are compelled to effectuate these First Amendment violations and incur the costs. *See Anello v. Anderson*, 518 Fed. Appx. 24 (2d Cir. 2013) (selective speech restrictions in limited public forums are unconstitutional).

In sum, the new First and Third Causes of Action allege that Part 123 compels Plaintiffs to violate constitutional proscriptions, satisfying the capacity-to-sue and standing requirements.

## 2. The District and Board Have Capacity-To-Sue Under the Constitutional Proscription Exception.

School districts have capacity-to-sue when state laws compel them to violate a "constitutional proscription." *City of N.Y. v. State of N.Y.*, 86 N.Y.2d 286, 287 (1995). Here, the PAC alleges that Part 123 forces the District and Board to violate a First Amendment proscription. PAC ¶¶72, 73, 90, 117, 121-24, 138, 169-81.

Part 123.5 provides that "[p]ublic schools shall prohibit school officers and employees when located on school property or at a school function from utilizing or promoting any Indigenous name, logo, or mascot." It then exempts "any school officer or employee who is a member of a tribal nation." In practice, this compels the District and Board to suppress protected speech by employees and board members who are not tribal members—while permitting the same speech by others running in the same election. For example, the District must bar non-tribal employees and

board members from wearing "Massapequa Chiefs" apparel at school events or on school property—both common venues for local campaigning—yet cannot impose the same restriction on tribal members, non-employees, and non-board members.

This broad, content-based restriction is not narrowly tailored and imposes a direct constitutional violation. As the Supreme Court held, public employees "do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *James v. Bd. of Ed. of Cent. Dist. No. 1 of Towns of Addison*, 461 F.2d 566 (2d Cir. 1972).

Because Part 123 mandates First Amendment violations, the District and Board satisfy the constitutional proscription exception and have capacity-to-sue. Moreover, as Justice Rivera has observed, the Court of Appeals has "never stated that this list is exhaustive" when referencing the four recognized exceptions to the general bar on local government capacity-to-sue. *In re World Trade Ctr. III*, 30 N.Y.3d 377, 402 (2017) (Rivera, J., concurring). With full briefing, Plaintiffs can establish additional grounds for capacity-to-sue on their First Amendment and other claims.

### 3. The District and Board Have Standing For Their First Amendment Claims.

The District and Board satisfy Article III standing. *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 300 (2d Cir. 2021). Part 123 causes multiple direct injuries: it compels Plaintiffs to restrict protected speech, imposes compliance costs, chills the democratic process, creates risk of legal exposure for constitutional violations, and erodes longstanding cultural identity tied to the "Chiefs" name. Enjoining or invalidating Part 123 would redress these harms. That is sufficient to establish standing.

Even if traditional standing were lacking, Plaintiffs have standing under the First Amendment's overbreadth doctrine, which permits challenges not only on behalf of plaintiff's own

rights, but also on behalf of third parties. *Broadrick v. Okla.*, 413 U.S. 601, 612 (1973); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956-57 (1984).

The PAC alleges that Part 123 forces the District and Board to adopt and enforce policies that suppress or chill protected speech by school personnel. PAC ¶¶72, 73, 90, 117, 121-24, 138, 169-81. Defendants' argument that school districts lack First Amendment rights misses the mark. The relevant injury here is not to Plaintiffs' own expressive rights, but to their compelled violation of others' First Amendment rights. Courts have long recognized school boards' responsibilities to safeguard constitutional rights. *See Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 638 F.2d 404 (2d Cir. 1980), *aff'd in part, rev'd in part*, 457 U.S. 853 (1982). Enforcement of Part 123 requires the District and Board to bar non-tribal-member employees and board members—like Caramore—from wearing "Chiefs" apparel at school events or functions when running for school board. PAC ¶¶178-80.

Denying standing here would insulate overbroad, unconstitutional regulations from judicial review—defeating the very purpose of the overbreadth doctrine.

### B. Plaintiffs' Title VI Claim Survives Dismissal.

Plaintiffs have standing for their Title VI claim. As a public school district subject to conflicting federal and state mandates, the District and Board face concrete, particularized harm traceable to Part 123. Compliance requires: (i) terminating the MSD-NAGA Agreement, (ii) "inflicts concrete harm on the Plaintiff District's operations, its compliance policies, its relationship with staff, and exposes the Plaintiff District to legal liability from Title VI claims," and (iii) results in "substantial expenses to redesign and replace the name, logo, uniforms, signage, websites, and other branded materials to comply with the ban." PAC ¶¶198-99, 211. Indeed, Plaintiffs have also properly alleged they receive federal funding, that their educational programs

are subject to Title VI, and that enforcement of Part 123 forces Title VI violations. PAC ¶¶186-213. Courts have long recognized that state laws must yield where compliance would force a party to violate federal civil rights law. *See Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272 (1987) (deciding a Title VII preemption claim). Injunctive relief remedies these injuries.

Defendants' reliance on *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 323 (W.D.N.Y. 2019), *aff'd*, 981 F.3d 200 (2d Cir. 2020), a case not involving Title VI, is misplaced. (Opp. at 15). In *Kearns*, a county clerk challenged provisions of a new state driver's license law, arguing conflict preemption under federal immigration law. *Id.* The court found the clerk lacked standing based on particularized facts: the clerk acted in a "a purely ministerial capacity," faced no threat of enforcement, had no personal role in implementing the challenged provisions, and the challenged provisions did "not apply to him." *Id.* at 209–11. Nowhere does *Kearns* hold that public officials or entities may never assert conflict preemption claims. To the contrary, *Kearns* affirms that standing depends on a fact-specific inquiry.

Unlike *Kearns,* Plaintiffs here—the District and Board—are the entities directly charged with implementing Part 123 and face imminent consequences for noncompliance, including loss of state funding, removal of board members, termination of the MSD-NAGA Agreement, and legal exposure for Title VI violations. These are concrete, particularized injuries directly traceable to Part 123, and thus establish standing.

Defendants' reliance on *Pistolesi v. Calabrese*, No. 2015 WL 1573364 (S.D.N.Y. Apr. 9, 2015), is similarly misplaced—and in fact supports Plaintiffs' position. (Opp. at 15). *Pistolesi* merely reiterates the well-settled principle that a plaintiff must establish standing to bring a preemption claim—a requirement Plaintiffs satisfy here. Notably, the court in *Pistolesi* found that

the plaintiff had standing to assert a preemption claim and ultimately ruled in the plaintiff's favor, further undermining Defendants' position.

In sum, *Kearns* and *Pistolesi* do not bar Plaintiffs' Title VI claim. They confirm what federal courts have long held: where a party is subject to conflicting federal and state mandates and suffers concrete harm, it has standing to assert a preemption claim.

Contrary to Defendants' unfounded assertions, Opp. at 16, Plaintiffs have also clearly alleged events constituting intentional discrimination, as well as circumstances giving rise to a plausible inference of racially discriminatory intent. PAC ¶¶189-210. Plaintiffs allege that Part 123 compels them to eliminate their Chiefs name and imagery and terminate the MSD-NAGA Agreement solely because the subject matter relates to Indigenous identity and involves Indigenous groups. PAC ¶¶189-96. No such prohibition applies to imagery or contracts with any other racial or ethnic group. That is facially discriminatory and supports a strong inference of discriminatory intent. Defendants attempt to hide behind the "actual language of Part 123," Opp. at 15—but the regulatory text is clear: no contracts involving Indigenous imagery with Indigenous people are permitted after May 2023. This is not a neutral or generally applicable policy; it uniquely burdens Native Americans.

Defendants also misstate the pleading standard by incorrectly stating Plaintiffs must be "intended beneficiaries" of Title VI. (Opp. at 14). Yet, they cite no authority—nor can they— supporting the position that a party must be an "intended beneficiary" to bring a Title VI *preemption* claim.

Defendants next argue the MSD-NAGA Agreement is "illegal," "against public policy," and "unenforceable." (Opp. at 16-17). Yet they fail to state how the Agreement was unlawful at the time of formation. The MSD-NAGA Agreement was formed on May 15, 2025—before Part

123's enforcement date of June 30, 2025. PAC ¶100. At the time of formation, there was no prohibition on such contracts, and the Agreement was unquestionably valid because the Chiefs name and logo only became impermissible on June 30, 2025. Defendants miss this key distinction and now improperly ask this Court to retroactively impose a ban on Indigenous-district agreements where none existed in law. Given this timeline, the continued validity of the Agreement must be evaluated against Part 123's enforcement prohibition—which is a merits question and not a basis to deny amendment. Notably, none of the cases cited by Defendants involved a court invalidating a contract at the amendment stage. In each instance, courts only reached a conclusion after full briefing and a developed record—underscoring how extraordinary Defendants' request is here.

Defendants conclude with the legally unsupported assertion that Plaintiffs' alleged harms "have nothing to do with a Title VI claim." (Opp. at 17). But Plaintiffs clearly allege that Part 123 compels them to terminate the MSD-NAGA Agreement, erase their Chiefs name and imagery, and engage in discriminatory conduct against an Indigenous organization solely because of its Indigenous identity and subject matter. PAC ¶¶189-210. That is precisely the type of discrimination that Title VI forbids. The Chiefs name, logo, and related educational initiatives in the MSD-NAGA Agreement are directly integrated into the District's and Board's federally funded programs, placing them within Title VI's scope. Plaintiffs have also alleged imminent legal exposure and potential loss of state funding—concrete injuries flowing directly from Part 123's compelled violations of Title VI. PAC ¶¶78, 211.

## C. Plaintiffs' Title VII Claim Survives Dismissal.

Plaintiffs have standing for their Title VII claim because they allege Part 123 causes "concrete harm on the Plaintiff District's operations, its compliance policies, its relationship with staff, and exposes the Plaintiff District to legal liability from Title VII claims from misidentified

and mistargeted employees." PAC ¶228. Plaintiffs further allege they "would also incur substantial expenses to redesign and replace the name, logo, uniforms, signage, websites, and other branded materials to comply with the ban." *Id.* Injunctive relief remedies these injuries.

It is well-established that Title VII claims can be brought as preemption claims. *See Guerra*, 479 U.S. at 277 ("The question presented is whether Title VII … pre-empts a state statute"). Defendants' reliance on *Kearns*, 415 F. Supp. 3d 319, is again misplaced because the clerk had no legal exposure from performing his ministerial duties and lacked responsibility for implementing the challenged law. *Kearns* has no bearing here, where Plaintiffs are directly responsible for enforcing Part 123 and face concrete consequences. Further, *Kearns* did not involve a Title VII claim. *Pistolesi v. Calabrese*, 2015 WL 1573364, similarly offers no support for Defendants— indeed, the court there found standing to pursue a preemption claim.

Defendants improperly minimize this issue as a "dress code" restriction. (Opp. at 20). But Part 123 prohibits Indigenous employees from expressing their cultural identity unless they belong to a specific tribe—an overtly discriminatory policy that goes far beyond a "dress code" restriction and constitutes an adverse employment action. Plaintiffs allege that enforcing this regulation compels the District to act with discriminatory intent by targeting only Indigenous employees, in violation of Title VII. *See* PAC ¶¶220-27.

Part 123 places the District in an untenable position. PAC ¶¶226-27. Title VII prohibits discrimination; Part 123 mandates it.

### D. Plaintiffs' § 1981 Claim Survives Dismissal.

Initially, Plaintiffs hereby confirm that their § 1981 claim is pleaded through 42 U.S.C. § 1983. *Oparaji v Teachers' Ret. Sys. of City of N.Y.*, 2025 WL 1413912, *5 (S.D.N.Y. May 15, 2025) ("Following the Second Circuit … courts in this District routinely evaluate § 1981 claims

… as causes of action brought under § 1983.") (citation omitted); *see also Collymore v. City of N.Y.*, 767 F. App'x 42, 45 n.2 (2d Cir. 2019) (summary order) (noting that district court correctly construed plaintiff's § 1981 claims as § 1983 claims following *Duplan*)); *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018).

Failing to rebut any element of Plaintiffs' § 1981 claim, Defendants argue "any agreement between a school district and any individual or entity, Indigenous or non-Indigenous, cannot be enforceable to the extent it violates Part 123, a valid regulation." (Opp. at 21). But that argument assumes the very issue in dispute—whether Part 123 is constitutional. If the State could nullify contracts simply by declaring them inconsistent with a potentially unconstitutional regulation— and courts accepted that without scrutiny—then affected parties would be left with no avenue to challenge such laws, rendering the right to contract effectively meaningless.

It is especially improper for Defendants to ask the Court to invalidate a facially valid contract at the amendment stage. The MSD-NAGA Agreement was executed on May 15, 2025— well before Part 123's enforcement date of June 30, 2025—and was fully compliant with existing law at the time. PAC ¶100. Defendants fail to explain how the contract was invalid when formed, nor do they identify any legal basis suggesting it was. Indeed, Defendants' argument is simply a reformulation of an argument that hinges on the core question: whether Part 123 is constitutional.

Contrary to Defendants' assertions, Opp. at 22, Plaintiffs adequately pleaded "purposeful discrimination" by alleging numerous facts supporting the inference that Part 123 was designed to harm Indigenous persons and tribes. PAC ¶¶236-40. For example, Part 123 expressly bars school districts from contracting with Indigenous groups for their own name, image, or likeness ("NIL")—activity that falls squarely within protected contractual rights. PAC ¶¶237-39. In fact, it is clear from *Spirit Lake Tribe v. Nat'l Collegiate Athletic Ass'n*, 715 F.3d 1089 (8th Cir. 2013)—

a case cited by Defendants—that many tribes have decided to enter into NIL agreements with schools. (Opp. at 22). Yet, Part 123 prohibits such agreements, plainly discriminating against Indigenous tribes and their right to control their own identity and contractual relationships.

Defendants' further reliance on *Spirit Lake* as grounds for futility is unavailing. That case comes from a different circuit, involved entirely different facts, and was decided after full briefing and factual development. Defendants note in a footnote that while *Spirit Lake* involved a § 1981 claim, the court held there was no enforceable contract. But Plaintiffs here allege a valid, enforceable agreement—making *Spirit Lake* factually and legally inapposite.

### E. Plaintiffs' Dormant Commerce Clause Claim Survives Dismissal.

Defendants contend that Plaintiffs' dormant Commerce Clause claim "fails at the outset because they identify neither a competitive in-state market nor competitive out-of-state market for Indigenous names and imagery." (Opp. at 24). Yet, Defendants' own memorandum concedes that Indigenous NIL rights are part of a competitive interstate market. (Opp. at 22) (stating that tribal nations have approved and licensed their NIL to schools). Part 123.4(b) further identifies and supports the existence of such a market by explicitly providing an exception for school districts and tribal nations to contract before Part 123's effective date. Moreover, the very existence of the MSD-NAGA Agreement, as well as tribal agreements by other school districts under Part 123, provides clear evidence of a competitive market. PAC ¶¶247-61.

Defendants next contend that Part 123 is "demonstrably justified by a valid factor unrelated to economic protectionism," citing its purported goal of fostering an anti-discriminatory student environment. (Opp. at 24.) But there is no evidence of any Dignity for All Students Act (DASA) violations in the District linked to Indigenous names or imagery, undercutting Defendants' asserted justification. PAC ¶125. Even assuming an anti-discrimination factor, Part 123 arbitrarily

distinguishes between in-state and out-of-state tribes. If Indigenous names and imagery are inherently harmful, that harm does not vary based on the geographic location of the tribe granting permission to use such imagery. Allowing only New York-based or recognized tribes to contract with schools, while barring out-of-state tribes, serves no legitimate local interest. The burden— categorically stripping all non-New York tribes of their contractual rights—is "clearly excessive in relation to the putative local benefit." *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970).

Finally, Defendants incorrectly assert Plaintiffs' harms are not tied to interstate commerce. (Opp. at 24.) But they cite no supporting authority for that requirement—none exists. Nonetheless, the MSD–NAGA Agreement involves tribes and individuals based outside New York and not recognized by the State. PAC ¶¶256–57. If Part 123 invalidates the Agreement, Plaintiffs face the loss of an interstate NIL contract, damage to out-of-state tribal relationships, and reputational harm. *Id.*

### F. Plaintiffs' Indian Commerce Clause Claim Survives Dismissal.

Part 123 violates the Indian Commerce Clause ("ICC"). Plaintiffs have standing because they allege concrete, particularized injuries traceable to Part 123, including the invalidation of the MSD-NAGA Agreement, legal exposure and liability, and substantial expenses to redesign and replace the name, logo, uniforms, and other branded materials to comply with the ban. PAC ¶262.

First, Defendants incorrectly argue that Part 123 does not violate the ICC because "Native Americans transacting business outside of reservations are subject to state regulation." (Opp. at 25). Defendants' reliance on *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49 (1973) is misplaced. Defendants quote the principle that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to ***non-discriminatory*** state law otherwise applicable to ***all citizens*** of the State." (Opp. at 25) (emphasis

added). But that principle cuts directly against their position. Plaintiffs allege here—and the regulation makes plain—that Part 123 discriminates against Native Americans, barring contracts involving Indigenous names, imagery, or organizations, while permitting similar arrangements with non-Indigenous entities. PAC ¶271. Because Part 123 is not a neutral, generally applicable law, *Mescalero* actually confirms its invalidity under the ICC. This is precisely the discriminatory regulation preempted by federal law.

Defendants' second proposition from *Mescalero* likewise supports Plaintiffs' position: "even on reservations, state laws may be applied ***unless*** such application would interfere with reservation self-government or would ***impair a right granted or reserved by federal law***." (Opp. at 26) (quoting *Mescalero*, 411 U.S. at 148) (emphasis added). Part 123 impairs both the right to contract and equal protection under federal law. PAC ¶271. It expressly prohibits Native American tribes from contracting with New York school districts—an impermissible interference with tribal rights that *Mescalero* makes clear is unlawful. PAC ¶271-74.

Second, Defendants acknowledge that evaluating a state regulation under the ICC requires balancing the interests of tribes, the federal government, and the state. They recognize that "[a] tribe's interest peaks when a regulation threatens a venture in which the tribe has invested significant resources." (Opp. at 26 (citing *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 113 (2d Cir. 2014))). This case falls squarely within that framework. NAGA is composed of members from numerous tribal nations and has a core organizational mission to protect Native imagery. As set forth on NAGA's website and expressly referenced in the MSD-NAGA Agreement, PAC ¶¶101-04, the organization has invested substantial resources in pursuit of that mission. Part 123 now directly threatens that mission and the viability of a partnership formed to advance NAGA's mission.

The federal government also has a strong, independent interest in enforcing civil rights laws, including Title VI and § 1981. The Department of Education's recent finding that Defendants violated Title VI underscores this federal interest.

By contrast, the State's asserted justification—"providing a safe and discrimination-free environment for all school children," Opp. at 27—lacks evidentiary support. There has not been a single documented DASA violation within the District tied to its Indigenous imagery. PAC ¶125. Even if such violations existed, they would not justify stripping tribal nations of federally protected contractual rights to preserve and promote Native American identity.

Third, Defendants' reliance on tribal payday lending cases is misplaced. (Opp. at 27 (citing *Otoe-Missouria Tribe*, 769 F.3d 105)). Plaintiffs' case concerns fundamental rights: ability to contract within New York and express core aspects of cultural identity—rights grounded in equal protection and tribal sovereignty. Equating those rights with commercial lending regulations fundamentally misunderstands the nature of Plaintiffs' claims. *Otoe-Missouria* is also inapposite for procedural reasons: it was decided after briefing and a developed record, not at the motion-for-leave-to-amend stage.

Fourth, Defendants' assertion that Part 123 regulates only "off-reservation activity" misrepresents and oversimplifies the law. (Opp. at 26-27). Courts have repeatedly held that cases like this one require "a 'particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.'" *HCI Distrib., Inc. v. Peterson*, 110 F.4th 1062, 1066 (8th Cir. 2024) (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144-45 (1980)). It is improper to adopt Defendants' reductive view, label the MSD-NAGA Agreement as "off-reservation," and evade the nuanced, fact-specific analysis required under the ICC.

Finally, Defendants' claim that Part 123 "involves no competing interest of any Indigenous nation" is baseless. (Opp. at 27). The preservation of Native identity in public schools is a core concern for many tribes—culturally, politically, and legally—and constitutes a competing interest. Indeed, that is NAGA's mission. PAC ¶¶101-04.

Plaintiffs' claim survives dismissal.

### G. Plaintiffs' State-Bill-of-Attainder Clause Claim Survives Dismissal.

Part 123 violates the bill-of-attainder clause.

"No State shall…pass any Bill of Attainder." U.S. Const. art. I, § 10, cl. 1; *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002). Defendants misstate the elements for a bill-of-attainder claim. (Opp. at 28). They rely on *ACORN v. U.S.*, 618 F.3d 125, 136 (2d Cir. 2010), which identifies the three elements: "(1) specification of the affected persons, (2) punishment, and (3) lack of a judicial trial." (*Id.*) Yet Defendants then cite *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984)—a case decided over two decades earlier—to suggest an additional requirement that the law must target *past* conduct. (*Id.*) But *ACORN*, the more recent and controlling Second Circuit decision, includes no such retrospective element. Nor do other recent decisions. *See e.g., Glidedowan, LLC v. N.Y. State Dep't of Health*, 768 F. Supp.3d 503, 524-25 (W.D.N.Y. 2025); *Osuna v. Gov't Employees Ins. Co.*, 623 Fed. Appx. 3, 5 (2d Cir. 2015) (summary order).

Even if retrospective application were required, Part 123 satisfies that element. The regulation expressly targets past conduct by identifying school districts' prior use of Native American mascots as discriminatory and requiring corrective action. It assigns liability based on those historic practices and imposes penalties. Defendants' *Background-FAQ* document confirms this by stating the regulation imposes "requirements for the **limited number** of districts **still using**

such names, mascots, and logos." PAC ¶¶286-87 (emphasis added). Indeed, Part 123 distinguishes between districts based solely on past conduct. *Id.* Those that *previously adopted* Indigenous imagery must change, while "[t]hose districts that never utilized Indigenous imagery in connection with their team name will not be required to change." *Id.*

Second, Defendants' claim that Part 123 "does not specify persons" is meritless. (Opp. at 6). As held in *ACORN*, the "specification of the affected persons" element encompasses corporate and institutional entities. 618 F.3d at 136; *Consol. Edison*, 292 F.3d at 349 ("corporations must be considered 'individuals,' . . . that may not be singled out for punishment under the Bill of Attainder Clause."). Plaintiffs allege Part 123 singles out specific entities—namely, school districts and board members that used Indigenous names, logos, and mascots—for adverse treatment. *See* PAC ¶¶284-86. This targeting is confirmed by Defendants' *Background-FAQ*, as well as Part 123's express exemption for districts that never used Indigenous imagery.

Third, Defendants' contention that Part 123 "does not impose punishment" is plainly incorrect. Plaintiffs allege Part 123 "inflicts guilt and punishment," PAC ¶284, and that "[t]he punitive nature of Part 123 is also clear," PAC ¶289. As held in *Consol. Edison*, "punishment can frequently take the form of economic injury." 292 F.3d at 348. Here, Part 123 authorizes withholding of state aid from noncompliant school districts—a clear economic injury. PAC ¶289. In addition, the regulation provides for the removal and banishment of board members, which, under N.Y. Educ. Law § 2103(2), renders them ineligible to serve in any district office for one year. These penalties are coercive and punitive.

While Defendants argue "[a]ny potential penalties for non-compliance with Part 123 . . . are not historical punishments," Opp. at 29-30, their own cited authorities undermine that claim. In *Nixon*, the Supreme Court made clear that traditional punishments under the bill-of-attainder

clause include "a legislative enactment barring designated individuals or groups from participation in specified employments or vocations," such as holding government office. 422 U.S. at 474; *see U.S. v. Brown*, 381 U.S. 437, 445-47 (1965) (law barring certain party members from offices in labor unions was unconstitutional bill-of-attainder); *U.S. v. Lovett*, 328 U.S. 303, 315-16 (1946) (law barring certain individuals from government employment was unconstitutional bill-of-attainder). Part 123 imposes analogous penalties: removal and disqualification of school board members, and stripping of districts of property (names, logos, uniforms, etc.). As *Nixon* reaffirmed, confiscation of property is "punitive per se." 422 U.S. at 474.

Fourth, as Plaintiffs have alleged—and Defendants do not dispute— Part 123 was adopted through a regulatory process rather than a legislative proceeding, thereby satisfying the third judicial trial element. PAC ¶283.

## CONCLUSION

Plaintiffs respectfully request the Court grant Plaintiffs' motion.

*[Remainder of Page Intentionally Left Blank]*

Dated: Melville, New York
      July 7, 2025

**RIGANO LLC**

By: <u>*s/ Nicholas C. Rigano*</u>
    Nicholas C. Rigano, Esq.
    538 Broad Hollow Road, Suite 301
    Melville, New York 11747
    (631) 756-5900
    nrigano@riganollc.com

**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC**

By: _____
    Oliver Roberts
    *Admitted pro hac vice
    2300 N Street, NW, Suite 643
    Washington, DC 20037

    *Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

The undersigned, an attorney duly admitted to practice before this court, hereby certifies that the foregoing Reply Memorandum of Law in Support of Plaintiffs' Motion for Leave to Amend ("Memorandum of Law") complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, which acknowledges that a court may grant leave for an enlargement of the word-count limit set forth therein. By Docket Order dated July 3, 2025, the Court granted leave for an enlargement, of up to 6,000 words, of the word-count limit for the foregoing Memorandum of Law. The Memorandum of Law contains 5,896 words, as counted by the word processing system used to prepare it. This word count excludes the caption, tables, signature block, and this Certificate, but includes all headings and footnotes.

Dated: Melville, New York
     July 7, 2025

*/s/ Nicholas C. Rigano*
Nicholas C. Rigano
631-756-5900
NRigano@riganollc.com