**RIGANO** LLC *Attorneys at Law*

538 Broad Hollow Road, Suite 301
Melville, New York 11747
tel: 631.756.5900
**www.riganollc.com**

Nicholas C. Rigano
NRigano@riganollc.com

July 23, 2025

**By ECF**
Honorable Sanket J. Bulsara
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

       Re:   *Massapequa UFSD v. New York State Board of Regents*
              Docket No. 23-CV-07052 (MKB) (LGD)

Dear Judge Bulsara:

Pursuant to the Court's July 9, 2025 Order, the Plaintiffs in the above-captioned action (the "Massapequa District Plaintiffs") respectfully submit this letter to address the following issues: (1) whether "efficiency or other considerations counsel in favor of resolving the fully-briefed motion to amend pending in the related 2023 Action, following which (assuming one or more claims survive) the District may move for preliminary or final injunctive relief, and the Plaintiffs may join such a motion (or renew their motion in the present case)"; (2) whether "the two actions should be consolidated, in addition to being related, pursuant to Fed. R. Civ. P. 42"; and (3) "any other matter, not touching upon the ultimate merits of the cases, relevant to the Court's case management and timely resolution of both cases."

As set forth in the Massapequa District Plaintiffs' pending motion to amend, five new material factual developments have occurred since this Court's March 27, 2025, Memorandum and Order (DE 60) (the "March Order") that trigger Massapequa District Plaintiffs' urgent need for preliminary relief. First, the federal government issued an official finding in May 2025 that Defendants violated Title VI by "[i]mplement[ing] a statewide prohibition on names, mascots, or logos based on Native American race and national origin." Second, in June 2025, the State denied the Massapequa District Plaintiffs' request for a compliance extension under Part 123. Third, Part

Rigano LLC *Attorneys at Law*

123's enforcement deadline—June 30, 2025—has now passed, subjecting the Massapequa District Plaintiffs to immediate consequences from the State. Fourth, in July 2025, the U.S. Department of Education launched a Title VI investigation into a similarly situated school district due to that district's compliance with Part 123. And finally, the Massapequa District Plaintiffs entered into a binding agreement with the Native American Guardian's Association (the "NAGA")—which Part 123 now unconstitutionally compels the Massapequa District Plaintiffs to breach solely on the basis of the NAGA's race and national origin.

This leaves the Massapequa District Plaintiffs in an untenable position: comply with Part 123 and risk immediate federal investigation and legal liability, or defy Part 123 and face removal of duly elected board members and the loss of State funding. Should the Court grant their pending motion to amend, the Massapequa District Plaintiffs intend to urgently move for preliminary relief. While consolidation with the 2025 Action brought by NAGA would promote judicial economy, it must not delay Massapequa's ability to pursue urgent relief.

I. **IMPORTANT BACKGROUND RELATING TO THE COURT'S CASE MANAGEMENT AND TIMELY RESOLUTION OF BOTH ACTIONS**

   A. **Recent Intervening Factual Developments—Including the U.S. Department of Education's Finding that Part 123 Violates Title VI, the U.S. Department of Education's Title VI Investigation into a Similarly Situated School District, and the Defendants' Denial of the Massapequa District Plaintiffs' Extension Request—Underscore the Need for Immediate Injunctive Relief.**

To facilitate the Court's case administration, the Massapequa District Plaintiffs provide a summary of recent factual events establishing their urgent need for injunctive relief.

On May 30, 2025, the U.S. Department of Education issued a formal determination that Part 123 violates Title VI of the Civil Rights Act. As a result, any enforcement or application of Part 123 by the Massapequa District Plaintiffs would now constitute a Title VI violation—

subjecting them to substantial legal exposure and compelling them to infringe upon the constitutional rights of others.

Specifically, on May 30, 2025, the U.S. Department of Education determined that the "New York Department of Education and the Board of Regents" violated Title VI by:

> Implement[ing] a statewide prohibition on names, mascots, or logos based on Native American race and national origin, but allowed names, mascots, and logos that appear to have been derived from other racial or ethnic groups, such as the "Dutchmen" and the "Huguenots." Accordingly, OCR determined that the Board's policy was discriminatory, and therefore violating Title VI.

Press Release, U.S. Dep't of Ed., Secretary McMahon Visits Massapequa High School, Announces Finding in School Mascot Probe (May 30, 2025), https://www.ed.gov/about/news/press-release/secretary-mcmahon-visits-massapequa-high-school-announces-finding-school-mascot-probe.  Of course, federal laws such as Title VI preempt state law based on "conflict preemption" where, *inter alia*, "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012).  Based on the U.S. Department of Education's finding, Part 123 is preempted by Title VI because, *inter alia*, compliance with both Part 123 and Title VI is impossible.

Following this Title VI finding, the U.S. Department of Education "issued a proposed Resolution Agreement to the New York Department of Education and the New York State Board of Regents to voluntarily resolve the Title VI violations . . . within 10 days or risk possible referral to the U.S. Department of Justice (DOJ) for enforcement proceedings and potential loss of federal funding." The U.S. Department of Education outlined the following requirements:

- Rescinding the part of the educational regulation prohibiting the use of Indigenous names, mascots, and logos by New York public schools;
- Issuing a memorandum to all Local Education Agencies informing them that they may adopt a name, mascot, and logo consistent with the requirements of Title VI; and
- Issuing letters of apology to Indigenous tribes, acknowledging that the Board violated Title VI by discriminating against Native Americans and, through its implementation of the statewide policy, silenced the voices of Native Americans and attempted to erase Native American history.

*Id.*

The Defendants failed to remedy the Title VI violation, and on June 17, 2025, the U.S. Department of Education formally referred the case against the New York State Department of Education and the New York State Board of Regents to the U.S. Department of Justice "for their unlawful attempt to ban mascots and logos that celebrate Native American history." Press Release, U.S. Dep't of Ed., U.S. Department of Education Refers Massapequa Mascot Case to the U.S. Department of Justice (Jun. 17, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-refers-massapequa-mascot-case-us-department-of-justice. The U.S. Department of Education stated that the Defendants plainly rejected the foregoing proposed resolution "that would bring both entities into compliance with Title VI of the Civil Rights Act (1964) by rescinding its prohibition on Native American mascots and logos." *Id.*

Shortly after that Title VI finding, the U.S. Department of Education announced a Title VI investigation into the Connetquot Central School District, a Long Island public school district and former co-plaintiff in this litigation, because "the Connetquot Central School District—which had vigorously opposed Part 123 in litigation and public statements, citing constitutional violations—has now reversed course and is actively taking steps to erase its Native American mascot and imagery to comply with a state regulation that violates federal civil rights law." Press Release,

U.S. Dep't of Ed., U.S. Department of Education Launches Title VI Investigation into Connetquot Central School District Over Native American Logo Ban (Jul. 8, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-launches-title-vi-investigation-connetquot-central-school-district-over-native-american-logo-ban.

If the Massapequa District Plaintiffs are now similarly compelled to enforce Part 123, they too face the prospect of irreparable harm, including imminent exposure to federal investigation and civil rights enforcement, as well as the compelled violation of others' constitutional rights. And for the Massapequa District Plaintiffs, compliance with Part 123 means discriminating against the NAGA and violating the MSD-NAGA Agreement solely based on the NAGA's status as Native Americans. This is a clear Title VI violation and causes irreparable harm.

Following the U.S. Department of Education's Title VI finding, the Massapequa District Plaintiffs formally requested an extension from Defendants to postpone enforcement of Part 123. Despite the foregoing events, Defendants denied that request on June 20, 2025. As of July 1, 2025, the regulatory compliance deadline has passed, exposing the Massapequa District Plaintiffs to serious consequences for Part 123 non-compliance — including the potential loss of state funding and the removal of duly elected board members. Both of which constitute a paradigmatic form of irreparable harm.

The Defendants' denial of the Massapequa District Plaintiffs' extension request also directly undermines one of the key grounds upon which the Court previously denied injunctive relief. In its March Order, the Court held that "Plaintiffs' harms are not irreparable" because "Plaintiffs could seek an extension of the compliance deadline, which would remedy any of Plaintiffs' alleged harms." *Massapequa Union Free Sch. Dist.*, 2025 U.S. Dist. LEXIS 57633, at *105. Now that the requested extension has been formally denied, there remains no available

5

Rigano LLC *Attorneys at Law*

administrative remedy to rectify the Massapequa District Plaintiffs' harms, which are now both imminent and irreparable.

Further, since the March Order, Plaintiff Jeanine Caramore decided to seek re-election, and the Massapequa School District and NAGA entered into the MSD-NAGA Agreement on May 15, 2025, regarding the continued use of the "Chiefs" name and associated educational programming. As discussed fully in Massapequa District Plaintiffs' motion to amend, Part 123 prohibits Plaintiff Caramore, as an incumbent board member, from using "Chiefs" in any capacity during her election campaign on school grounds, without the same restrictions on her political opponents. This is an immediate and irreparable violation of her constitutional rights. Further, the District's mandated compliance with Part 123 forces it to suppress Plaintiff Caramore's constitutional rights and also breach its agreement with NAGA solely on the basis of the NAGA's race and national origin, which constitutes a Title VI violation.

It is imperative that Massapequa District Plaintiffs obtain the right to amend their complaint to include the foregoing factual developments and seek a preliminary injunction to stay Part 123 enforcement. Without immediate judicial intervention, the Massapequa District Plaintiffs face an impossible choice that causes irreparable harm: comply with Part 123 and risk immediate federal investigation and legal liability, or defy Part 123 and face removal of duly elected board members, the loss of State funding, and compelled violations of others' constitutional rights.

Accordingly, and in response to the Court's invitation to address "any other matter, not touching upon the ultimate merits of the cases, relevant to the Court's case management and timely resolution of both cases," the Massapequa District Plaintiffs respectfully submit that the foregoing background is essential to the Court's informed and efficient management of these actions. The Court's March Order addressed a materially different set of claims and facts than those currently

6

RIGANO LLC *Attorneys at Law*

at issue. The Massapequa District Plaintiffs face imminent and irreparable harm and have exhausted all other avenues for relief. Time is of the essence, and this action represents the final opportunity to obtain judicial relief.

    **B. The Claims in the Native American Guardian Association's 2025 Action and in the Massapequa District Plaintiffs' Motion for Leave to Amend Were Neither Presented Nor Decided in the Court's March 27, 2025, Memorandum and Order.**

The March Order was based on causes of action materially different from those at issue in the NAGA's 2025 Action and the Massapequa District Plaintiffs' pending motion for leave to amend. Indeed, even Defendants concede this point, expressly acknowledging in their opposition that the motion for leave seeks to "add several new causes of action." (DE 72 at 10.).

Specifically, the March Order addressed and dismissed claims pursuant to Article 78 of the New York Civil Practice Law and Rules, the separation of powers doctrine, the First and Fourteenth Amendments, and Article I, Section 8 of the New York Constitution. *Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, 2025 U.S. Dist. LEXIS 57633, *9. By contrast, the Massapequa District Plaintiffs' motion for leave to amend advances new claims based on Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, the First and Fourteenth Amendments to the United States Constitution; the Commerce Clause under Article I, Section 8 of the United States Constitution (both Dormant and Indian Commerce Clauses); and the State-Bill-of-Attainder Clause under Article I, Section 10 of the United States Constitution. None of these new claims were presented to—or decided by—the Court in its March Order. The same holds true for the NAGA's 2025 Action, which likewise advances distinct legal theories not previously raised or resolved in that Order.

7

R<small>IGANO</small> LLC *Attorneys at Law*

Both the NAGA's claims and the Massapequa District Plaintiffs' amended claims are grounded in factual developments that occurred after the Court issued its March Order. These intervening factual developments include the NAGA's filing of a formal Title VI complaint with the U.S. Department of Education's Office for Civil Rights, as well as the execution of the binding MSD-NAGA Agreement on May 15, 2025, regarding the continued use of the "Chiefs" name and associated educational programming. In addition, Plaintiff Jeanine Caramore's decision to seek re-election constitutes another material factual development since the March Order that served as the basis for an amended claim.

## II.  JUDICIAL EFFICIENCY SUPPORTS GRANTING THE MOTION FOR LEAVE TO AMEND AND THEN CONSOLIDATING THE ACTIONS.

The most streamlined and equitable course of action is for the Court to first grant the Massapequa District Plaintiffs' motion for leave to amend, permitting their amended claims to proceed. These amended claims share substantial legal and factual overlap with the claims asserted by the NAGA in the 2025 Action, which are already before this Court. Allowing these amended claims to move forward expeditiously — and then consolidating the *amended* 2023 Action and 2025 Action — would facilitate adjudication on the merits, conserve judicial resources, and ensure consistency in rulings. That is fully aligned with this Court's case management principles related to motions for leave to amend. *See* Individual Practices, VI(I)(2).

For the reasons discussed above, Massapequa District Plaintiffs urgently need injunctive relief to stay the Defendants' Part 123 enforcement in violation of federal law. Massapequa District Plaintiffs intend to expeditiously move for preliminary injunctive relief if the Court grants its motion to amend. Accordingly, the Massapequa District Plaintiffs submit that consolidation should not delay Massapequa District Plaintiffs' urgent rights to seek injunctive relief.

RIGANO LLC *Attorneys at Law*

By contrast, denying the Massapequa District Plaintiffs' motion for leave to amend would introduce needless inefficiency. The Massapequa District Plaintiffs would be forced to file a new action based on the newly developed facts and new claims—an outcome that serves neither the interests of the parties nor the Court. These claims, if brought in a new action, would not be foreclosed by the law-of-the-case doctrine, or any related doctrine, because these claims have never been decided — let alone permitted to proceed — by this Court. Nor could they have been raised in the *original* 2023 Action because the operative facts upon which the claims are based did not exist prior to this Court's March Order. This new action would then be accompanied by a motion to consolidate with the NAGA's 2025 Action, placing the litigation back on the same procedural track—but with unnecessary delay and duplication.

In sum, granting the Massapequa District Plaintiffs' motion for leave to amend and then consolidating the actions is the most efficient, orderly, and equitable approach. We appreciate the Court's consideration of this matter.

Respectfully submitted,

*Nicholas C. Rigano*
Nicholas C. Rigano

Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
/s/
Oliver Roberts

cc:
All counsel of record (via ECF)

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

The undersigned, an attorney duly admitted to practice before this court, hereby certifies that the foregoing letter brief complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Order date July 9, 2025. The foregoing letter contains 2,496 words, as counted by the word processing system used to prepare it. This word count excludes the date, address, signature block, and this Certificate, but includes the subject lines and all headings and footnotes.

Dated: Melville, New York
       July 23, 2025

                                            */s/ Nicholas C. Rigano*
                                            Nicholas C. Rigano, Esq.
                                            (631) 756-5900
                                            nrigano@riganollc.com