**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, JEANINE CARAMORE, in her capacity as a Board of Education Member and a Resident/Parent of the School Community.

                        Plaintiffs,

    -against-

NEW YORK STATE BOARD OF REGENTS, et al.,

                       Defendants.

Docket No. 23-cv-07052
(SJB)(LGD)

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' LIMITED MOTION TO ALTER OR AMEND THE JUDGMENT ENTERED IN THIS CASE

---

**RIGANO LLC**
534 Broad Hollow Rd., Suite 100
Melville, New York 11747
Telephone: (631) 756-5900
Nicholas C. Rigano, Esq.
Joshua Liebman, Esq. (Of Counsel)
Peter J. Clines, Esq. (Of Counsel)
nrigano@riganollc.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.    Notwithstanding the Notice of Appeal, This Court Has Jurisdiction To Hear This Motion................................................................................................................................ 5

    II.    Reconsideration To Allow Plaintiffs Leave to Amend Their Title VI Claim Is Warranted Under Federal Rule of Civil Procedure 59(e) ................................................................. 6

        a.    Consideration of Last Week's Determination by OCR That Connetquot Central School District Violated Title VI Is Necessary To "Correct Clear Error or Prevent Manifest Injustice" Because It Confirms That Plaintiffs Have Been Under Threat of Enforcement If They Comply With Part 123 And, Therefore, Have Standing To Assert Their Title VI Claim .................... 7

        b.    Last Week's Determination by OCR That Connetquot Central School District Violated Title VI Constitutes "New Evidence" Confirming That Plaintiffs Are Under Threat of Federal Enforcement and Have Standing ............................................................................................ 9

    III.    Alternatively, Relief Is Warranted Under Rule 60(B) ....................................................... 10

    IV.    Alternatively, An Indicative Ruling of Remand Is Warranted Under Rule 62.1 .............. 10

CONCLUSION..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                      Page(s)

*Abouelmagd v. Semeniuk,*
    2025 WL 3145056 (E.D.N.Y. Nov. 10, 2025) ...................................................................6

*Baptichon v. Fed. Reserve Bank of Minneapolis,*
    2025 WL 1167842 (E.D.N.Y. Apr. 22, 2025) ...................................................................9

*Baur v. Veneman,*
    352 F.3d 625 (2d Cir. 2003) .............................................................................................8

*Blue Rio LLC v. Thomas,*
    2017 WL 4863091 (S.D.N.Y. Oct. 26, 2017) ..................................................................7

*Cayuga Nation v. Tanner,*
    824 F.3d 321 (2d Cir. 2016) .............................................................................................8

*Cho v. Blackberry Ltd.,*
    991 F.3d 155 (2d Cir. 2021) .............................................................................................6

*Evans v. Port Auth.,*
    2002 WL 418026 (S.D.N.Y. Mar. 19, 2002) ..................................................................6

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982) ...........................................................................................................5

*In re Bear Stearns Companies, Inc. Sec., Derivative and ERISA Litig.,*
    2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011) ................................................................6

*Kemp v. United States,*
    596 US 528 (2022) .........................................................................................................10

*Lasher v. Stavis,*
    2018 WL 6521586 (S.D.N.Y. Dec. 12, 2018) ................................................................6

*Lawrence v. Cohn,*
    1992 WL 18801 (S.D.N.Y. Jan. 28, 1992) ...................................................................11

*Malek v. Feigenbaum,*
    116 F.4th 118 (2d Cir. 2024) ...........................................................................................1

*Martinez v. Hasper,*
    2002 WL 118720 (E.D.N.Y. Jan. 12, 2022) ...................................................................5

*Northwell Health, Inc. v. Blue Cross and Blue Shield of Massachusetts, Inc.*,
　2025 WL 3500645 (E.D.N.Y. Dec. 5, 2025) ...................................................................7

*NOSAJ Entertainment v. Tristate and Beyond, LLC*,
　2025 WL 1126817 (S.D.N.Y. Apr. 16, 2025) ..................................................................5

*Obra Pia Ltd. v. Seagrape Inv'rs LLC*,
　2021 WL 1978545 (S.D.N.Y. May 18, 2021) ................................................................10

*Rivera v. Fed. Bur. of Prisons*,
　368 F. Supp. 3d 741 (S.D.N.Y. 2019) ..............................................................................7

*Superb Motors, Inc. v. Deo*,
　2025 WL 1766225 (E.D.N.Y. June 26, 2025) ................................................................10

*Thompson v. County of Franklin*,
　180 F.R.D. 216 (N.D.N.Y. 1998) ...................................................................................11

*Toliver v. County of Sullivan*,
　957 F.2d 47 (2d Cir. 1992) .............................................................................................11

*Tweed-New Haven Airport Authority v. Tong*,
　930 F.3d 65 (2d Cir. 2019) ...........................................................................................8, 9

*United States v. Potamkin Cadillac Corp.*,
　697 F.2d 491 (2d Cir. 1983) ..........................................................................................10

*Williams v. Citigroup, Inc.*,
　659 F3d 208 (2d Cir. 2011) .............................................................................................6

**Rules and Regulations**

42 U.S.C. § 2000d ...............................................................................................................1, 7

Fed. R. App. P. 4(a)(4)(A) ....................................................................................................11

Fed. R. Civ. P. 59(e) ...................................................................................................... *passim*

Fed. R. Civ. P. 60(b) ....................................................................................................1, 5, 10

# PRELIMINARY STATEMENT

Plaintiffs Massapequa Union Free School District and Massapequa Union Free School District Board of Education (together, "Plaintiffs") move to alter or amend the Judgment resulting from the Court's November 14, 2025 Memorandum and Order. Plaintiffs' narrow motion is limited to seeking authorization to plead their claim pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). The Court denied leave and dismissed Plaintiffs' Title VI claim *without prejudice* on futility grounds. The Court reasoned that Plaintiffs had no standing because there was no real threat that the federal government would commence Title VI enforcement against Plaintiffs for complying with Part 123 by changing their "Chiefs" mascot. Recent developments, however, confirm that Plaintiffs indeed face an imminent and actual threat of federal Title VI enforcement if they comply.

Last week, the United States Department of Education Office for Civil Rights ("OCR") determined that Connetquot Central School District ("Connetquot"), a similarly situated Long Island school district and former co-Plaintiff in this matter, violated Title VI by complying with Part 123 and changing its Indigenous "Thunderbirds" mascot to "T-Birds" with Defendants' approval. OCR now requires Connetquot to revert to "Thunderbirds" to cure the violation. This determination confirms that Plaintiffs, like Connetquot, face concrete and imminent injury under Title VI if forced to change their "Chiefs" mascot, conferring standing to challenge the regulation. Plaintiffs submit that this development satisfies the standards to alter or amend the Judgment pursuant to Rule 59(e) and/or 60(b) on limited grounds for Plaintiffs to be given leave to plead their Title VI claim only.[1]

---

[1] Pursuant to Rule IV.D of the Court's Individual Practices for Civil and Criminal Cases, the Court's "Bundling Rule" does not apply to this motion made pursuant to Rule 59(e) and 60(b). Plaintiffs also submit that delaying the filing of the instant motion will deprive them of their right to stay the pending appeal. *See Malek v Feigenbaum*, 116 F4th 118, 123 (2d Cir 2024).

## STATEMENT OF FACTS

Part 123 prohibits, *inter alia*, public school districts in New York from using Indigenous names, logos, or mascots, with limited exceptions and imposes harsh penalties including withholding of state aid and removal of school officers for noncompliance. Plaintiffs' June 30, 2025 deadline to comply with Part 123 has passed and Defendants have denied Plaintiffs an extension of that deadline.

Plaintiffs have challenged Part 123 on multiple grounds, including that compliance would expose them to Title VI liability under federal law, which prohibits discrimination on the basis of race or national origin in federally funded programs. Specifically, on May 19, 2025, Plaintiffs sought to amend their complaint to assert, *inter alia*, a claim that Part 123 violates, and is preempted by, Title VI. In its motion for leave to amend, Plaintiffs relied, in part, on OCR's determination that the State Defendants violated Title VI by promulgating and enforcing Part 123. *See, e.g.,* Dkt. No. 75.

On July 8, 2025, after Plaintiffs' motion to amend was fully briefed, OCR launched an investigation into Connetquot. *See* Ex. A (https://www.ed.gov/about/news/press-release/us-department-of-education-launches-title-vi-investigation-connetquot-central-school-district-over-native-american-logo-ban). OCR launched that investigation because Connetquot, an original co-litigant with Plaintiffs and similarly situated to Plaintiffs as a Long Island district with a Native American-derived mascot "Thunderbirds", reversed its position. In September 2025, Connetquot settled this litigation with the State, agreed to comply with Part 123, and changed its mascot to "T-Birds" to purportedly eliminate the Indigenous reference. Plaintiffs referenced this OCR investigation in a letter submitted to the Court on July 23, 2025 [Dkt. No. 80].

In the November 14, 2025 Order (the "Order"), the Court denied Plaintiffs' motion for leave to amend and dismissed their Title VI claim without prejudice, reasoning that OCR's investigation targeted only the State and Board of Regents, not local districts like Plaintiffs, leaving Plaintiffs without standing. The Order omitted reference to OCR's investigation into Connetquot, suggesting an oversight.

Specifically, the Court held:

> [Plaintiffs'] standing theory fails, because there is no imminent or actual, nonhypothetical, chance that the federal government will contend that Massapequa or the Board is violating Title VI, should they comply with Part 123 . . . Indeed, quite the opposite. As these Plaintiffs proclaim over and over again, the federal government has launched an investigation into Part 123—but that investigation is directed at New York State and the Board of Regents . . .
>
> Massapequa and the Board have identified no such risk of enforcement by OCR or the Department of Justice against *them* . . . Massapequa and the Board, having shown no threat of enforcement of Title VI against them—and indeed, having pointed out the opposite—have no standing to bring a preemption challenge to Part 123.

Order, pp. 80-81 (emphasis in original) (internal citations omitted) [Dkt. No. 82].

On December 12, 2025, Plaintiffs filed the Notice of Appeal [Dkt. No. 87] and Jeanine Caramore, a co-plaintiff with Plaintiffs with surviving claims, filed a notice of voluntary dismissal without prejudice [Dkt. No. 86]. On December 13, 2025, the Court entered a Docket Order stating "[i]n light of the notice of voluntary dismissal 86, the Clerk of Court is directed to close this case." On January 13, 2026, upon Defendants' request, the Court Ordered the Clerk to enter judgment. On January 15, 2026, the Clerk entered judgment stating, *inter alia*, "that the claims are dismissed as to all parties with resolution; and that this case is closed." Dkt. No. 89.

On January 22, 2026, just last week, OCR issued a final determination finding Connetquot in violation of Title VI. *See* Ex. B (https://www.ed.gov/about/news/press-release/us-department-

of-education-finds-connetquot-central-school-district-violated-title-vi-complying-native-american-mascot-ban). Specifically OCR stated:

> Today, the U.S. Department of Education's Office for Civil Rights (OCR) concluded its investigation into Connetquot Central School District (the District) in Long Island, New York. OCR found the District violated Title VI of the Civil Rights Act of 1964 (Title VI) by re-naming their traditional "Thunderbirds" mascot to the "T-Birds" solely because it originates from Native American symbolism.
>
> OCR previously determined in May 2025 that the New York State Education Department and Board of Regents (the Board)'s regulation banning Native American imagery violated Title VI. The regulation prohibited names, mascots, or logos based on Native American race and national origin, while allowing the use of those derived from different racial or ethnic groups, such as "Dutchmen" and "Huguenots," thereby unlawfully implementing race- and national-origin-based classifications in education policy. In September 2025, the District's Board affirmed compliance with New York's regulation and approved a settlement agreement to change its team name from the traditional "Thunderbirds" to "T-Birds." OCR concluded that by abandoning its Native American name to comply with a discriminatory rule, the District engaged in race- and national-origin-based discrimination in violation of Title VI . . .
>
> OCR has offered the District the opportunity to enter into OCR's proposed Resolution Agreement, which requires the District to reverse its discriminatory erasure of Native American imagery by readopting the name "Thunderbirds" for its sports teams and all associated logos and mascots.

In other words, OCR concluded that Connetquot violated Title VI by spending taxpayer funds to abandon its Native-American-derived name to comply with Part 123 and is required to now spend more taxpayer funds to revert back to its original "Thunderbirds" mascot to comply with federal law. This finding mirrors the precise scenario Plaintiffs seek to avoid: compliance with Part 123 triggering a Title VI violation and wasting public funds.

## ARGUMENT

**I.     Notwithstanding the Notice of Appeal, This Court Has Jurisdiction To Hear This Motion**

"The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Martinez v Hasper*, 2022 WL 118720, at *1 (E.D.N.Y. Jan. 12, 2022) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Notwithstanding the divestiture rule, "[d]istrict courts in the Southern and Eastern Districts of New York have generally concluded that they have jurisdiction to resolve timely filed motions under Rule 59(e) and Rule 60(b) even where a notice of appeal is filed before one of those motions." *Martinez*, 2022 WL 118720, at *1 (collecting cases).

Here, Plaintiffs' instant motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure or alternatively Rule 60(b) is timely, so the Court has jurisdiction to consider the instant motion. Pursuant to Rule 59(e), a motion to alter or amend a judgment "must be filed within 28 days after entry of the judgment." Fed. R. Civ. P. 59(e). The Clerk entered judgment here on January 15, 2026 [Dkt. No. 89], less than twenty-eight (28) days ago. Further, Plaintiffs file this motion only four (4) days after OCR's announced determination that Connetquot violated Title VI by complying with Part 123.[2]

---

[2]     The fourteen (14) day deadline set forth in Local Rule 6.3 does not apply because Plaintiffs move under Rule 59(e), which provides a twenty-eight (28) day filing deadline from the date of the judgment, and Rule 60(b), which provides a filing deadline of a "reasonable time" up to one year from judgment. Further, if a party was "justifiably ignorant" of evidence before the fourteen (14) day period runs, the motion for reconsideration may be deemed timely. *NOSAJ Entertainment v Tristate and Beyond, LLC*, 2025 WL 1126817, at *3 (S.D.N.Y. Apr. 16, 2025). OCR's determination discussed herein was just rendered last week; Plaintiffs filed this motion as quickly as possible after OCR's public announcement.

"Alternatively, pursuant to Federal Rule of Civil Procedure 62.1(a), the Court may address the pending motion through an indicative ruling." *Abouelmagd v. Semeniuk*, 2025 WL 3145056, at *3 (E.D.N.Y. Nov. 10, 2025). Plaintiffs seek that alternative relief.

II. **Reconsideration To Allow Plaintiffs Leave to Amend Their Title VI Claim Is Warranted Under Federal Rule of Civil Procedure 59(e)**

"By the plain terms of Rule 59(e), the twenty-eight-day period in which to file a motion to alter or amend a judgment runs from the date of 'the entry of the judgment,' rather than from the date of an order underlying that judgment." *Lasher v Stavis*, 2018 WL 6521586, n.1 (S.D.N.Y. Dec. 12, 2018). Here, the Judgment was entered on January 15, 2026, less than twenty-eight (28) days ago, so this motion is timely.

"[A] party may move for reconsideration and obtain relief only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v Blackberry Ltd.*, 991 F3d 155, 170 (2d Cir 2021). Courts have granted motions for reconsideration under Rule 59(e) of complaint dismissals or motions for leave to amend to further "strong preference for resolving disputes on the merits." *Williams v Citigroup Inc.*, 659 F3d 208, 212-13 (2d Cir 2011); *In re Bear Stearns Companies, Inc. Sec., Derivative, and ERISA Litig.*, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011); *Evans v Port Auth.*, 2002 WL 418026, at *1 (S.D.N.Y. Mar. 19, 2002). The Second Circuit has explained that because of the liberality with which courts grant leave to amend under Rule 15, the interest in finality generally applicable to post-judgment motions may give way to allow courts "to take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment." *Williams*, 659 F.3d at 213.

> **a. Consideration of Last Week's Determination by OCR That Connetquot Central School District Violated Title VI Is Necessary To "Correct Clear Error or Prevent Manifest Injustice" Because It Confirms That Plaintiffs Have Been Under Threat of Enforcement If They Comply With Part 123 And, Therefore, Have Standing To Assert Their Title VI Claim**

Clear error is present when "upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v Fed. Bur. of Prisons*, 368 F Supp 3d 741, 744 (S.D.N.Y. 2019) (discussing the "clear error" standard in the context of a magistrate judge's report). Separately, "manifest injustice" requires the movant to show "exceptional circumstances." *Northwell Health, Inc. v Blue Cross and Blue Shield of Mass., Inc.*, 2025 WL 3500645, at *5 (E.D.N.Y. Dec. 5, 2025).[3] Both are present here.

Title VI prohibits discrimination on the basis of race or national origin in programs receiving federal assistance. 42 U.S.C. § 2000d. By its proposed Fourth Cause of Action, Plaintiffs pled that Part 123 is invalid because it, *inter alia*, forces Plaintiffs to violate Title VI by requiring it to discriminate against Native American imagery.

The Court dismissed Plaintiffs' Title VI claim for lack of standing for lack of injury holding "there is no imminent or actual, nonhypothetical, chance that the federal government will contend that Massapequa or the Board is violating Title VI, should they comply with Part 123". However, the Court overlooked OCR's pending investigation into Connetquot. While a threat of federal enforcement existed then, OCR's recent determination against Connetquot has made federal enforcement against Plaintiffs for Part 123 compliance unequivocal.

If Plaintiffs changed their mascot as Connetquot did (requiring nearly $1 million in taxpayer funds), they would face the same OCR enforcement. The OCR press release confirms

---

[3] "The Court may take judicial notice of . . . agency findings." *Blue Rio LLC v Thomas*, 2017 WL 4863091, at *3, n.1 (S.D.N.Y. Oct. 26, 2017). OCR's determination that Connetquot violated Title VI is admissible and may properly be considered by this Court.

this: "equal treatment under the law is non-negotiable . . . [OCR] will not relent in ensuring that every community is treated equally under the law." Ex. B. This risk is not speculative but a direct parallel—both districts are Long Island entities with similar mascots, federal funding, and Title VI obligations. The threat is imminent: Plaintiffs must comply or face state penalties, yet compliance triggers federal liability.

OCR has not issued a Title VI violation against Plaintiffs yet because Plaintiffs have not changed their mascot and so remain compliant with federal law. Of course, Plaintiffs are not required to violate the law or be the subject of a violation to have standing. Indeed, the Second Circuit has confirmed that the mere presumptive threat of enforcement is sufficient to confer Article III standing. *See Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019). In *Tweed*, the Second Circuit stated:

> [A]n actual . . . enforcement action is not a prerequisite to challenging the law"; a pre-enforcement challenge is sufficient. Where a statute specifically proscribes conduct, the law of standing does "not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it [has] presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed . . . [F]ears of the Statute's enforcement . . . [are] an independent basis for Article III standing

*Id.* at 71 (citations omitted); *Cayuga Nation v Tanner*, 824 F3d 321, 331 (2d Cir 2016) (discussing that the standing threshold for pre-enforcement review is a "low threshold" and "forgiving to plaintiffs" because courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund."). The OCR determination confirms that the presumption of an intent to enforce is well-founded and that Plaintiffs' risk of Title VI liability if they comply with Part 123 is anything but conjecture. *See Baur v Veneman*, 352 F3d 625, 638, n.11 (2d Cir 2003).

8

Further, the remaining standing elements, causation and redressability, are also satisfied. Part 123 causes Plaintiffs' injury by mandating the change in violation of Title VI and staying enforcement/invalidating Part 123 would eliminate the conflict, allowing Plaintiffs to retain their mascot without federal sanction or taxpayer expenditure. *See Tweed*, 930 F.3d at 72 ("redressability requirement is met where the court could prevent enforcement of a preempted law").[4]

Separately, Rule 59(e) relief is also necessary to prevent manifest injustice. This Court has expressed grave concerns about the constitutionality of Part 123 while also recognizing that the school district faces serious detrimental consequences if it fails to comply with the rule's dubious provisions, "including a loss of funding from New York State and removal of school officials." At the same time, the threat of federal civil rights liability if the district does comply becomes more palpable every day. The district is thus in a classic lose-lose quandary which only the adjudication of its challenges to the legality of Part 123 can resolve. Yet, the courthouse doors remain closed to Plaintiffs. Denial of access to justice to address this dilemma presents "exceptional circumstances" and is the very definition of manifest injustice

    **b. Last Week's Determination by OCR That Connetquot Central School District Violated Title VI Constitutes "New Evidence" Confirming That Plaintiffs Are Under Threat of Federal Enforcement and Have Standing**

"A party seeking reconsideration on the grounds of new evidence must establish that the new evidence is both admissible and of such importance that it probably would have changed the outcome to receive relief from a judgment." *Baptichon v Fed. Reserve Bank of Minneapolis*, 2025 WL 1167842, at *1 (E.D.N.Y. Apr. 22, 2025) (citations omitted).

---

[4]     Because the Court denied Plaintiffs' right to replead on standing grounds and dismissed their Title VI claim without prejudice on that subject matter jurisdiction basis alone, Plaintiffs appear to have the right to commence a new action. Granting of this motion and authorizing plaintiffs to plead their Title VI claim in lieu of commencing a new action serves judicial efficiency.

The January 22, 2026 OCR determination against Connetquot constitutes new admissible evidence. While OCR's investigation of Connetquot was ongoing, this finding was issued after the Court's Order and Judgment entered in this case. Prior to this, no such determination of illegality existed against any New York public school district that complied with Part 123. As discussed above, the OCR determination confirms that Plaintiffs have standing.

### III. Alternatively, Relief Is Warranted Under Rule 60(B)

"Rule 60(b) permits relief from an order or judgment for mistake . . . newly discovered evidence . . ., or in exceptional or extraordinary circumstances." *Superb Motors, Inc. v. Deo*, 2025 WL 1766225, at *2 (E.D.N.Y. June 26, 2025) (citing Fed. R. Civ. P. 60(b)). Relief is available under Rule 60(b)(1) to correct "a judge's errors of law". *Kemp v United States*, 596 US 528, 530 (2022). Relief is available under Rule 60(b)(2) where post-judgment evidence directly undermines the basis for dismissal and could not have been anticipated. *See, e.g., United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983). And relief is available under Rule 60(b)(6) "when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Obra Pia Ltd. v Seagrape Inv'rs LLC*, 2021 WL 1978545, at *5 (S.D.N.Y. May 18, 2021) (citations omitted). Rule 60(b) motions must be filed within a "reasonable time" but no more than one year after judgment. Fed. R. Civ. P. 60(c)(1).

As the Judgment here was entered on January 15, 2026 [Dkt. No. 89] and Plaintiffs request this instant relief days after the OCR determination, Rule 60(b) relief is timely. Further, Rule 60(b) relief is meritorious for the same reasons discussed *supra*.

### IV. Alternatively, An Indicative Ruling of Remand Is Warranted Under Rule 62.1

Alternatively, if the Court determines that it does not have jurisdiction to consider Rule 59(e) or 60(b) relief, Plaintiffs respectfully request that the Court issue a Rule 62.1 indicative ruling

10

to the Second Circuit that the Court would grant the motion for reconsideration if the Second Circuit remands the case. This process is typically implemented if a notice to appeal is filed and the Court finds this motion does not fall within the timeframe contemplated by Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure ("Appellate Rules") (*i.e.*, filed 28 days after judgment). In that instance, the Court of Appeals "must first give its consent so it can remand the case, thereby returning jurisdiction over the case to the district court." *Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir.1992). Therefore, the Court should "give an 'express indication' that it intends to [grant the motion], but the court [should] not actually grant such relief" until such time as the Court of Appeals remands the case to the district court for that purpose. *Thompson v. Cnty. of Franklin,* 180 F.R.D. 216, 220 (N.D.N.Y.1998); *see also Lawrence v. Cohn,* 1992 WL 18801, at * 2 (S.D.N.Y. Jan. 28, 1992). Assuming the Court determines it lacks jurisdiction to grant the instant motion, an indicative ruling would be appropriate as the OCR investigation confirms Plaintiffs' standing to assert their Title VI claims as discussed *supra*.

## **CONCLUSION**

Plaintiffs respectfully request the Judgment be altered and leave to plead their Title VI claim be granted. Alternatively, Plaintiffs respectfully request issuance of an indicative ruling stating that the Court would grant the motion upon remand.

Dated: Melville, New York
      January 26, 2026         **RIGANO LLC**
                                    *Attorneys for Plaintiffs*

                                  By: */s/ Nicholas C. Rigano*
                                        Nicholas C. Rigano, Esq.
                                        Joshua Liebman, Esq. (Of Counsel)
                                        Peter J. Clines (Of Counsel)
                                        534 Broad Hollow Road, Suite 100
                                        Melville, New York 11747
                                        (631) 756-5900
                                        nrigano@riganollc.com

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

The undersigned, an attorney duly admitted to practice before this court, hereby certifies that the foregoing Memorandum of Law complies with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Your Honor's Individual Practices for Civil and Criminal Cases. The Memorandum of Law contains 3,491 words, as counted by the word processing system used to prepare it. This word count excludes the caption, tables, signature block, and this Certificate, but includes all headings and footnotes.

Dated: Melville, New York  /s/ *Nicholas C. Rigano*
      January 26, 2026  Nicholas C. Rigano
                                                                     631-756-5900
                                                                     NRigano@riganollc.com