UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, JEANINE CARAMORE, in her capacity as a Board of Education Member and a Resident/Parent of the School Community,[1] <br><br> *Plaintiffs*, <br><br> -against- <br><br> NEW YORK STATE BOARD OF REGENTS, LESTER W. YOUNG, JR, in his official capacity as Chancellor of the New York State Board of Regents, JUDITH CHIN, in her official capacity as Vice Chancellor of the New York State Board of Regents, ROGER TILLES, in his official capacity as a member of the New York State Board of Regents, CHRISTINE D. CEA, in her official capacity as a member of the New York State Board of Regents, WADE S. NORWOOD, in his official capacity as a member of the New York State Board of Regents, SUSAN W. MITTLER, in her official capacity as a member of the New York State Board of Regents, FRANCES G. WILLS, in her official capacity as a member of the New York State Board of Regents, ARAMINA VEGA FERRER, in her official capacity as a member of the New York State Board of Regents, SHINO TANIKAWA, in her official capacity as a member of the New York State Board of Regents, ROGER P. CATANIA, in his official capacity as a member of the New York State Board of Regents, ADRIAN I. HALE, in his official capacity as a member of the New York State Board of Regents, HASONI L. PRATTS, in her official capacity as a member of the New York State Board of Regents, PATRICK A. MANNION, in his official capacity as a member of the New York State Board of Regents, SEEMA RIVERA, in her official capacity as a member of the New York State Board of Regents, BRIAN KRIST, in his official capacity as a member of the New York State Board of Regents, KEITH B. WILEY, in his official capacity as a member of the New York State Board of Regents, and FELICIA THOMAS-WILLIAMS, in her official capacity as a member of the New York State Board of Regents,[2] <br><br> *Defendants*. | 2:23-cv-07052 (SJB/LGD) |

---

[1] On December 12, 2025, Jeanine Caramore voluntarily withdrew her claims asserted as a resident/parent of the school community. *See* Notice of Dismissal, DE 86.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the names of the Regents, all sued in their official capacity only, who are no longer serving have been removed and replaced with the current Regents. *See* https://www.regents.nysed.gov/members.

# MEMORANDUM OF LAW IN OPPOSTION TO
# MOTION TO ALTER OR AMEND JUDGMENT

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

Helena Lynch
Assistant Attorney General

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY....................................................................................2

STANDARD ON MOTON FOR RELIEF UNDER RULES 59(e) AND 60(b)...........................4

ARGUMENT ...................................................................................................6

PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE PURPORTED NEWLY DISCOVERED EVIDENCE WOULD NOT HAVE CHANGED THE OUTCOME REGARDING PLAINTIFFS' PROPOSED TITLE VI CLAIM ....................................................6

    A. Plaintiffs lack statutory standing to assert a Title VI claim ................................................7

    B. Plaintiffs lack capacity to assert their Title VI claim ................................................9

    C. Plaintiffs fail to show that Part 123 conflicts with Title VI ................................................10

CONCLUSION..................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)...............................................................................................8

*Cambridge Central School District v. N.Y. State Education Dep't*,
    Index No. 902161-22 (Sup. Ct. Albany County) ...............................................11

*Carmel Cent. Sch. Dist. v. V.P.*,
    No. 04 Civ. 3320, 2005 WL 1469472 (S.D.N.Y. June 9, 2005).......................12

*City of New York v. State*,
    86 N.Y.2d 286 (1995) .........................................................................................9

*Clarke v. Town of Newburgh*,
    No. 84, 2025 WL 3235042 (N.Y. Nov. 20, 2025) .......................................9, 10

*D.C. by Conley v. Copiague Union Free Sch. Dist.*
    No. 16-cv-4546, 2017 WL 3017189 (E.D.N.Y. July 11, 2017)..........................7

*DeKalb Cnty. Sch. Dist. v. Schrenko*,
    109 F.3d 680 (11th Cir. 1997) ............................................................................8

*Dennis v. JPMorgan Chase & Co.*,
    342 F. Supp. 3d 404 (S.D.N.Y. 2018)................................................................9

*K.H. v. New York City Dep't of Educ.*,
    No. 12-cv-1680, 2014 WL 3866430 (E.D.N.Y. Aug. 6, 2014) .........................12

*Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    30 N.Y.3d 377 (2017) .......................................................................................10

*Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*,
    442 F. App'x 681 (3d Cir. 2011) ........................................................................8

*Quintanilla v. Pete's Arbor Care Servs., Inc.*,
    No. 19-cv-06894, 2024 WL 4467221 (E.D.N.Y. Oct. 10, 2024) .......................5

*Rodriguez v. Boursiquot*,
    No. 09 Civ. 0802, 2010 WL 985187 (S.D.N.Y. Mar. 17, 2010) .......................7

*Scheidelman v. Comm'r*,
    755 F.3d 148 (2d Cir. 2014)..............................................................................12

*Schuler v. Bd. of Educ. of Cent. Islip Union Free School Dist.*,
    No. 96-cv-4702, 2000 WL 134346 (E.D.N.Y. Feb.1, 2000) ...............................................7

*Shukla v. Sharma*,
    No. 07-cv-2972, 2014 WL 4437278 (E.D.N.Y. Sept. 9, 2014) ........................................6

*Town of Babylon, NY v. James*,
    707 F. Supp. 3d 213 (E.D.N.Y. 2023) ...............................................................................9

*Tweed-New Haven Airport Authority v. Tong*,
    930 F.3d 65 (2d Cir. 2019).................................................................................................10

*United States v. Alabama*,
    791 F.2d 1450 (11th Cir. 1986) .........................................................................................8

*Yelle v. Mount St. Mary Coll.*,
    No. 18-cv-10927, 2021 WL 311213 (S.D.N.Y. Jan. 29, 2021) ........................................4

*Yzaguirre v. KIPP NYC Pub. Charter Sch.*,
    No. 24 Civ. 1500, 2025 WL 795732 (S.D.N.Y. Feb. 7, 2025) .......................................10

**United States Constitution**                                              **Page**

    art. I, § 8, cl. 3 ...............................................................................................................1
    art. I, § 10, cl. 1 .............................................................................................................3

**Federal Statutes**                                                  **Page**

    42 U.S.C. § 1981 ............................................................................................................3
    42 U.S.C. § 2000d...........................................................................................................1
    42 U.S.C. § 2000E-2 ......................................................................................................3

**Federal Rules of Civil Procedure**                            **Page**

    59(e) ..........................................................................................................1, 2, 4, 5
    60(b) .........................................................................................................1, 2, 4, 5
    62.1(a)(2) ...................................................................................................................6
    62.1(a)(3) ...................................................................................................................6

**New York Constitution**                                            **Page**

    Art. I, § 8 .....................................................................................................................3

**New York State Regulations**                                **Page**

N.Y. Comp. Codes R. & Regs. tit. 8
    § 123.1............................................................................................................................10

§ 123.5.............................................................................................................................2

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs' motion to either alter or amend the judgment in this matter, or for relief from the judgment, or, alternatively, for an indicative ruling that a motion for relief from the judgment would be granted or that such a motion raises a substantial issue. Defendants' opposition is based on Plaintiffs' failure to satisfy the requirements of a motion under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure because they cannot show that the Court, in its Memorandum and Order of November 14, 2025, would have reached a different result and granted Plaintiffs' motion to add a Title VI claim.

## PRELIMINARY STATEMENT

Plaintiffs Massapequa Union Free School District (the "District") and the Massapequa Union Free School District Board of Education (the "Board"),[3] seek to revive their unsuccessful challenge to Part 123 of the Regulations of the Commissioner of Education, N.Y. Comp. Codes R. & Regs. tit. 8 ("8 NYCRR") §§ 123.1-123.5 ("Part 123"). Part 123 prohibits New York State public school districts from using Indigenous names, logos, or mascots to represent their respective schools, primarily in the context of interscholastic sports, while allowing the use of such names and images for classroom instruction.

Plaintiffs now move, under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, to alter or amend the judgment, entered on January 15, 2026 (DE 89), insofar as the Court, in its November 14, 2025 Memorandum and Order ("Nov. 14, 2025 Order," DE 82), denied Plaintiffs' motion for leave to amend to add a claim that Part 123 is preempted by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *See* Notice of Motion (DE 90); Pls.' Mem. (DE 90-1). In its

---

[3] Although the caption reflects that Jeanine Caramore is still a named Plaintiff, only the District and the Board are identified as submitting this motion.

November 14, 2025 Memorandum and Order, the Court ruled that the Plaintiffs lacked Article III standing to assert a Title VI preemption claim because they could not show that they were under any imminent threat of an enforcement action against them by the U.S. Department of Education's Office for Civil Rights ("OCR") or the U.S. Department of Justice. Nov. 14, 2025 Order (DE 82) at 80-81. Plaintiffs now present evidence that OCR has taken action against another school district for complying with Part 123 and contend that they face a similar risk of enforcement. Pls.' Mem. at 7-10.

Plaintiffs' motion should be denied. Even if this Court were to agree that Plaintiffs have Article III standing, their proposed Title VI claim remains futile for three independent reasons: (1) Plaintiffs lack statutory standing under Title VI; (2) Plaintiffs lack capacity under state law to assert a preemption claim; and (3) Plaintiffs failed to adequately plead that Part 123 conflicts with Title VI.

Because Plaintiffs cannot show that the outcome of the November 14, 2025 Memorandum and Order would have been different—*i.e.*, that the Court would have granted Plaintiffs' motion for leave to add a Title VI claim—they are not entitled to relief under Rules 59(e) or 60(b). In addition, because Plaintiffs show no basis upon which their motion would be granted, they are not entitled to their alternative request for relief for an indicative ruling under Rule 61.2(a)(3) that their motion would be granted or that it raises a substantial issue.

## PROCEDURAL HISTORY

This matter was commenced in September 2023 with the filing of a summons and complaint. DE Nos. 1, 2. An amended complaint was filed on January 16, 2023. DE 24. Plaintiffs asserted: two causes of action pursuant to Article 78 of the New York Civil Practice Law and Rules, Am. Compl. (DE 24) ¶¶ 102-10, ¶¶ 112-22; a separation of powers claim, *id.* ¶¶ 124-33; a

Fourteenth Amendment void for vagueness claim, *id.* ¶¶ 135-49; and, as asserted by Plaintiff Jeanine Caramore as a private citizen only, that § 123.5 restricts speech in violation of the First Amendment and Article I, Section 8, of the N.Y. Constitution, *id.* ¶¶ 151-71. In a Memorandum and Order dated March 27, 2025 (DE 60), the Court granted Defendants' motion to dismiss. The Court declined to accept jurisdiction over the Article 78 and separation-of-powers claims, *id.* at 12, 71-78, and dismissed the remaining claims for lack of capacity or failure to state a claim, *id.* at 88-89. The Court allowed Plaintiff Caramore leave to amend her personal-capacity First Amendment free speech and overbreadth claims. *Id.* at 52, 70. The Court also denied Plaintiffs' motion for a preliminary injunction. *Id.* at 78-88. Plaintiffs filed a notice of appeal, purportedly to appeal only the denial of the motion for a preliminary injunction. DE 62. Plaintiffs later withdrew their appeal. DE 77.

On May 19, 2025, Plaintiffs moved for leave to amend, seeking to reinvent the litigation by adding several new causes of action. In addition to First Amendment and overbreadth claims, *see* Proposed Second Amended Complaint (PAC, DE No. 66-2) ¶¶ 117-126, 169-182), the District, the Board, and Caramore suing as a Board member (collectively, the "Municipal Plaintiffs") sought to add claims that Part 123 is preempted by: Title VI (*Id.* ¶¶ 184-213); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (*Id.* ¶¶ 215-231); 42 U.S.C. § 1981 (*Id.* ¶¶ 233-246); the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (*Id.* ¶¶ 248-261); and the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (*Id.* ¶¶ 263-276); and that Part 123 violates the state Bill of Attainder Clause, U.S. Const. art. I, § 10, cl. 1 (*Id.* ¶¶ 278-291).[4]

---

[4] Plaintiffs have also filed an Article 78 petition in State court challenging certain Defendants' denial of Plaintiffs' request for an extension to comply with Part 123. *In the Matter of Massapequa Union Free Sch. Dist.*, Index No. 909931-25 (S. Ct. Albany County).

In the November 14, 2025 Order, the Court denied Plaintiffs' motion for leave to amend, primarily on threshold grounds, including lack of standing and lack of capacity.[5] With respect to the Title VI claim, the only claim at issue in this motion, the Court ruled that Plaintiffs lacked Article III standing to assert that claim because they demonstrated no risk that OCR or the U.S. Department of Justice would take enforcement action against them. Nov. 14, 2025 Order (DE 82) at 80-81. The Court did not rule on Defendants' argument that Plaintiffs lack statutory standing to assert a Title VI claim, although the Court did acknowledge that it is students, and not Plaintiffs, who are the intended beneficiaries of federal education funding under Title VI. *Id*. at 78. And the Court also did not rule on Defendants' argument that Plaintiffs failed to plead that Part 123 conflicts with Title VI.[6]

On December 12, 2025, the District, the Board, and Caramore in her official capacity filed a notice of appeal. DE 87. After Plaintiffs filed the instant motion on January 26, 2026, the U.S. Court of Appeals for the Second Circuit entered an order staying the appeal until the motion is resolved. DE 91.

## STANDARD FOR MOTION FOR RELIEF UNDER RULES 59(e) AND 60(b)

"In the Second Circuit the standard for granting a Rule 59(e) motion" to alter or amend a judgment "is strict, and . . . will generally be denied." *Yelle v. Mount St. Mary Coll.*, No. 18-cv-10927, 2021 WL 311213, at *2 (S.D.N.Y. Jan. 29, 2021), *aff'd sub nom. Yelle v. Mount Saint Mary Coll.*, No. 21-480-cv, 2022 WL 1715979 (2d Cir. May 27, 2022) (internal quotation marks

---

[5] The November 14, 2025 Memorandum and Order also dismissed the claims asserted in a separate but related case, *Native American Guardian's Association, et al. v. N.Y. State Bd. of Regents, et al*, 25-cv-3008.

[6] The Court granted Caramore's motion for leave to amend only as to the First Amendment claims brought in her personal capacity. Nov. 14, 2025 Order at 91. On December 12, 2025, Caramore voluntarily withdrew those claims. DE 86.

omitted). Rule 59(e) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Id.* (internal quotation marks omitted). Such a motion may be granted "only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013) (internal quotation marks omitted).

Although a party may also seek relief from a judgment under Rule 60(b)(2) based on newly discovered evidence, the standard under this Rule is equally as strict. "The party seeking relief from judgment [under Rule 60(b)(2)] has an onerous standard to meet." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).[7] As courts within the Second Circuit have explained:

> The same standard applies to Rule 59(e) and Rule 60(b) motions based on new evidence. That standard requires the movant to establish that (1) the newly discovered evidence concerns facts that existed at the time of trial or other dispositive proceeding, (2) the movant was justifiably ignorant of those facts despite due diligence, (3) the evidence is admissible and of such importance that it probably would have changed the outcome, and (4) the evidence is not merely cumulative or impeaching.

*Quintanilla v. Pete's Arbor Care Servs., Inc.*, No. 19-cv-06894, 2024 WL 4467221, at *2 (E.D.N.Y. Oct. 10, 2024) (citing *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146–47 (2d Cir. 2020)).

---

[7] Plaintiffs also seek relief under Rule 60(b)(1), to correct an error of law, *see* Pls.' Mem. at 10, but they identify no error by the Court. Plaintiffs also seek relief under the catch-all "any other reason that justifies relief," *see id.*, but that form of relief is available only "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b)," *Int'l Bhd. of Teamsters*, 247 F.3d at 391-92. Because Plaintiffs seek relief specifically under Rule 60(b)(2), they are not entitled to relief under Rule 60(b)(6).

Most salient here is the requirement that Plaintiffs must show that the purported new evidence probably would have changed the outcome of the Court's November 14, 2025 Memorandum and Order. *See id.* Thus, regardless of whether Plaintiffs seek relief under Rule 59(e) or Rule 60(b)(2), they must show that the result of their motion for leave to add a Title VI claim would have been different.

Plaintiffs alternatively request that the Court issue an indicative ruling under Rule 62.1 (a)(3), which provides that, where a Court lacks jurisdiction over a post-judgment motion due to a pending appeal, the Court may issue an indicative ruling stating that it would grant the motion or that the motion raises a substantial issue if the appellate court were to remand the matter. Fed. R. Civ. P. 62(a)(3). However, Rule 62.1(a)(3) is not implicated here. District courts lack authority to *grant* post-judgment motions while an appeal is pending, *see, e.g., Shukla v. Sharma*, No. 07-cv-2972, 2014 WL 4437278, at *3 (E.D.N.Y. Sept. 9, 2014), but district courts retain jurisdiction to *deny* such motions, *id*. ("Courts in this Circuit routinely exercise their authority pursuant to Rule 62.1 to deny Rule 60(b) motions as meritless."); Fed R. Civ. P. 62.1(a)(2) (district court may "deny the motion").

## ARGUMENT

### PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE PURPORTED NEWLY DISCOVERED EVIDENCE WOULD NOT HAVE CHANGED THE OUTCOME REGARDING PLAINTIFFS' PROPOSED TITLE VI CLAIM

The Court should deny Plaintiffs' motion to alter or amend the judgment, or for relief from the judgment, because the purported new evidence—an investigation by OCR into Connetquot Central School District that commenced in July 2025, and a finding by OCR on January 22, 2026 that Connetquot Central School District violated Title VI by changing its team name from "Thunderbirds" to "T-Birds"—would not change the outcome of Plaintiffs' motion to amend.

Plaintiffs' motion should be denied at the outset because, as they acknowledge, *see* Pls.' Mem. at 2, OCR's investigation into Connetquot commenced in July 2025, four months prior to the Court's decision on their motion for leave to amend, but they failed to notify the Court of that then-pending investigation, although, as Plaintiffs also acknowledge, that investigation was publicly announced (*see* Pls.' Ex. A at DE 90-2). Assuming without conceding that Plaintiffs can establish Article III standing, Plaintiffs' Title VI preemption claim remains futile for the independent reasons that Plaintiffs lack statutory standing and capacity to assert such a claim and have failed to adequately plead that Part 123 conflicts with Title VI. The purported new evidence on which Plaintiffs rely does not call into question any of these separate reasons for denying leave to amend.[8]

## A. Plaintiffs lack statutory standing to assert a Title VI claim.

As Defendants demonstrated in their brief opposing Plaintiffs' motion for leave to amend (DE 72 at 14-15), Plaintiffs lack statutory standing to assert a Title VI claim. "To have [statutory] standing to bring a Title VI claim, the plaintiff must 'allege that: (1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with the program or activity.'" *Rodriguez v. Boursiquot*, No. 09 Civ. 0802, 2010 WL 985187, at *4 (S.D.N.Y. Mar. 17, 2010) (quoting *Commodari v., Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)). Plaintiffs cannot show that they were intended beneficiaries of Title VI because the intended beneficiaries of Title VI in this context are students, not school districts, boards, or officials. *Id.; see also Schuler v. Bd.*

---

[8] In addition, Plaintiffs do not contest that a Title VI claim cannot be asserted against the Individual Defendants because "Title VI does not permit a claim against an individual in his official capacity." *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546, 2017 WL 3017189, at *10 (E.D.N.Y. July 11, 2017).

*of Educ. of Cent. Islip Union Free School Dist.*, No. 96-cv-4702, 2000 WL 134346, at \*10 (E.D.N.Y. Feb.1, 2000). This Court's earlier decision acknowledged that the intended beneficiaries of Title VI educational funding are students and not school districts, boards, or officials. Nov. 14, 2025 Order at 78.

That Plaintiffs lack statutory standing to assert a Title VI claim is further confirmed by courts holding that instrumentalities of states, such as Municipal Plaintiffs, are not "persons" under Title VI and therefore lack a private right of action to sue their parent state:

> Nothing in Title VI or its legislative history suggests that Congress conceived of a state instrumentality as a "person" with rights under this statute. Title VI provides for a comprehensive scheme of administrative enforcement, and the Supreme Court has implicitly recognized a private right of action for individuals injured by a Title VI violation. Absent any indication of Congressional intent to grant additional rights under this statute to non-private state subdivisions against the state itself, we decline to infer such a right of action by judicial fiat.

*United States v. Alabama*, 791 F.2d 1450, 1456–57 (11th Cir. 1986); *see also DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 689 (11th Cir. 1997) (holding law is clearly established that "a political subdivision of a state, such as the DeKalb County School District and its Board of Education, may not maintain a suit for a breach of Title VI against the State in federal court" (citing *Alabama*, 791 F.2d at 1456-57); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 688 (3d Cir. 2011) (holding charter school's "Title VI claim must fail, because the Charter School does not qualify as a 'person' with standing to sue for relief under Title VI").

Nor does the Supremacy Clause provide Plaintiffs with a private right of action. "[T]he Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (quotation marks and citation omitted).

Plaintiffs' lack of statutory standing supplies an additional, independent basis to deny Plaintiffs' motion for leave to add a Title VI conflict preemption claim.

**B.**     **Plaintiffs lack capacity to assert their Title VI claim.**

Plaintiffs also lack capacity to assert a Title VI claim against Defendants.[9] Under Federal Rule of Civil Procedure 17(b), capacity is determined as a matter of state law. *Town of Babylon v. James*, 707 F. Supp. 3d 213, 221 (E.D.N.Y. 2023). In *City of New York v. State of New York*, a leading case examining the capacity rule, one of the claims the New York Court of Appeals held was barred by the capacity rule was a Title VI claim. 86 N.Y.2d 286, 289 (1995). Accordingly, the capacity rule applies equally to statutory challenges to state laws, including challenges brought under Title VI.

To the extent Plaintiffs seek to rely on the Supremacy Clause to overcome their lack of capacity, their efforts fail. Shortly after this Court denied Plaintiffs' motion for leave to amend, the New York Court of Appeals ruled that the Supremacy Clause does not create an exception to the capacity rule. *Clarke v. Town of Newburgh*, No. 84, 2025 WL 3235042, at *4 (N.Y. Nov. 20, 2025) (rejecting "novel proposition" that the Supremacy Clause "overcomes New York's bar prohibiting its subordinate local governments from suing it"). As the Court explained, a political subdivision also may not rely on the Supremacy Clause to satisfy the existing constitutional

---

[9] Defendants have preserved the capacity defense as to Plaintiffs' Title VI claims. Defendants raised that defense as to Plaintiffs' constitutional claims as early as March 2024 in their premotion letter on their initial motion to dismiss, *see* DE 29, and Plaintiffs have had multiple opportunities to brief the capacity rule in the context of various constitutional claims. *See Dennis v. JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 412 (S.D.N.Y. 2018) (finding capacity defense not waived even though defendants did not raise it in their initial motion to dismiss because the plaintiffs would not be prejudiced).

proscription exception. *See id.* This recent decision from New York's highest court controls this question of state law. *See* Fed. R. Civ. P. 17(b).

This Court previously relied on *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019), to hold that Plaintiffs may assert a preemption claim against Defendants. Nov. 14, 2025 Order at 28, 32. But *Tong* addressed whether, as a matter of *federal* law, a political subdivision has standing under the Constitution to assert a preemption claim. 930 F.3d at 72-73. It did not address whether, as a matter of *state* law, a political subdivision has capacity to assert such a claim. Although New York's capacity rule is "derived from" the same line of federal cases that the Second Circuit examined in *Tong*, the New York Court of Appeals has expressly reserved the question of whether and to what extent New York law recognizes exceptions identified by other jurisdictions to the general rule against capacity. *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 386 n.4 (2017). And it has since expressly rejected such an exception rooted in the Supremacy Clause. *Clarke*, 2025 WL 3235042, at *4. Accordingly, Plaintiffs lack capacity under state law, notwithstanding that the federal Constitution does not pose an independent barrier to Plaintiffs' preemption claim under *Tong*.

## C. Plaintiffs fail to show that Part 123 conflicts with Title VI.

As Defendants previously explained, even if Plaintiffs had standing and capacity to assert a Title VI claim, their motion to amend should still be denied because they fail to show that Part 123 conflicts with Title VI and is thus preempted. *See* Defs.' Mem. at 15-18. Specifically, Plaintiffs fail to allege "the events claimed to constitute intentional discrimination." *Yzaguirre v. KIPP NYC Pub. Charter Sch.*, No. 24 Civ. 1500, 2025 WL 795732, at *12 (S.D.N.Y. Feb. 7, 2025), *report and recommendation adopted sub nom. Yzaguirre v. Levin*, No. 24-cv-1500, 2025 WL 804771 (S.D.N.Y. Mar. 13, 2025) (internal quotation marks omitted).

Defendants demonstrated that Part 123 does not exclude any person or group from participation in a program, deny any person or group the benefits of that program, or discriminate against any person or group based on race, color, or national origin. Part 123 merely restricts the use of certain mascots to represent school sports teams. Part 123 has no effect whatsoever on the use of Indigenous names and imagery for classroom instruction. 8 NYCRR § 123.1. Barring the appropriation of Indigenous names and imagery for use solely as mascots is not discrimination against Indigenous persons. Part 123 has no effect on the display and discussion of such names and symbols in the appropriate academic context.

As Defendants also demonstrated, Plaintiffs failed to plead circumstances giving rise to a plausible inference of racially discriminatory intent. Plaintiffs failed to refute the public record showing that the intent behind Part 123 is to create discrimination-free environments in public schools, which is evident in the Notice of Adoption. *See* Defs.' Ex. 1 (DE 72-2) at 2 (noting State interest in "providing a safe and supportive learning environment for every child"). Plaintiffs' allegations did nothing to call into question the studies relied on by SED that unanimously show that the use of Native American mascots imposes either direct negative effects on Native Americans or the fostering of harmful stereotypes among non-Native persons, and that the continued use of Indigenous mascots negatively affects all students. *Id*. at 2-3. Indeed, a New York state court has acknowledged the "proven harm to children caused by the use of race-based imagery." *Cambridge Central School District v. N.Y. State Education Dep't*, Index No. 902161-22, at 4 (Sup. Ct. Albany Cnty. June 21, 2022) (Defs.' Ex. 2, DE No. 72-3); *see* Defs.' Exs. 4-10 (DE Nos. 72-5–72-11). And Part 123 is narrowly tailored to achieve the compelling government interest of protecting children from the proven harms of using Indigenous-themed mascots.

The Court owes no deference to OCR's May 2025 determination,[10] that Part 123 violates Title VI. Because that determination was not based on factual findings, but was based purely on OCR's current interpretation of Title VI, this Court owes no deference whatsoever to OCR's determination. *See Scheidelman v. Comm'r*, 755 F.3d 148, 151 (2d Cir. 2014) ("[W]e owe no deference to the [agency court's] statutory interpretations."); *K.H. v. New York City Dep't of Educ.*, No. 12-cv-1680, 2014 WL 3866430, at *15 (E.D.N.Y. Aug. 6, 2014) (referring to "binding Second Circuit directive that district courts do not need to defer to administrative determinations regarding matters of law and statutory interpretation"); *Carmel Cent. Sch. Dist. v. V.P.*, No. 04 Civ. 3320, 2005 WL 1469472, at *4 (S.D.N.Y. June 9, 2005) ("[A]n [administrative agency's] determination of a pure question of law is not subject to deference."). These guiding principles also direct that the Court owes no deference to the finding by OCR that Connetquot Central School District's change from "Thunderbirds" to "T-Birds" in compliance with Part 123 amounts to a Title VI violation.

Notably, OCR's findings against SED and against Connetquot contradict the agency's previous position regarding the use of Native American mascots. By letter dated September 13, 2024, OCR notified a different New York State public school district of its determination that the district's use of a Native American-themed name, logo, and mascot for its sports teams resulted in violations of Title VI. *See* Ex. 1 to Declaration of Helena Lynch. Also notable is that OCR endorsed Part 123 by citing to it in support of its determination. *Id*. at 10-11.

---

[10]     *See*     https://www.ed.gov/about/news/press-release/secretary-mcmahon-visits-massapequa-high-school-announces-finding-school-mascot-probe (last visited Feb. 9, 2026). In June 2025, OCR referred its finding to the Department of Justice, *see* https://www.ed.gov/about/news/press-release/us-department-of-education-refers-massapequa-mascot-case-us-department-of-justice (last visited Feb. 9, 2026), which has, to date, taken no action.

Plaintiffs failed to plausibly plead that Part 123 conflicts with Title VI and is thus preempted. This failure supplies an additional, independent basis for the denial of Plaintiffs' motion for leave to add a Title VI claim.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion, in its entirety and with prejudice, and grant such other and further relief that the Court deems just and equitable.

Dated: Mineola, New York
February 9, 2026

**LETITIA JAMES**
Attorney General of the State of New York
*Attorney for Defendants*
By: /s/ *Helena Lynch*
Helena Lynch, Assistant Attorney General
200 Old Country Road, Ste. 240 Mineola, New York 11501
(516) 248-3312 | Helena.Lynch@ag.ny.gov

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

The undersigned, an attorney duly admitted to practice before this court, hereby certifies that the foregoing Memorandum of Law in Opposition to Motion for Leave to Amend ("Memorandum of Law") complies with Local Civil Rule 7.1(c), which sets forth a 8,750 word-count limit. The Memorandum of Law contains 4,545 words, as counted by the word processing system used to prepare it. This word count excludes the caption, tables, signature block, and this Certificate, but includes all headings and footnotes.

Dated:  Mineola, New York
          February 9, 2026

*Helena Lynch*
Helena Lynch
Tel.: (516) 248-3312
Helena.lynch@ag.ny.gov