UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MASSAPEQUA UNION FREE SCHOOL
DISTRICT, et al.,

                     Plaintiffs,

          v.

NEW YORK STATE BOARD OF REGENTS,
et al.,

                     Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
23-CV-7052-SJB-LGD

**BULSARA, United States District Judge:**

      Massapequa Union Free School District and the Massapequa Union Free School District Board of Education (collectively, "Massapequa") ask the Court to amend the decision and judgment dismissing their Title VI challenge to Part 123, a New York State regulation that prohibits public schools from using Native American symbols and imagery as mascots. *See Massapequa Union Free Sch. Dist. v. N.Y. State Bd. of Regents*, -- F. Supp. 3d --, No. 23-CV-7052, 2025 WL 3182580, at \*33–\*34 (E.D.N.Y. Nov. 14, 2025) ("*Massapequa I*"); (*see also* Clerk's J. dated Jan. 15, 2026, Dkt. No. 89). The Court dismissed the claim because Massapequa lacked standing. That is, Massapequa failed to allege any chance the federal government would enforce Title VI against them. They now allege changed circumstances: on January 22, 2026, the U.S. Department of Education Office for Civil Rights ("OCR") found a different school district in New York in violation of Title VI for ending its use of a Native American mascot. (Pls.' Mem. in

Supp. of Mot. to Am. J. dated Jan. 26, 2026 ("Pls.' Mot."), Dkt. No. 90-1 at 3–4). For the reasons explained below, the motion is denied.[1]

## DISCUSSION

Massapequa previously contended that Title VI preempts Part 123 because Title VI prohibits race discrimination, but compliance with Part 123—by requiring removal of only Native American symbols—compels it to engage in race discrimination. That is, Massapequa could not comply with Part 123 without risking federal Title VI liability. *Massapequa I*, 2025 WL 3182580, at *33. But Massapequa is not a recipient "of federal educational funding protected by Title VI (students are)," which would normally "preclude their ability to bring a claim . . . unless they seek to invalidate a state law because it conflicts with the obligation to comply with the dictates of federal law." *Id.* "Such preemption challenges are enabled by the Supremacy Clause," but a party must first identify an injury that grants them standing to bring such a claim. *Id.* "A plaintiff has standing to make a preenforcement challenge when . . . prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative." *Id.* at *34 (quoting *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020)).

Massapequa previously failed to make the requisite showing "because there is no imminent or actual, non-hypothetical, chance that the federal government will contend that Massapequa or the Board is violating Title VI, should they comply with Part 123."

---

[1] The Second Circuit has stayed Plaintiffs' appeal of the judgment pending resolution of this motion. (Order of USCA dated Jan. 28, 2026, Dkt. No. 91 at 2). But because the Court may deny the motion in this posture, an indicative Rule 62.1 ruling is unnecessary.

2

*Id.* Massapequa repeatedly pointed the Court to press releases by OCR in order to underscore the alleged illegality of Part 123. They were using OCR's position—that the New York State Board of Regents (the Defendants) violated Title VI by implementing Part 123—to suggest that this Court should permit Massapequa to challenge the regulation as unconstitutional. *Id.* In other words, the target of any OCR activity—at least how Massapequa presented it—was not them but the New York State Board of Regents. Massapequa pointed to nothing suggesting any potential enforcement action against *them*. *Massapequa I*, 2025 WL 3182580, at *34.

Massapequa now reports that OCR had been investigating another New York school district, Connetquot, since July 8, 2025. (Pls.' Mot. at 2). They note that Connetquot had originally challenged Part 123, but then "reversed its position," settling its litigation in September 2025 and changing its mascot from "Thunderbirds" to "T-Birds" to comply with the regulation. (*Id.*). Then, on January 22, 2026, "OCR issued a final determination finding Connetquot in violation of Title VI" because Connetquot used "taxpayer funds to abandon its Native-American-derived name to comply with Part 123." (*Id.* at 3–4). Massapequa suggests that OCR investigated Connetquot and found a Title VI violation because it changed its mascot and complied with Part 123. (*Id.* at 4). And, therefore, Massapequa contends they are in the same position and likely to face an OCR investigation. (*Id.*). As a result, Massapequa faces a nonspeculative injury and has standing to bring a preemption challenge to Part 123. Citing Rules 59 and 60, Massapequa asks the Court to reverse the dismissal of their Title VI challenge to

3

Part 123.  Not only is their position meritless, but the motion—based on new facts—does not qualify for relief under either rule.[2]

**I.      Rule 59(e)**

A court may grant a Rule 59(e) motion "only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (quotation omitted).  "To prevail on a motion for relief from a judgment on the grounds of newly discovered evidence, a party must establish that . . . the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding."  *Id.* at 146 (quotation omitted).  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the

---

[2] Defendants elected not to focus on the arguments Plaintiffs presented.  (Defs.' Mem. in Opp'n to Pls.' Mot. to Am. J. dated Feb. 9, 2026, Dkt. No. 92).  Instead, they chose to re-argue their previous Title VI arguments and make new arguments—both of which are inappropriate in this posture—for example, regarding "statutory standing," (*id.* at 7–9), a term that has no significance in this context, *see Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 170 n.4 (2d Cir. 2025) ("We retired the appellation 'statutory standing' because statutory standing in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (quotation omitted)).  For the same reasons the Court cannot consider new arguments raised by Plaintiffs, it does not reach Defendants' inapposite and new positions.

4

apple." *Gerding v. Ljungren*, No. 23-1119, 2025 WL 3751728, at *2 (2d Cir. Dec. 29, 2025) (quotation omitted).[3]

In summary, the Court finds no clear error or manifest injustice in its prior standing analysis. Nor does what Massapequa has identified as "new evidence" satisfy the relevant standard.

Massapequa argues that the Court "overlooked OCR's pending investigation into Connetquot." (Pls.' Mot. at 7). Of course, they never identified OCR's investigation into Connetquot in the motion to amend briefing. And as to OCR's finding of Connetquot in violation of Title VI, that did not transpire until months after the Court issued its decision.

To the extent Massapequa's claim is that the Court "overlooked" the Connetquot investigation because it was mentioned in a separate letter brief, (*id.* at 2), that argument is facile. That letter briefing focused on whether separate cases should be consolidated. (Pls.' Letter dated July 23, 2025, Dkt. No. 80 at 1). But that letter also went out of its way to demonstrate why Connetquot was different from Massapequa, and why OCR was treating the two differently. How so? The letter cites multiple OCR press releases that

---

[3] Massapequa also invokes Rule 15(a)'s liberal amendment standard. (Pls.' Mot. at 6). "It is well established that [a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b). [I]t would be contradictory to entertain a motion to amend the complaint without a valid basis to vacate the previously entered judgment." *Metzler Inv. Gmbh*, 970 F.3d at 142 (quotations omitted). But Massapequa has had three chances to plead a viable claim in this litigation. *See id.* at 146 ("In the post-judgment context, we have indeed given due regard to the liberal spirit of Rule 15 by ensuring plaintiffs at least one opportunity to replead." (quotation omitted)). Rule 15 cannot give Massapequa the relief that they do not otherwise qualify for under Rules 59 and 60.

5

demonstrate that OCR was investigating the Board of Regents, not Massapequa. (*See id.* at 3–4); *e.g.*, Press Release, U.S. Dep't of Educ., Secretary McMahon Visits Massapequa High School, Announces Finding in School Mascot Probe (May 30, 2025), https://perma.cc/F96M-WL6K ("We will stand with the people of Massapequa until commonsense is restored and justice is served, and until New York comes into compliance with federal law.").

As for the post-decision events, as an initial matter, those circumstances cannot be a basis for Rule 59 relief. The newly discovered evidence Massapequa points to is an OCR determination that was made months after this Court's decision and thus cannot support relief under Rule 59(e). *E.g.*, *Pierre v. Yurchenko*, No. 22-CV-1171, 2025 WL 1761387, at *3 (E.D.N.Y. June 9, 2025) ("Plaintiff also mentions incidents that occurred after this Court's order dismissing his case. Because that evidence did not exist[] at the time of trial or other dispositive proceedings, it cannot be considered [n]ewly *discovered* evidence." (quotations omitted)).

Massapequa says OCR's determination "has made federal enforcement against [Massapequa] for Part 123 compliance unequivocal," since if they change their mascot, "they would face the same OCR enforcement." (Pls.' Mot. at 7). Massapequa asserts that now, "[t]his risk is not speculative," and that "[t]he threat is imminent," because their compliance with Part 123 "triggers federal liability." (*Id.* at 8). OCR's finding against a different school district presents no reason to revisit the issue the Court already resolved against Massapequa.

6

"[A] preenforcement challenge is justiciable when enforcement is a realistic danger, when there is a credible threat of prosecution, or when a plaintiff has an actual and well-founded fear of such enforcement." *Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013) (quotations omitted). "[A] plaintiff has standing when it may legitimately fear that it will face enforcement under its reasonable interpretation of the statute." *Id.* at 199–200 (quotations omitted). Typically, courts "presume[] that the government will enforce the law." *Id.* at 200. But that presumption is context-dependent and may be inappropriate. *See id.* at 203–04 ("Whether Section 1021 can or will alter executive practice, particularly *with regard to individuals like them*, is purely a matter of speculation. . . . Moreover, they cannot 'manufacture standing' based on any present injuries incurred due to their expressed fears." (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013))); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue, and will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." (quotation omitted)).

For example, when Connecticut passed a law targeting New Haven's Tweed Airport by outlawing the expansion of a specific runway, the Court of Appeals found standing for the Airport to challenge the state law as preempted by federal law. *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 69–70 (2d Cir. 2019). There, the Airport had secured approval of a comprehensive plan for its runway expansion, in accordance

7

with federal law, but was stymied by the state's about-face years later, forbidding that very plan. *Id.* at 69. The Second Circuit noted that the statute "directly target[ed]" the plaintiff and "prevent[ed] it from extending its runway," and in such a circumstance where "a statute specifically proscribes conduct," or where "the plaintiff is himself an object of the action," the threatened enforcement, even absent an overt threat by the state to take action, sufficed to establish the necessary injury. *Id.* at 70–71 (quotation omitted).

For the reasons explained in the Court's initial decision, this case is not *Tong*. *See Massapequa I*, 2025 WL 3182580, at *33–*34. Massapequa's argument rests on an assumption that OCR will enforce Title VI against them. That assumption remains implausible, given the facts that Massapequa has presented to the Court during the years the case has been litigated.

As an initial matter, Massapequa has no intention of changing their mascot or complying with Part 123—i.e., they have no intention of engaging in conduct that OCR considers a Title VI violation. Massapequa has been steadfast in this view, which they have repeatedly presented to this Court.

On November 17, 2023, Massapequa told the Court they "seek equitable relief that would let them continue to use the Chiefs name *and* logo." (Pls.' Resp. to Defs.' Mot. to Consolidate, Dkt. No. 13 at 2). A little less than a year later, on September 13, 2024, they wrote that "Plaintiffs filed this lawsuit only in search of equitable relief to maintain the Chiefs name and logo." (Pls.' Mot. for Premotion Conference for Summ. J. & Prelim. Inj., Dkt. No. 43 at 3).

8

Some two years later, in a new case brought by Massapequa, they attached several communications between the school district and the State unequivocally stating they had no intent to comply with Part 123 unless forced to by court order.[4]  *See* Extension Letter at 4, attached to Compl. as Ex. E, *Massapequa Union Free Sch. Dist. v. Hochul* ("*Massapequa II*"), No. 25-CV-5791 (E.D.N.Y. Oct. 15, 2025), Dkt. No. 1-5 ("With this letter, Massapequa Board of Education President Kerry Wachter affirms and commits that the Massapequa Board of Education and the District will comply with the final judicial decisions and all applicable laws and regulations (including Part 123) immediately upon the resolution of Part 123's constitutionality by the courts."); Extension Resp. at 2, attached to Compl. as Ex. F, *Massapequa II*, No. 25-CV-5791 (E.D.N.Y. Oct. 15, 2025), Dkt. No. 1-6 ("The District's extension request reveals that nothing whatsoever has been done to eliminate the use of its 'Chiefs' name, logo, or mascot.  Indeed, at times, the District has suggested that it has no intention of complying with these regulations.  For example, the District recently hosted a 'Save the Chief!' fundraiser on district property[.]").

And then, undercutting any presumption that OCR would enforce Title VI against them, Massapequa consistently took the position that OCR was aligned with them and against the Board of Regents—again, ostensibly to demonstrate that Part 123 was so unlawful that the federal government had weighed in against it.  For example, in

---

[4] This separate lawsuit, which asserted a nearly identical Title VI claim, included many of the same press releases and remarks about OCR's determination that the Board of Regents was the one violating Title VI.  *E.g.*, Compl. ¶ 122, *Massapequa Union Free Sch. Dist. v. Hochul*, No. 25-CV-5791 (E.D.N.Y. Oct. 15, 2025), Dkt. No. 1.

9

their motion for leave to file a second amended complaint, Massapequa said, in no uncertain terms, that OCR was aligned with them: "In its public statement, the DOE indicated that 'OCR will assess *whether New York's threat to withhold funding* if the Massapequa School District does not eliminate its Native American mascot constitutes discrimination on the basis of race and national origin.'" (Pls.' Mem. in Supp. of Mot. to File Second Am. Compl. dated May 19, 2025 ("Pls.' Mot. to File Second Am. Compl."), Dkt. No. 66-4 at 12 (emphasis added)). Massapequa was quoting from a press release by OCR, (*id.* at 12 n.2), announcing its Title VI probe into the Board of Regents, which included a comment from the President of the Massapequa Board of Education "thank[ing] the Department of Education and the Trump Administration for standing with Massapequa." Press Release, U.S. Dep't of Educ., U.S. Department of Education Launches Title VI Probe into N.Y. School Mascot Controversy (Apr. 25, 2025), https://perma.cc/NW4G-TVMV.[5]

It is a Janus-esque transformation for Massapequa to now claim that *they* are at risk of OCR enforcement activity, having repeatedly suggested facts to the contrary for months. *Massapequa I*, 2025 WL 3182580, at *34.

But Massapequa has offered nothing to suggest that OCR has changed its position. Massapequa still fails to present any indication that *they* face any possible

---

[5] Indeed, it has been reported that OCR's investigation against the Board of Regents was launched "at the behest of [] Massapequa," and the investigation into Connetquot was commenced "at the behest of the Native American Guardians Association." *See* Crystal Owens, *NY Schools Say Federal Threat Over Native Mascot Imminent*, Law360 (Jan. 27, 2026), https://www.law360.com/articles/2434533/ny-schools-say-federal-threat-over-native-mascot-imminent-.

10

threat of federal liability. Nor does Massapequa intend to do anything to trigger OCR's scrutiny, like Connetquot did when it complied with Part 123 and changed its mascot. Indeed, Massapequa signed an "agreement" with the Native American Guardians Association ("NAGA"), which Massapequa says commits them to continuing use of their current mascot and noncompliance with Part 123. (Proposed Second Am. Compl., attached to Pls.' Mot. to File Second Am. Compl. as Ex. A, Dkt. 66-2 ¶ 111 ("To satisfy their contractual obligations under the MSD-NAGA Agreement, the Plaintiffs *must continue* to use the Chiefs name and logo.")). Massapequa has made clear they have no intention of changing their mascot. Rather than presenting any plan, intent, or consideration of complying with Part 123—which might draw the scrutiny of OCR—Massapequa and the Board have committed themselves to defying the regulation and challenging its constitutionality. And OCR is with, not against, them in that effort. In such a posture, Massapequa has no legitimate basis to fear enforcement of Title VI against them, and therefore no ability to use that law to argue that Part 123 should be struck down.

The Rule 59 motion is denied.

## II.     Rule 60(b)(1), (2), and (6)

Massapequa cursorily asks for relief under Rule 60(b)(1) for "a judge's error of law," under Rule 60(b)(2) for "post-judgment evidence," and under Rule 60(b)(6) for "extraordinary circumstances justifying relief." (Pls.' Mot. at 10). They offer no separate analysis for any of these provisions, relying only on "the same reasons discussed" with respect to their Rule 59(e) request. (*Id.*).

11

Rule 60(b) provides that a court may relieve a party from a final judgment for several reasons, including "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), "newly discovered evidence," *id.* R. 60(b)(2), and "any other reason that justifies relief," *id.* R. 60(b)(6).

To the extent Massapequa seeks relief under Rule 60(b)(1) for an error of law, they point to no such error.  As for Rule 60(b)(2), the same reasons for denying the Rule 59 motion apply with equal force here. *Jeanty v. City of Utica*, No. 23-0369, 2024 WL 4429417, at *2 (2d Cir. Oct. 7, 2024) ("[A] the district court correctly recognized, the only *new* information which [Jeanty] has presented with his motion—and which he did not possess well before the entry of final judgment—is the report of Da Costa, which did not exist at the time of trial. . . . Accordingly, the district court did not abuse its discretion in determining that relief was not warranted under Rule 60(b)(2)." (quotation omitted)).  Finally, it follows that Rule 60(b)(6) relief is also unavailable because the request implicates the more-specific Rule 60(b)(2)—and also largely seeks to relitigate issues already decided. *Pastor v. P'ship for Child.'s Rts.*, 856 F. App'x 343, 344–45 (2d Cir. 2021) ("[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." (quotation omitted)).

## CONCLUSION

For the reasons explained above, the motion for relief under Rule 59(e) and Rule (60)(b) is denied.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   February 23, 2026
        Central Islip, New York

13